IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| STATE OF SOUTH CAROLINA, ) ) Plaintiff, ) ) v. ) ) UNITED STATES; ) ) UNITED STATES DEPARTMENT OF ) ENERGY; ) ) DR. ERNEST MONIZ, in his official capacity as ) Secretary of Energy; ) ) NATIONAL NUCLEAR SECURITY ) ADMINISTRATION; and ) ) LT. GENERAL FRANK G. KLOTZ, ) in his official capacity as Administrator of the ) National Nuclear Security Administration and ) Undersecretary for Nuclear Security; ) ) Defendants. ) ) | Civil Action No. 1:16-00391-JMC |

# THE STATE OF SOUTH CAROLINA'S

# RESPONSE IN OPPOSITION

# TO THE SOUTHERN CAROLINA ALLIANCE'S

# MOTION TO INTERVENE

The non-governmental private non-profit Southern Carolina Alliance (Alliance) filed a Motion to Intervene, ECF No. 6, acknowledging that its purpose in intervening is to get money from the State through a purported "equitable apportionment" claim against the State regarding any funds the State might recover in economic and impact assistance payments. Such payments are due the State from the Secretary of Energy and the U.S. Department of Energy (and other named defendants, collectively "Federal Defendants") from the Federal Defendants' failure to comply with applicable law. *See* ECF No. 1, Complaint of the State of South Carolina. The statute forming the basis for the State's claim, 50 U.S.C.A. § 2566 (Section 2566), requires the Federal Defendants[1] to remove not less than one metric ton of defense plutonium from the State of South Carolina each year and "pay **to the State of South Carolina** each year beginning on" January 1, 2016 "economic and impact assistance an amount equal to $1,000,000 per day, not to exceed $100,000,000 per year. . . ." (Emphasis added.) The statute provides only for payment to the State, and not to any other person or entity, including the Alliance. As a result, the Alliance cannot show that it possesses an interest in the subject matter of this action, as is required for intervention as of right. Nor can the Alliance show that there is a common question of law or fact, as is required for permissive intervention. For these reasons, as well as others set forth herein, the Alliance's Motion to Intervene should be denied.

To intervene as of right, a movant must show: (1) timely application; (2) an interest in the subject matter of the underlying action; (3) that a denial of the motion to intervene would impair or impede the movant's ability to protect its interest; and (4) that the movant's interest is not adequately represented by the existing parties to the litigation. Rule 24(a), FRCP; *Houston Gen.*

---

[1] For further explanation and argument on the meaning and implication of Section 2566, the State incorporates by reference its Memorandum in Support of its Motion for Summary Judgment, ECF No. 10-1.

*Ins. Co. v. Moore,* 193 F.3d 838, 839 (4th Cir. 1999). "A party moving for intervention under [Fed. R. Civ. P.] 24(a) bears the burden of establishing a right to intervene, and must do so by satisfying all four requirements." *U.S. ex rel. MPA Constr., Inc. v. XL Specialty Ins. Co.,* 349 F.Supp.2d 934, 937 (D. Md. 2004) (citing *In re Richman,* 104 F.3d 654, 658 (4th Cir. 1997)). Failure to satisfy even one of these requirements is sufficient to warrant denial of a motion to intervene as a matter of right. *See N.A.A.C.P. v. New York,* 413 U.S. 345, 369 (1973).

"Permissive Intervention," on the other hand, allows the court, in its discretion, to permit anyone to intervene upon timely motion who "has a claim or defense that shares with the main action a common question of law or fact." Rule 24(b)(1), FRCP. In exercising discretion, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Rule 24(b)(3), FRCP.

In this case, the Alliance cannot satisfy any of the elements for intervention as of right and cannot provide any reasonable justification for this Court to exercise its discretion to permissively allow intervention.

## I. THE ALLIANCE CANNOT SATISFY THE REQUIREMENTS FOR INTERVENTION AS OF RIGHT.

To establish a right to intervene under Rule 24(a), FRCP, the Alliance must satisfy four conditions:

> (1) the intervenor must submit a timely motion to intervene in the adversary proceeding;
> (2) the intervenor must demonstrate a "direct and substantial interest" in the property or transaction;
> (3) the intervenor must prove that the interest would be impaired if intervention was not allowed; and
> (4) the intervenor must establish that the interest is inadequately represented by existing parties.

*In re Richman*, 104 F.3d at 659; *XL Specialty*, 349 F. Supp. 2d at 937.

(A)  <u>The Alliance has no "direct and substantial interest" in any property or transaction in this statutory enforcement action.</u>

While the Alliance cannot meet any of the four requirements for intervention as of right, the most glaring deficiency in its claim is the manifest absence of a legally protected interest. "To determine whether a potential intervenor has a legally protectable interest in the proceedings, we look to substantive law." *Getty Oil Co. v. Dep't of Energy*, 865 F.2d 270, 275 (Temp. Emer. Ct. App. 1988). Here, the statute the State seeks to enforce—Section 2566—specifically references the State and does not create any other right of action or beneficiary status. The Alliance is not named in Section 2566 nor does it have any right, direct or collateral, in the State's enforcement of the statute. This is fatal to the Alliance's specious intervention attempt.[2]

In *Texas v. DOE*, involving another fight over a federal law regarding nuclear waste repositories, 31 utilities moved to intervene in that action. *State of Tex. v. U.S. Dep't of Energy*, 754 F.2d 550, 551 (5th Cir. 1985). The court held that "[b]ecause they have no defined role in the statutory scheme at issue . . . they have no legally protectable interest that might be affected by the outcome of this proceeding," and further that, even if they had protectable interests, because (in that instance) DOE adequately represents the utilities' interests, the court denied intervention. *Id.* Here, the Alliance similarly has no defined role in the statutory scheme, and thus cannot establish any legally protectable interest justifying intervention (and here it is the State that adequately represents the Alliance's interest against DOE, *see infra* § I(B)).

---

[2] The Alliance's real property interest in Barnwell County, whatever that interest may be, and its involvement with the Promise Zone are completely irrelevant to any interest Congress has conferred upon the State in enforcing Section 2566. The subject matter of this litigation is the enforcement of Section 2566, and in that the Alliance has no right, claim, or interest to justify intervention.

Page 3

The Alliance claims it wants plutonium to be removed from the State and not to continue to be shipped into South Carolina (duplicating the State's claims) and claims a nebulous, wholly unfounded equitable interest in the payments Congress and Section 2566 directs to be made to the State. However, merely claiming a general interest in assets (such as the economic and assistance payments) based on a speculative recovery (since the Federal Defendants seem to have no intention of complying with the statute) does not satisfy Rule 24's requirement that the claim be "relating to the property or transaction which is the subject of the action." *Gould v. Alleco, Inc.*, 883 F.2d 281, 285 (4th Cir. 1989).

In another case in which a private party sought to intervene in an action in which DOE was seeking to enforce statutory rights, the court held that a "private party's 'right' to some benefit as a consequence of the overall restitution of [the underlying issue] does not confer a legal right to intervene in a DOE action seeking enforcement of public rights. Such an enforcement of a remedial restitution is the exclusive right of the government." *Getty Oil*, 865 F.2d at 275-76 (internal citations omitted). The court denied intervention. *Id.* ("Private parties have no interest in a public enforcement action, within the meaning of Rule 24(a)(2), that will be impaired by disposition of that action.").

Thus, in *Getty Oil*, intervention was denied when a private nonparty (just like the Alliance) sought a monetary interest (just like the Alliance) in the remedy from a public enforcement action (just like the Alliance). *Getty Oil*, 865 F.2d 270. Specifically, the court held that "a nonparty's right as a potential claimant for restitution" does not "rise to the level of a right to intervention. [A]n economic interest [that might be adversely affected by the outcome of the case] alone is insufficient to warrant intervention under Rule 24(a)(2)." *Id.* at 276. (internal citations omitted). Just as in *Getty Oil*, the Alliance's claim for an equitable apportionment of

monies statutorily mandated to be paid to the State of South Carolina fails to satisfy the requirement for a right for purposes of intervention.

Moreover, the position of the Alliance is no different than the position of other citizens in the State, and without any real, legally protectable interest to differentiate themselves, intervention must be denied. *See Gould,* 883 F.2d at 285 ("In a sense, every company's stockholders . . . and employees have a stake in the outcome of any litigation involving the company, but this alone is insufficient to imbue them with the degree of 'interest' required for Rule 24(a) intervention. [W]e find that the lower court did not abuse its discretion by ruling that the intervenors had an insufficient interest for Rule 24(a) purposes."). If the Alliance, an economic development group outside of Aiken County where the MOX Facility is located, can make a claim, then every citizen in the State could make the same claim for equitable apportionment of the fines and penalties that Congress directed to be paid to the State of South Carolina. *See infra* § III. If the Court deems the Alliance fit to intervene, then it may as well throw open the courthouse doors and establish a claims process for every citizen to make a claim for equitable apportionment of the fines and penalties recovered by the State. *See infra* § III. This is exactly the circumstance the Fourth Circuit has held weighs heavily against intervention and requires a "very strong showing" by the proposed intervenor. As the Court explained:

> Faced with the prospect of a deluge of potential intervenors, the government could be compelled to modify its litigation strategy to suit the self-interested motivations of those who seek party status, or else suffer the consequences of a geometrically protracted, costly, and complicated litigation. In short, "the business of the government could hardly be conducted if, in matters of litigation, individual citizens could usually or always intervene and assert individual points of view."

*Stuart v. Huff*, 706 F.3d 345, 351 (4th Cir. 2013) (citing 6 *Moore's Federal Practice* § 24.03[4][a][iv][A] (3d ed. 2011)).

For these reasons, the Motion to Intervene should be denied as the Alliance cannot establish any legally protectable interest that rises to the level of allowing intervention.

(B)     The Alliance's alleged interests are adequately represented by the State.

As the Fourth Circuit has explained, "[w]hen the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion, or nonfeasance." *Virginia v. Westinghouse Elec. Corp.,* 542 F.2d 214, 216 (4th Cir. 1976). Indeed, as another district court in the Fourth Circuit has concluded, "[a]dequacy can be presumed when the party on whose behalf the applicant seeks intervention is a governmental body or officer charged by law with representing the interests of the proposed intervenor." *James City Cty v. U.S. Envtl. Protection Agency*, 131 F.R.D. 472, 474 (E.D. Va. 1990) (quoting *Keith v. Daley,* 764 F.2d 1265, 1270 (7th Cir. 1985)).

Here, the Alliance "seeks . . . an Order compelling Defendants to make the impact assistance payments mandated by 50 U.S.C. § 2566 until either (a) Defendants have achieved the MOX production objective or (b) Defendants remove one metric ton of defense plutonium or defense plutonium materials from SRS." ECF No. 6, Mot. to Intervene at 3. As stated above, the cause of action asserted by the Alliance seeking to enforce Section 2566 therefore is the exact same claim that the State of South Carolina is prosecuting on behalf of the citizens of the State. As the State is seeking to enforce the same statute and achieve the same ends (aside from the Alliance's claim for money), the State is presumed to adequately represent any interest the Alliance may have. *United Nuclear Corp. v. Cannon*, 696 F.2d 141, 144 (1st Cir. 1982) (internal citations omitted) ("The state is charged with representing the public interest, and one

consequence is that a prospective intervenor that basically asserts the public interest faces a presumption that the state's representation of the public interest will be adequate.").

The First Circuit denied intervention in a similar situation. It has held that the denial of intervention is proper when the proposed intervenor "has the same argument as does the state. . . ." *Id*. In *United Nuclear*, the court determined that the Attorney General was "ready, willing, and able to vigorously" advocate the position in that case that was the same as the position the proposed intervenor sought to advance. *Id.* The case here is similar. The Attorney General is vigorously advancing the State's position, and is advancing the same position that the Alliance states it seeks to vindicate—the compliance of the Federal Defendants with Section 2566—and thus the Alliance holds the same litigation posture as the State on the ultimate question of compelling the Federal Defendants to comply with Section 2566. *Id.* ("[A]lthough [the proposed intervenor] may have a more specialized interest, the state and [the proposed intervenor] have the same ultimate goal of upholding and defending the constitutional validity of the . . . statute. The practical litigation posture of [the proposed intervenor] would be identical to that of the state.").

In a case before this Court last year, a motion to intervene was filed asserting an interest to assure the validity of the insurance policy at issue. *Affirmative Ins. Co. v. Williams*, No. 5:14-CV-04087-JMC, 2015 WL 3968436 (D.S.C. June 30, 2015). In denying intervention, this Court observed that the parties and proposed intervenor "do in fact share the same ultimate objective." *Id*. at *4. The proposed intervenor presented no evidence of adversity of interest, collusion, or nonfeasance by the existing party to overcome the presumption that the existing party did not adequately represent the proposed intervenor's interests. *Id.*

In this case, there has been no allegation or evidence towards adversity of interest, collusion, or nonfeasance by the State in seeking to enforce Section 2566 and have the Federal Defendants comply with the law. Nor has there been any suggestion by the Alliance that the State or its counsel lack the desire or experience to adequately prosecute this case. *See id.* (denying intervention in part due to a lack of adverse factors to indicate anything other than vigorous advocacy).

The only distinguishing factor the Alliance offers for this element is that it has a "local" perspective while the State has a "State" perspective. ECF No. 6, Mot. to Intervene at 5. This exact argument has been rejected by another court, and is similarly unavailing here. In *James City County*, the district court denied intervention from a prospective intervenor in which the prospective intervenor fully supported the arguments of the government (in that case the U.S. Environmental Protection Agency (EPA)) on enforcement of the statute but claimed that "the concerns are that EPA had a 'national' perspective, while the applicants maintain a 'local' perspective. . . ." *James City Cty.*, 131 F.R.D. at 474. The district court found that argument "insufficient to support a claim of inadequate representation. Thus, intervention of right is DENIED." *Id.* The current case should be decided similarly. The local versus state perspective proffered by the Alliance is a distinction without a difference, as it is irrelevant to the enforcement of Section 2566—either the Federal Defendants must comply with the statute or they don't. *Cf. McCall v. Finley*, 294 S.C. 1, 4, 362 S.E.2d 26, 28 (Ct. App. 1987) ("whatever doesn't make any difference, doesn't matter").

For these reasons, the Motion to Intervene should be denied as the State is adequately representing whatever interest the Alliance may have, and the Alliance has made no showing of adversity of interest, collusion, or nonfeasance by the State.

(C)  <u>The Alliance cannot show an impairment of any interest if intervention is denied.</u>

The Alliance claims it wants the Federal Defendants to comply with Section 2566. However, this exactly duplicates the State's claim. If intervention is denied, this claim will be decided regardless. The State is in a better position to prosecute this claim in any event, because it has standing and a direct statutory right.

The Alliance also has no supportable or viable claim—equitable or otherwise—to the payment of the economic and impact assistance that Section 2566 directs to be paid to the State. Since it has no viable claim, and even if it did it would not be cognizable in this Court, *see infra* § III, there is nothing to be impaired by the denial of intervention.

For these reasons, the Motion to Intervene should be denied as there is no impairment of any Alliance interest.

(D)  <u>Based on the circumstances of this case, the Alliance has not timely filed its intervention.</u>

The Alliance filed its Motion to Intervene prior to the Federal Defendants' filing of an answer. In most cases, that would likely suffice to satisfy the timely filed requirement of Rule 24, FRCP. However, in these circumstances, it is not timely enough.

The State of South Carolina filed a dispositive motion for summary judgment in this case on April 6, 2016. ECF No. 10. There are no factual disputes, and this case will be determined by application of the plain and unambiguous language of Section 2566. Should the MOX production objective not be met, Section 2566, as noted above, directs the consequences of that failure, including removal of defense plutonium and payments to the State of South Carolina. This is a simple legal issue ripe for adjudication and is already being briefed for a quick and timely resolution.

However, the Alliance's proposed intervention would elongate and extend this case and prejudice the parties, due in part to the timeline for disposition. As a result, the filing of the Motion to Intervene is untimely. The Federal Defendants will almost inevitably seek to dismiss the Alliance from this case, just as it did in its defense against Aiken County when Aiken County filed an action against the Secretary and DOE over the enforcement of Section 2566. In *Aiken County v. Bodman*, 509 F.Supp.2d 548 (D.S.C. 2007), Aiken County filed claims against DOE and its Secretary for alleged violations of Section 2566, based on the claim that as an adjoining landowner it was entitled to relief to prevent the stockpiling of plutonium. DOE "moved to dismiss the amended complaint for lack of subject matter jurisdiction and for failure to state a claim" on the grounds of lack of standing, lack of a private right of action, lack of a final agency action, lack of ripeness, and that the mandamus statute did not apply.[3] *Id.* at 552. This Court granted the motion and dismissed the case. *Id.* at 556.

There is no reason to believe that the Secretary and DOE will not similarly file for dismissal of any claims asserted by the Alliance,[4] which occupies an even worse position as a non-governmental entity than Aiken County for purposes of asserting an interest. While the Alliance seeks to ride the coattails of the State on its claims and just wants the money statutorily directed to the State, the Federal Defendants would likely challenge the party status of the

---

[3] Notably, the **Secretary and DOE conceded that the <u>State of South Carolina</u> has a right to bring a claim to enforce Section 2566**. *Aiken Cty. v. Bodman*, 509 F. Supp. 2d 548, 551, 551 n.2 (D.S.C. 2007) ("The statute implies that the State of South Carolina may sue the Department of Energy, which counsel for the DOE conceded at the hearing on this matter . . . ."); *see Aiken County v. Bodman*, 1:05-cv-02737-RBH, ECF No. 19-1, Secretary and DOE Mem. in Supp. of Mot. to Dismiss at 4 (Importantly, the statute also provides for 'economic and impact assistance' to the <u>State of South Carolina</u> beginning in 2014 if the MOX facility does not stay on schedule" and "[t]he statute also contemplates that the <u>State of South Carolina</u> may be able to sue the Department of Energy." (emphasis in original)).

[4] In all likelihood the State of South Carolina would also move to dismiss the Alliance as a party.

Alliance through a motion to dismiss, similar to the dismissal in *Bodman*. This does nothing but elongate and extend the litigation of this case, overly complicate simple issues, and prejudices existing parties. Indeed, in light of the current posture of the litigation and pending motions, the battle over the Alliance's ability to achieve or maintain party status would outlast the battle over the substantive merits of the legal claim presented in the State's Motion for Summary Judgment.

For these reasons, the Motion to Intervene should be denied as untimely.

## II.     THE ALLIANCE CANNOT JUSTIFY PERMISSIVE INTERVENTION.

Permissive intervention, within the sound discretion of this Court, should not be granted to the Alliance in this case. All of the reasons set forth above weigh heavily against the exercise of the Court's discretion to allow intervention. While the Alliance claims it seeks to enforce Section 2566, it really simply seeks to collect monies from the State under an equitable apportionment claim—which is not a common question of law. Instead, that injects an entirely different legal question into this case. Moreover, it is reasonable to assume that, in light of the Federal Defendants' opposition to Aiken County in the *Bodman* case, the same opposition will be found here.

Other cases in similar circumstances have also denied permissive intervention. In *Texas v. DOE*, permissive intervention for utilities in a nuclear waste case was denied.

> Nor is permissive intervention under Rule 24(b)(2) appropriate, because the utilities have no claim or defense involving common questions of law or fact with those in the ongoing proceeding as required by the rule.
> . . . .
> In sum, nothing in the statutory scheme of the NWPA nor in the policies underlying Fed.R.Civ.P. 24 justifies intervention.

*Texas v. DOE,* 54 F.2d at 553.

Likewise, in *James City County*, the district court denied permissive intervention to the prospective applicant intervenor because as the case "center[ed] on review of the administrative process, there appears little that the applicants could add to the existing record at this time. Therefore, in the court's discretion, the Court DENIES the applicants' request for permissive intervention." *James City Cty*, 131 F.R.D. at 474-75. Similar to this case, there are no factual disputes and thus nothing the Alliance can add to the litigation. This case will rise and fall on the State's pending summary judgment motion, which asks this Court to compel the Federal Defendants to perform their mandatory duties under Section 2566, which imposes duties and obligations to the State of South Carolina. Since the Alliance has nothing to offer in the prosecution of this case, this Court should exercise its discretion and deny the Motion to Intervene.

Moreover, in light of the particular posture of this case, allowing intervention would prejudice the existing parties and unduly delay adjudication (including the vindication of the very rights the Alliance claims to seek to protect). As in the *Thomas* case in which this Court declined to allow permissive intervention, the Alliance's intervention in this case could "potentially unduly delay the adjudication of the case on the merits[ ] and generate little, if any, corresponding benefit to the existing parties. . . ." *Thomas v. Ford Motor Co.*, No. Civ. A. 5:13-01417, 2014 WL 1315006, at *5 (D.S.C. Mar. 28, 2014).

For these reasons, the Motion to Intervene should be denied as the Alliance seeks to create new issues and disputes and would unduly delay and prejudice the existing adjudication.

### III.  THE ALLIANCE'S CLAIM FOR MONEY IS ACTUALLY A CLAIM AGAINST THE STATE OF SOUTH CAROLINA.

While nominally proposed to be an intervenor-plaintiff against the Federal Defendants, what the Alliance is actually doing is suing the State of South Carolina for equitable

apportionment of the penalties and fines paid to the State as the economic and impact assistance.[5] The Motion to Intervene states that the Alliance "alleges, and seeks a Court order finding that, it is an intended and appropriate beneficiary of the economic and impact assistance payments required by 50 U.S.C. § 2566 and an award of an equitable portion of any such economic and impact assistance payments." ECF No. 6, Mot. to Intervene at 5. The Alliance's Executive Director publicly affirmed its desire for money from the State:

> "If the state is filing to gain some settlement or long-term action, **we think we ought to**, as a community, **gain something out of any fines or damages paid instead of having the funds go to the general fund of South Carolina**," [Alliance Executive Director Danny] Black said.

Ex. 1, Thomas Gardiner, *Nonprofit group files to intervene in S.C lawsuit against DOE over MOX project*, Aiken Standard (April 6, 2016). In short, the purpose of the intervention by the Alliance is to seek a federal court order requiring the State to give money to a private citizen.

As a threshold matter, it is apodictic that federal courts are courts of limited jurisdiction and that the concept of federalism requires respect for the State as a sovereign. The State has not waived its sovereign immunity in this proceeding as to a claim by the Alliance, and therefore this Court cannot provide the Alliance with any redressability against the State (thus eliminating the whole purpose of the Alliance's intervention).

Instead, the Alliance should allow the legislative and political process to work. Should the Court grant the State's summary judgment motion and the Federal Defendants comply with their statutory obligations, then the State of South Carolina is entitled to $1 million per day capped at $100 million for the calendar year of 2016. As by statute that payment goes to the

---

[5] Thus, if this Court grants intervention, the caption should reflect that the Alliance is an intervenor-plaintiff against the State of South Carolina and against the Federal Defendants. The State would then file a motion to dismiss the Alliance from the case.

State, in a judgment scenario it is left to the State's elected officials to determine the disposition of those funds. By asking this Court to divert funds in contravention of federal law and as required by statute to be paid to the State, the Alliance asks a federal court to inject itself into the state appropriations process and make political and policy decisions on behalf of the State. This the Court simply cannot and should not do.

For these reasons, the Alliance's requested intervention to sue the State of South Carolina and take money that should rightfully paid to the State should be denied.

## CONCLUSION

For the reasons set forth above, the Alliance has failed to meet its burden and establish any, much less all, of the requirements for intervention as of right and cannot show that permissive intervention is justified or warranted and thus the Motion to Intervene should be denied.

[SIGNATURE PAGE FOLLOWS]

Respectfully submitted,

Alan Wilson, Fed. Bar No. 10457
Robert D. Cook, Fed. Bar No. 285
T. Parkin Hunter, Fed. Bar No. 2018
**ATTORNEY GENERAL FOR
THE STATE OF SOUTH CAROLINA**
Post Office Box 11549
Columbia, South Carolina 29211-1549
awilson@scag.gov
bcook@scag.gov
phunter@scag.gov
(803) 734-3970

s/Randolph R. Lowell
Randolph R. Lowell, Fed. Bar No. 9203
Benjamin P. Mustian, Fed. Bar No. 9615
John W. Roberts, Fed. Bar No. 11640
**WILLOUGHBY & HOEFER, P.A.**
Post Office Box 8416
Columbia, South Carolina 29202-8416
rlowell@willoughbyhoefer.com
bmustian@willoughbyhoefer.com
jroberts@willoughbyhoefer.com
(803) 252-3300

William H. Davidson, II, Fed. Bar No. 425
Kenneth P. Woodington, Fed. Bar No. 4741
**DAVIDSON & LINDEMANN, P.A.**
1611 Devonshire Drive, 2nd Floor
Post Office Box 8568
Columbia, South Carolina 29202-8568
wdavidson@dml-law.com
kwoodington@dml-law.com
(803) 806-8222

*Attorneys for the State of South Carolina*

April 18, 2016
Columbia, South Carolina