# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
### AIKEN DIVISION

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:16-00391-JMC |
| | ) | |
| UNITED STATES; | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF ENERGY; | ) | |
| | ) | |
| DR. ERNEST MONIZ, in his official capacity as Secretary of Energy; | ) | |
| | ) | |
| NATIONAL NUCLEAR SECURITY ADMINISTRATION; and | ) | |
| | ) | |
| LT. GENERAL FRANK G. KLOTZ, in his official capacity as Administrator of the National Nuclear Security Administration and Undersecretary for Nuclear Security; | ) | |
| | ) | |
| Defendants. | ) | |

# THE STATE OF SOUTH CAROLINA'S

# RESPONSE IN OPPOSITION

# TO THE FEDERAL DEFENDANTS'

# MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ............................................................................................... 1

ARGUMENT ...................................................................................................... 5

    I.    SOUTH CAROLINA HAS A CAUSE OF ACTION TO SEEK FEDERAL DEFENDANTS' COMPLIANCE WITH SECTION 2566(c) .................................... 5

        A.    Pursuant to its plain and unambiguous language, Section 2566(c) imposes a mandatory, non-discretionary duty on the Federal Defendants to remove 1 metric ton of plutonium from South Carolina no later than January 1, 2016 ...................................................... 5

        B.    The Federal Defendants' contortions and misinterpretations of Section 2566(c) have no merit .......................................................... 6

            (1)    The Federal Defendants admit that South Carolina has a cause of action if Section 2566(c) imposes a mandatory, non-discretionary duty ........................................................................... 9

            (2)    The plain language of Section 2566 defeats the Federal Defendants' strained arguments and confirms that failure to comply with Section 2566(c) is not remedied by compliance with Section 2566(d) ........................................................ 10

            (3)    Contrary to the Federal Defendants' arguments, the removal scheme established by the plain language of Section 2566 is not "irrational" or "absurd" but is instead entirely consistent with the legislative history and the statute's purposes ........................... 15

    II.    THIS COURT HAS THE JURISDICTION AND AUTHORITY TO DECLARE THAT THE FEDERAL DEFENDANTS' FAILURES TO COMPLY WITH SECTION 2566(d) ARE UNLAWFUL AND TO COMPEL THE FEDERAL DEFENDANTS' COMPLIANCE ................................................. 21

        A.    The Complaint seeks declaratory and equitable relief to compel compliance with Section 2566(d), requiring jurisdiction in the Court .............. 22

        B.    The Court of Federal Claims lacks jurisdiction over monetary relief such as the economic and impact assistance fine and penalty when the Federal Defendants elected to make such payments, and thus jurisdiction vests only in this Court ................................................................. 24

(1) Whether to pay the economic and impact assistance penalty and fine to the State is a decision wholly within the discretion of the Federal Defendants ...................................................................................26

(2) The economic and impact assistance payment is a fine and penalty for failing to remove the defense plutonium, not a compensatory damage .....................................................................................................27

(3) The Federal Defendants fail to argue the Court of Federal Claims provides an adequate alternative form of relief .........................................32

III. SOUTH CAROLINA HAS STANDING FOR ALL OF ITS CLAIMS AND REQUESTS FOR RELIEF, AND THE FEDERAL DEFENDANTS' ATTACKS ARE BOTH MERITLESS AND PREMATURE....................................33

IV. SOUTH CAROLINA HAS A CAUSE OF ACTION AGAINST THE FEDERAL DEFENDANTS FOR THEIR VIOLATION OF THE UNITED STATES CONSTITUTION .........................................................................36

CONCLUSION.............................................................................................................39

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Air Line Pilots Ass'n, Int'l v. U.S. Airways Grp., Inc.*,
   609 F.3d 338 (4th Cir. 2010) ....................................................................5

*Anglers Cons. Network v. Pritzker*,
   809 F.3d 664 (D.C. Cir. 2016) ................................................................10

*Bell v. Hood*,
   327 U.S. 678 (1946)............................................................................34, 35

*Bowen v. Massachusetts*,
   487 U.S. 879 (1988)........................................................................ *passim*

*Chamber of Commerce of U.S. v. Reich*,
   74 F.3d 1322 (D.C. Cir. 1996)................................................................22

*Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc.*,
   21 F. Supp. 3d 620 (W.D. Va. 2014) ....................................................35

*Doe v. United States*,
   463 F.3d 1314 (Fed. Cir. 2006).............................................................26

*Ensign Fin. Corp. v. Fed. Deposit Ins. Corp.*,
   785 F. Supp. 391 (S.D.N.Y. 1992) ........................................................32

*Esch v. Yeutter*,
   876 F.2d 976 (D.C. Cir. 1989)..........................................................24, 25

*Estate of Smith v. Heckler*,
   747 F.2d 583 (10th Cir. 1984) ..............................................................10

*Forest Guardians v. Babbitt*,
   174 F.3d 1178 (10th Cir. 1999) ........................................................5, 10

*Franklin v. Massachusetts*,
   505 U.S. 788 (1992)...............................................................................37

*In re Rowe*,
   750 F.3d 392 (4th Cir. 2014) ..................................................................5

*Kendall v. U.S. ex rel. Stokes*,
   37 U.S. 524 (1838)................................................................................38

*Lopez v. Davis,*
    531 U.S. 230 (2001) .........................................................................................5

*Lynch v. Alworth–Stephens Co.,*
    267 U.S. 364 (1925) .......................................................................................12

*Mach Mining, LLC v. Equal Employment Opportunity Commission,*
    135 S. Ct. 1645 (2015) ....................................................................................9

*Massachusetts v. Sullivan,*
    803 F. Supp. 475 (D. Mass. 1992) .................................................................27

*The Medicines Co. v. Kappos,*
    699 F.Supp.2d 804 (E.D. Va. Mar. 16, 2010) ...............................................11

*Meeks v. Emiabata,*
    2015 WL 1636800 (W.D. Va. Apr. 13, 2015) ...............................................35

*Nat'l Coalition for Students with Disabilities Educ. and Legal Defense Fund v.*
*Allen,*
    152 F.3d 283 (4th Cir. 1998) .........................................................................11

*Perri v. United States,*
    340 F.3d 1337 (Fed. Cir. 2003) .....................................................................27

*Sierra Club v. Jackson,*
    648 F.3d 848 (D.C. Cir. 2011) ..................................................................10, 11

*Stone v. Instrumentation Laboratory Co.,*
    591 F.3d 239 (4th Cir. 2009) .........................................................................21

*Transohio Sav. Bank v. Dir., Office of Thrift Supervision,*
    967 F.2d 598 (D.C. Cir. 1992) ...................................................................24, 25

*United States v. Noland,*
    517 U.S. 535 (1996) .......................................................................................21

*United States v. Testan,*
    424 U.S. 392 (1976) .......................................................................................27

*Youngstown Sheet and Tube Co. v. Sawyer,*
    343 U.S. 579 (1952) (Jackson, J. concurring) .................................................1

## Federal Statutes

5 U.S.C.A. §§ 701 *et seq.* ......................................................................................1, 6, 9

5 U.S.C.A. § 702 .......................................................................................................9, 22

5 U.S.C.A. § 704 .................................................................................................9, 29, 32

5 U.S.C.A. § 706 ...........................................................................................................9

28 U.S.C.A. § 1331 ........................................................................................................1

28 U.S.C.A. § 1361 .....................................................................................................1, 6

28 U.S.C.A. § 1491 ...................................................................................................26, 27

28 U.S.C.A. § 2201 .....................................................................................................1, 6

28 U.S.C.A. § 2202 .....................................................................................................1, 6

50 U.S.C.A. § 2566 ............................................................................................... *passim*

Bob Stump National Defense Authorization Act for Fiscal Year 2003 (NDAA
    FY03), Pub. L. No. 107-314, 116 Stat. 2458, Subtitle E, § 3181 ...............16, 17, 19

National Environmental Policy Act of 1969 ...........................................................16, 17

**Regulations**

26 C.F.R. § 1.162–21(a) .............................................................................................24

26 C.F.R. § 1.162–21(b)(2) .........................................................................................24

**Other Authorities**

147 Cong. Rec. S7895-05, 2001 WL 815212 (July 16, 2001) .......................................19

148 Cong. Rec. S5681-82, 107th Congress, Second Session (June 18, 2002) .............13

Congressional Record (House), 152 Cong. Rec. H3156-04, 2006 WL 1420552
    (May 24, 2006)......................................................................................................19, 32

Congressional Record (Senate), 151 Cong. Rec. S12740-01, 2005 WL 3039286
    (Nov. 14, 2005) ........................................................................................................31

U.S. Const. art. II, § 3 .................................................................................................38

## INTRODUCTION

The purpose of this lawsuit is simple—compelling the Federal Defendants[1] to do what 50 U.S.C.A. § 2566 (Section 2566) plainly requires them to do:

1. Remove defense plutonium from South Carolina; and

2. Pay penalties and fines to South Carolina.

*See* Section 2566(c), (d); Ex. 1, Table of Statutory Deadlines and Requirements. The Federal Defendants are subject to these requirements because they have failed to meet statutory processing deadlines for the MOX Facility at the Savannah River Site (SRS) in Aiken, South Carolina. *See id.* Significantly, they also have expressly stated they have no intention of complying with these requirements now or in the future. The State of South Carolina therefore is seeking declarations that the Federal Defendants' actions and failures to act contravene Federal law and the United States Constitution and requesting that they be enjoined to comply with Section 2566. 28 U.S.C.A. § 1331 (federal question); 28 U.S.C.A. § 1361 (mandamus); 28 U.S.C.A. §§ 2201 & 2202 (declaratory and injunctive relief); 5 U.S.C.A. §§ 701 *et seq.* (the Administrative Procedures Act or APA); *see* Compl. (ECF No. 1) ¶8.

Contrary to the Federal Defendants' position, the statute involved in this case is not a suggestion by Congress, but a requirement of law. *Youngstown Sheet and Tube Co. v. Sawyer*, 343 U.S. 579, 880 (1952) (Jackson, J. concurring) ("The Executive, except for recommendation and veto, has no legislative power. The executive action we have here . . . represents an exercise of authority without law."). In this case, DOE refuses to follow the law as written—and the statutory requirements are plain.

---

[1] The Federal Defendants are the United States of America, the United States Department of Energy (DOE), the Secretary of Energy (Secretary), DOE's semi-autonomous agency, the National Nuclear Security Administration (NNSA), and NNSA's Administrator.

First, because the Federal Defendants failed to meet the "MOX production objective" by January 1, 2014, Section 2566(c) mandated that they remove one metric ton of defense plutonium from South Carolina **no later than** January 1, 2016. In addition, Section 2566(c) also requires that they remove by January 1, 2022 all defense plutonium shipped to South Carolina but not processed by the MOX Facility. *See* Ex. 1. Contrary to the Federal Defendants' contentions, these are mandatory, non-discretionary duties that cannot be relieved by any other actions by the Federal Defendants, including the payment of penalties pursuant to Section 2566(d). South Carolina therefore is entitled to the following relief:

1.  a declaration that the Federal Defendants were legally obligated pursuant to Section 2566(c)(1) to remove one metric ton of defense plutonium from the State by January 1, 2016 and that they have failed to perform this statutory obligation;

2.  an injunction to compel the removal of one metric ton of defense plutonium from the State in accordance with the Federal Defendants' obligation pursuant to Section 2566(c)(1);

3.  a declaration and injunction enjoining the Federal Defendants from importing additional defense plutonium into the State until the Federal Defendants are in full compliance with Section 2566(c);

4.  a declaration that the Federal Defendants are legally obligated pursuant to Section 2566(c)(2) to remove from the State no later than January 1, 2022 any remaining defense plutonium not processed by the MOX Facility; and

5.  such other equitable relief the Court may deem necessary and proper, including the retention of jurisdiction over the ongoing relationship between the State and the Federal Defendants established by the statute to ensure the Federal Defendants comply with Section 2566(c) and any order of this Court.

Compl. ¶¶89-96 & Prayer for Relief.

Second, the Federal Defendants' failure to meet the MOX production objective by January 1, 2016 obligates them to remove an additional one metric ton of defense plutonium from South Carolina during this calendar year and in each year through 2021 unless they meet

the MOX production objective in those years. Demonstrating the importance of these objectives, as a deterrent to non-compliance Section 2566(d) requires the Federal Defendants to pay penalties to South Carolina in each of those years for each day (through the first 100 days of each year) that they do not meet the MOX production objective or remove the defense plutonium. *See* Ex. 1. Because the Federal Defendants have not complied with and disclaim any obligation to comply with these requirements—and they have not removed any defense plutonium or made any penalty payments to the State—South Carolina is entitled to the following relief:

1. a declaration that the Federal Defendants are legally obligated pursuant to Section 2566(d)(1) to remove an additional one metric ton of defense plutonium from the State during this calendar year and in each year through 2021 unless they meet the MOX production objective in those years;

2. a declaration and injunction to compel the Federal Defendants to comply with Section 2566(d)(1) by either meeting the MOX production objective, removing one metric ton of defense plutonium from the State, or paying the penalties and fines for each of the first 100 days of this year;

3. a declaration and injunction enjoining the Federal Defendants from importing additional defense plutonium into the State until the Federal Defendants are in full compliance with Section 2566(d); and

4. such other equitable relief the Court may deem necessary and proper, including the retention of jurisdiction over the ongoing relationship between the State and the Federal Defendants established by the statute to ensure the Federal Defendants comply with Section 2566(d) and any order of this Court.

Compl. ¶¶97-112 & Prayer for Relief.

Third, in addition to simply disregarding the plain requirements of Section 2566, the Federal Defendants have affirmatively undermined the Congressionally mandated MOX Facility construction and operation by failing to faithfully execute the laws enacted by Congress. South Carolina therefore is entitled to a declaration and order that the Federal Defendants have violated the United States Constitution. Compl. ¶¶84-88 & Prayer for Relief.

In view of the Federal Defendants' inaction and disavowal of any obligation to act despite the plain requirements of Section 2566, there is no basis for granting their Motion to Dismiss. The Federal Defendants argue that Section 2566(c) does not impose mandatory, non-discretionary duties, but the plain language as well as the statutory purpose and legislative history—including the fact that **DOE** drafted Section 2566(c) to require exactly what the Federal Defendants now say it does not—belies this argument. The Federal Defendants' jurisdictional argument omits the fact that, because the Court of Federal Claims lacks equitable jurisdiction, **only** this Court can grant the necessary equitable relief from the Federal Defendants' current and continuing disregard of their statutory duties. The Federal Defendants also contend that this Court lacks jurisdiction over this action by characterizing the complaint as an action for money damages, but South Carolina's request that this Court compel compliance with Section 2566(d) does not transform this case into an action for money damages merely because the payment of the statutorily mandated fines may result from enjoining the Federal Defendants to do what the law says they must. *See Bowen v. Massachusetts*, 487 U.S. 879 (1988).

The other arguments advanced in the motion to dismiss also are without merit. As explained more fully below, South Carolina has standing for its causes of action seeking the Federal Defendants' compliance with Section 2566 and this Court has the authority and discretion to tailor the proper and necessary relief that a determination on the merits of these causes of actions may warrant. Finally, contrary to the Federal Defendants' unsupported arguments, South Carolina maintains a cause of action for the Federal Defendants' violation of the United States Constitution.

**ARGUMENT**

I.      **SOUTH CAROLINA HAS A CAUSE OF ACTION TO SEEK FEDERAL DEFENDANTS' COMPLIANCE WITH SECTION 2566(c).**

It is undisputed that the Federal Defendants did not achieve the MOX production objective by January 1, 2014. Because the Federal Defendants did not remove one metric ton of defense plutonium within the two years prescribed by the statute for removal (and, to date, have not removed any plutonium), South Carolina has a cause of action in this Court to request that the Court declare and enjoin the Federal Defendants' compliance with the statute. This Court also has the authority and Congressionally mandated obligation to compel such compliance.

  A. **Pursuant to its plain and unambiguous language, Section 2566(c) imposes a mandatory, non-discretionary duty on the Federal Defendants to remove 1 metric ton of plutonium from South Carolina no later than January 1, 2016.**

The language of Section 2566(c)(1) is clear: "[i]f the MOX production objective is not achieved as of January 1, 2014, the Secretary **shall** . . . remove from the State of South Carolina . . . **not later than January 1, 2016**, not less than 1 metric ton of defense plutonium or defense plutonium materials." (Emphasis added.) This unambiguous language **requires** that the Federal Defendants remove one metric ton of plutonium from South Carolina no later than January 1, 2016 if the MOX production objective is not met by January 1, 2014. *See In re Rowe*, 750 F.3d 392, 396 (4th Cir. 2014) ("When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.") (internal quotation marks and citations omitted); *see Air Line Pilots Ass'n, Int'l v. U.S. Airways Grp., Inc.*, 609 F.3d 338, 342 (4th Cir. 2010) ("Because the statutory language does not admit of doubt as to Congress's intended meaning, it must be regarded as conclusive. . . . In short, we assume Congress said what it meant and meant what it said."); *Lopez v. Davis*, 531 U.S. 230, 241 (2001) ("Congress used 'shall' to impose discretionless obligations. . . ."); *Forest Guardians v. Babbitt,* 174 F.3d 1178, 1187 (10th Cir.

1999) ("The Supreme Court . . . [has] made clear that when a statute uses the word 'shall,' Congress has imposed a mandatory duty upon the subject of the command."); *see* State Mem. of Law (ECF No. 10-1) at 22-26.[2] Because the Federal Defendants failed to meet the production objective by January 1, 2014, the plain and unambiguous language of Section 2566(c)(1) therefore mandates their non-discretionary duty to remove one metric ton of plutonium from South Carolina no later than January 1, 2016.

### B. The Federal Defendants' contortions and misinterpretations of Section 2566(c) have no merit.

Despite the plain language of Section 2566(c)(1) and its use of the mandatory "shall," the Federal Defendants assert that South Carolina does not have a cause of action under the APA[3] based on the Federal Defendants' claim that the statute only sets "goals." The Federal Defendants offer three meritless reasons to support this contention. First, the Federal Defendants contend that—notwithstanding the wealth of Supreme Court precedent holding otherwise— "shall," as it is used in Section 2566(c), does not mean "shall" nor impose any mandatory duties on the Federal Defendants. However, the Federal Defendants acknowledge that other uses of "shall" in Section 2566 do, in fact, impose mandatory duties and requirements, and they provide nothing to overcome the "strong presumption" that when the same word is used more than once in the same statute Congress intends for the word to have the same meaning throughout.

Second, the Federal Defendants contend that the statute should be read to give them the choice of complying with Section 2566(c) or making the penalty payments prescribed by Section

---

[2] Because the arguments made in the Federal Defendants' Motion to Dismiss address and directly reference South Carolina's Memorandum of Law in Support of its Motion for Summary Judgment, *see, e.g.*, Mot. to Dismiss at 19, South Carolina hereby incorporates by reference this memorandum of law.

[3] DOE does not seek dismissal on the grounds that South Carolina's claims and requests for relief pursuant to 28 U.S.C.A. § 1361 and 28 U.S.C.A. §§ 2201 and 2202 are improper.

2566(d) because, they argue, Congress could not have intended to impose an "immediate" "injunctive remedy" on them. The plain language of Sections 2566(c) and 2566(d), which are separate statutory provisions with separate deadlines and separate purposes, *see* Ex. 1, does not support this contention. The legislative intent of Section 2566 also belies their position because the primary reason these requirements were put into statute was to prevent South Carolina from becoming the permanent dumping ground for plutonium. *See* State Mem. of Law at 2-19. Adopting the Federal Defendants' newfound and arbitrary interpretation of the statute would allow them to decide to **keep plutonium in the State indefinitely**, completely turning the statute on its head.

There also is nothing "immediate" about the requirement of Section 2566(c)(1) to remove plutonium. By its plain language, the Federal Defendants had two years to remove one metric ton of plutonium after failing to meet the January 1, 2014 deadline. Notably, this was the exact period of time for removal that **DOE proposed** when in 2002 DOE developed and proposed the language for Section 2566(c). Any immediacy is only now created because the Federal Defendants blatantly disregarded, and continue to disregard, the statutory requirement.

The Federal Defendants' references to Section 2566(c)'s requirements as "injunctive remedies" wholly mischaracterize the statute, which undercuts their entire motion. Initially, their assertions imply that the Federal Defendants had no intention of removing one metric ton of plutonium from South Carolina by January 1, 2016, but that only if South Carolina availed itself of an "injunctive remedy" could they be compelled to comply with the law.[4] Even so, as stated

---

[4] This is the most astonishing aspect of the Federal Defendants' position. It assumes that as a matter of course that they will not comply with the mandatory obligations of Section 2566 without a court order. In fact, the Federal Defendants have not, either before or after the filing of this action, uttered the slightest intimation that they will honor their clear statutory obligations to

previously, Section 2566(c) requires the Federal Defendants to remove one metric ton of plutonium by January 1, 2016 for their failure to meet the MOX production objective by January 1, 2014. It does not, by itself, create an injunctive remedy as Federal Defendants claim. In fact, if the Federal Defendants had followed the statutory mandates, they would be removing plutonium, not pursuant to an injunction, but in compliance with the law exactly as Congress and the United States Constitution intended. However, they have not done so. For this reason, South Carolina is seeking injunctive relief to compel them to obey the mandates of Section 2566(c).

Finally, the Federal Defendants, referencing only Section 2566(c)(2)'s requirement for removal by 2022 of all plutonium shipped to South Carolina but not processed, argue that Congress could not have intended to "create such an irrational scheme" and that South Carolina's interpretation of the statute is "absurd" and "untenable." Remarkably, the Federal Defendants ignore a critical fact of the legislative history: **DOE drafted and proposed the language of Section 2566(c)**. That is, the same language that the Federal Defendants now claim creates an "irrational scheme" was developed by DOE. In fact, at the time DOE proposed this language, DOE gave it the same meaning advanced by South Carolina and that the Federal Defendants now claim is "absurd" and "untenable." Federal Defendants' novel arguments should be rejected on this basis alone. Nevertheless, the plain reading of Section 2566(c) proffered by South Carolina does not produce absurd results but instead requires the very actions proposed by DOE, demanded by South Carolina, and, most importantly, intended by Congress when the statute was enacted. Neither the Federal Defendants nor this Court has the power to alter the statutory framework.

---

remove the plutonium or tender the penalty payments. Instead, the Federal Defendants have signaled that it will not comply unless ordered by this Court.

(1) The Federal Defendants admit that South Carolina has a cause of action if Section 2566(c) imposes a mandatory, non-discretionary duty.

Initially, the Federal Defendants' acknowledge that, if Section 2566(c) imposes a duty to remove plutonium (*i.e.*, shall means shall), then South Carolina has a cause of action under the APA to "compel agency action unlawfully withheld." Mot. to Dismiss (ECF No. 17) at 15-16; *see* State Mem. of Law at 20-26; 5 U.S.C.A. §§ 702, 704, 706. This is consistent with the "strong presumption" favoring judicial review of federal agency action. *Mach Mining, LLC v. Equal Employment Opportunity Commission*, 135 S. Ct. 1645, 1651 (2015) ("Congress rarely intends to prevent courts from enforcing its directives to federal agencies. For that reason, this Court applies a 'strong presumption' favoring judicial review of administrative action.").

Moreover, if the Federal Defendants' newfound interpretation of the statute is wrong, then not only does their motion to dismiss fail but South Carolina is entitled to a judgment as a matter of law. *See* State Mem. of Law at 22-26. There is no dispute that the Federal Defendants did not remove one metric ton of plutonium from South Carolina by January 1, 2016 (and still have not removed any plutonium from South Carolina).[5] Therefore, if this Court rejects the Federal Defendants' new and imaginative interpretation of Section 2566(c) and correctly finds that the statute imposes duties to remove the plutonium, South Carolina would be entitled to a declaration that the Federal Defendants failed to comply with the statute and an injunction

---

[5] The Federal Defendants cannot make a good faith argument that they even attempted to remove the plutonium. They do not believe—or, at least, claim they do not believe—that they have any duty to remove plutonium from the State. As the Federal Defendants' motion confirms, their entire strategy with respect to the requirements of Section 2566 was to force South Carolina to file suit and then invent after-the-fact arguments to shield them from being held responsible for their blatant disregard of federal law. *Mach Mining*, 135 S. Ct. at 1652-53 ("We need only know—and know that Congress knows—that legal lapses and violations occur, and especially so when they have no consequence. That is why this Court has so long applied a strong presumption favoring judicial review of administrative action.").

compelling them to remove the plutonium and take other appropriate action. *See* State Mem. of Law at 20-26; *Forest Guardians,* 174 F.3d at 1190 ("[W]hen Congress by organic statute sets a specific deadline for agency action, neither the agency nor any court has discretion. The agency must act by the deadline. If it withholds such timely action, a reviewing court must compel the action unlawfully withheld."); *Estate of Smith v. Heckler*, 747 F.2d 583, 591 (10th Cir. 1984) ("If . . . the court determines that the defendant official has failed to discharge a duty which Congress intended him to perform, the court should compel performance, thus effectuating the congressional purpose.").

> (2) The plain language of Section 2566 defeats the Federal Defendants' strained arguments and confirms that failure to comply with Section 2566(c) is not remedied by compliance with Section 2566(d).

Although failing to address any of the Supreme Court precedent and other cases stating that the use of "shall" imposes "discretionless obligations," the Federal Defendants contend that the plain language of Section 2566(c) does not mean they have a duty to remove plutonium from South Carolina and instead only establishes "goals." Mot. to Dismiss at 1-2, 19.[6] Yet, the Federal

---

[6] The Federal Defendants cite two D.C. Circuit cases in purported support of this strained argument, neither of which actually support their contention. The Federal Defendants first cite *Anglers Cons. Network v. Pritzker*, 809 F.3d 664 (D.C. Cir. 2016), for the proposition that "[t]here are instances when 'may' has been taken to mean 'must' and when 'shall' has been construed to mean 'may.'" Mot. to Dismiss at 19. However, they ignore that the court in that case rejected the argument that "may" and "shall" had any other meanings than their ordinary meanings and that, immediately preceding the cherry-picked comment cited by the Federal Defendants, the court stated: "'The traditional, commonly repeated rule is that *shall* is mandatory and *may* is permissive'. . . . Ordinarily, legislation using 'shall' indicates a mandatory duty while legislation using 'may' grants discretion." *Anglers*, 809 F.3d at 671 (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 112 (2012) and *Lopez v. Davis,* 531 U.S. 230, 241 (2001) (emphasis in original)).

Likewise, the Federal Defendants' reliance on *Sierra Club v. Jackson*, 648 F.3d 848 (D.C. Cir. 2011), is misplaced. In that case, the court stated, "[a]s we have repeatedly noted, 'shall' is usually interpreted as 'the language of command.'" Contrary to the Federal Defendants' representation, the court did not rule that the "statute's use of 'shall' still preserved [the]

Defendants make no attempt to reconcile this contention with their express acknowledgment that all other uses of "shall" in Section 2566 impose mandatory duties and requirements. *Compare* Mot. to Dismiss at 10 ("In keeping with **statutory obligations** of 50 U.S.C. § 2566, . . . DOE had suspended further transfers of such material to be processed at the MOX facility in SRS in compliance with 50 U.S.C. § 2566(b)(5)") (emphasis added) *with* 50 U.S.C.A § 2566(b)(5) ("If, after January 1, 2014, the Secretary determines the MOX production objective has not been achieved . . . the Secretary **shall** suspend further transfers. . . .") (Emphasis added); *see also* Mot. to Dismiss at 7 ("The statute **requires** the Department to submit a series of plans and reports to Congress concerning construction and operation of the MOX Facility. . . . If construction falls behind schedule, the statute **calls for** the Department to submit plans to Congress for corrective action . . . and it **must** eventually 'suspend further transfers' of defense plutonium to SRS. . . .") (Emphasis added).

The Federal Defendants' argument is that Congress intended for "shall" to actually mean "shall" every time it is used in Section 2566 **except** in Section 2566(c). This is unreasonable and directly conflicts with the "strong presumption that when Congress repeats the same word in the same statute, it intends for that word to be given the same meaning." *The Medicines Co. v. Kappos*, 699 F.Supp.2d 804, 809 (E.D. Va. Mar. 16, 2010). And, as further explained below, the Federal Defendants have presented nothing that overcomes this "strong presumption" or that would justify departing from the plain language of the statute. *Nat'l Coalition for Students with*

---

agency's discretion," *see* Mot. to Dismiss at 19, but rather that the term "as necessary" left some discretion to the agency as to how to comply with the applicable statute. *Sierra Club*, 648 F.3d at 856. Here, Section 2566(c) leaves no discretion to the Federal Defendants as to how they must comply. In contrast, Section 2566(d) leaves discretion as to whether the Federal Defendants will pay the penalties and fines imposed under **that Section**, but that has nothing to do with Section 2566(c). And even under Section 2566(d)(1), the Federal Defendants still **must** do something.

*Disabilities Educ. and Legal Defense Fund v. Allen*, 152 F.3d 283, 288 (4th Cir. 1998) ("Courts must apply the plain language of a statute except in the rare circumstance when there is a clearly expressed legislative intent to the contrary or when a literal application would frustrate the statute's purpose or lead to an absurd result."); *see Lynch v. Alworth–Stephens Co.,* 267 U.S. 364, 370 (1925) ("[T]he plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intellect would discover.") (quotations omitted).

The Federal Defendants also contend that the plain language of Section 2566(c)(1) does not impose a mandatory duty to remove from South Carolina one metric ton of plutonium no later than January 1, 2016 and that the plain language of Section 2566(c)(2) does not impose a mandatory duty to remove all plutonium shipped to South Carolina but not processed by the MOX Facility by January 1, 2022.  Instead, the Federal Defendants contend that Sections 2566(d)(1) and (d)(2) "address the consequences of failing to meet" these deadlines. Mot. to Dismiss at 16-17; *but see* Ex. 1. Accordingly, under the Federal Defendants' interpretation, if they make the penalty payments pursuant to Section 2566(d), then they have **no** obligation to remove **any** plutonium from the State.

Notwithstanding the natural conflict with the plain language of the statute, *see* Ex. 1, there are several glaring deficiencies with this recently discovered interpretation of Section 2566. First, the January 1, 2014 deadline in Section 2566(c) that triggers the Federal Defendants' obligation to remove one metric ton of plutonium no later than January 1, 2016 would be rendered meaningless under the Federal Defendants' interpretation. If Section 2566(d)(1) is the "consequence" for failing to meet the requirements of Section 2566(c)(1), then the only deadline that would matter is the January 1, 2016 triggering date in Section 2566(d)(1). The Federal

Defendants can provide no explanation as to why Congress would include the January 1, 2014 deadline and expressly require the removal of the plutonium "no later than January 1, 2016," if, according to Federal Defendants, the obligation to remove the plutonium did not even begin until January 1, 2016.

Second, pursuant to the plain language of Sections 2566(c)(1) and (d)(1), compliance with (c)(1) **does not** alleviate the Federal Defendants' obligations under (d)(1). If, as the Federal Defendants contend, the penalty payments under Section 2566(d)(1) are the "consequence" of failing to meet the Section 2566(c)(1) deadlines, then this necessarily means that meeting the Section 2566(c)(1) deadline would rid the Federal Defendants of having any obligations under Section 2566(d)(1). In other words, the Federal Defendants' interpretation of the statute would mean that if they had removed one metric ton of plutonium in 2014 or 2015, and therefore complied with Section 2566(c)(1), then they would not have **any** obligations under Section 2566(d)(1). But this scheme is illogical and conflicts with the plain statutory language.

As the Federal Defendants acknowledge, and the legislative history confirms, Section 2566(d)(1) requires the penalty payments "**each year**" from 2016 through 2021 that the MOX production objective is not achieved "**in such year**" or that the Federal Defendants have not removed one metric ton of plutonium "**in such year**." *See* Mot. to Dismiss at 17 (citing 148 Cong. Rec. S5681-82, 107th Congress, Second Session (June 18, 2002) (Congressional Budget Office (CBO) Summary of Section 2566).[7] Therefore, by the plain language of the statute,

---

[7] The Federal Defendants only quoted select excerpts of the CBO Summary but the full text of the applicable portion of the report reads:

> Section [2566] would require that the Secretary of Energy pay up to $100 million **a year** to the state of South Carolina beginning in [2016, after statutory change in the deadline], if the planned conversion schedule was not met. The federal government could

removal of one metric ton in 2014 or 2015 in compliance with Section 2566(c)(1) would not extinguish the yearly obligations to make the penalty payments under Section 2566(d)(1) for 2016, 2017, 2018, 2019, 2020, and 2021. Instead, these payment obligations are only extinguished if the Federal Defendants meet the MOX production objective or remove one ton of plutonium within the first 100 days of "**each year**."[8]

Finally, if there was any question that making the penalty payments pursuant to Section (d)(2) will not relieve the Federal Defendants' of their obligation pursuant to (c)(2) to remove all the plutonium shipped to South Carolina but not processed by the MOX Facility, Congress already has answered it by including Section (d)(2)(B), which provides: "**Nothing in this paragraph may be construed to terminate, supersede, or otherwise affect any other requirements of this section.**" (Emphasis added.) Accordingly, while removing all the plutonium from the State will relieve the Federal Defendants of any further obligation to make the penalty payments—because at that point the statutory purpose of preventing South Carolina from becoming the permanent repository for plutonium will be fulfilled—Congress expressly provided that it did not intend for the opposite to be true. Thus, making the penalty payments

---

avoid these penalties, however, if it removes at least one metric ton of plutonium **a year** from South Carolina over the [2016–2021 period, after statutory changes to the deadlines] and removes all remaining plutonium after [2021, after the statutory change to the deadline].

(Emphasis added.) Nothing in this report contradicts the fact that the penalty payments are not the consequence of failing to meet the Section 2566(c) requirements. Rather, this report accurately describes how the Federal Defendants can avoid the penalty payments by removing one ton of plutonium **each year**, which is the requirement of Section 2566(d)(1), not (c)(1).

[8] As of today, the Federal Defendants have an obligation to remove two tons—one under Section 2566(c) for the period ending January 1, 2016, and one under Section 2566(d) for the period beginning January 1, 2016. This removal requirement is cumulative, such that on January 1, 2017, the total amount required to be removed is a cumulative three tons, and so on.

does not relieve the Federal Defendants of their obligations under Section 2566(c) to remove the plutonium from South Carolina. Simply put, Congress has expressly stated that the Federal Defendants' proposed interpretation of Section 2566 is wrong.

At bottom, Section 2566(c) and Section 2566(d) serve separate and distinct purposes. As confirmed by the legislative history, Section 2566(c) was intended to prevent South Carolina from becoming the permanent repository for plutonium. In order to avoid this result, Congress established a "firm" date by which one metric ton of plutonium had to be removed from South Carolina if certain processing deadlines were not met in addition to a "firm" date by which all plutonium shipped to South Carolina "but not processed" had to be removed.

Section 2566(d)(1), on the other hand, establishes the ongoing requirement to meet the MOX production objective or remove one metric ton of plutonium "**each year**" and imposes penalties to incentivize DOE to meet these requirements as soon as possible in "**each year**." And Section 2566(d)(2) is not the alternative to removing all the plutonium but rather the incentive for (and penalty for not) processing the plutonium on a consistent basis. *See* 50 U.S.C.A. § 2566(d)(2)(A) (imposing penalty if DOE did not meet the MOX production objective in two consecutive years and had not processed three metric tons of plutonium in total). In sum, and as Congress expressly stated, paying the penalties under Section 2566(d) does not relieve the Federal Defendants of their obligations under Section 2566(c).

     (3) <u>Contrary to the Federal Defendants' arguments, the removal scheme established by the plain language of Section 2566 is not "irrational" or "absurd" but is instead entirely consistent with the legislative history and the statute's purposes.</u>

In the right-hand column of the table below is the current language of Section 2566(c). The almost identical provisions in the left-hand column is the proposed legislation drafted and

championed by **DOE** in its 2002 proposed agreement[9] to South Carolina and included under the heading, "REMOVAL OF MATERIAL FROM SOUTH CAROLINA." State Mem. of Law Ex. 18, Ltr. of Abraham to Hodges, dated April 11, 2002. **As explained by DOE** at the time, this proposed language meant that, even considering potential difficulties with removal, "at least one ton will be removed **within two years** and all material will be removed **within no more than eight years**" of the failure to meet the initial statutory deadline for processing plutonium. *Id.*

| **Legislation Proposed by DOE in 2002** | **Current Section 2566(c)** |
|---|---|
| If the MOX Fuel Fabrication Facility is not producing at least one metric ton of MOX per year by January 1, 2009, the Secretary of Energy shall, consistent with the NEPA and other governing laws and subject to the availability of appropriations, remove at least one ton of weapons-usable plutonium by January 1, 2011, and shall remove an amount of weapons-usable plutonium equal to the amount of weapons usable plutonium transferred to the Savannah River Site after April 15, 2002 by January 1, 2017. | If the MOX production objective is not achieved as of January 1, 2014,[10] the Secretary shall, consistent with the National Environmental Policy Act of 1969 and other applicable laws, remove from the State of South Carolina, for storage or disposal elsewhere-- (1) not later than January 1, 2016, not less than 1 metric ton of defense plutonium or defense plutonium materials; and (2) not later than January 1, 2022, an amount of defense plutonium or defense plutonium materials equal to the amount of defense plutonium or defense plutonium materials transferred to the Savannah River Site between April 15, 2002, and January 1, 2022, but not processed by the MOX facility. |

[9] As set forth in South Carolina's Memorandum in Support of Motion for Summary Judgment, this proposed agreement from DOE and the resulting legislation (Section 2566) was the culmination of negotiations between South Carolina (*i.e.*, then-Governor Hodges and South Carolina's Congressional Delegation) and DOE regarding the transport and temporary storage of plutonium in South Carolina and the construction and operation of the MOX Facility. While this agreement was not accepted by South Carolina, DOE's proposed legislation was substantially included in what became Section 2566 in addition to other requirements, including the penalties.

[10] The deadlines set forth in DOE's proposed legislation were the exact deadlines that were included in the statute when Section 2566 was enacted.  *See* Bob Stump National Defense Authorization Act for Fiscal Year 2003 (NDAA FY03), Pub. L. No. 107-314, 116 Stat. 2458, Subtitle E, § 3182.

DOE further explained in the letter accompanying the proposed agreement and legislation that:

> [W]e have included in the proposed agreement terms developed through negotiations with your staff to guide the program in the future, including the following **firm commitments**:
> ….
> 5. A **commitment** to maintain a pathway out of South Carolina for any plutonium brought into the State, including **firm dates by which such material would be removed from the State** if DOE, for any reason, were to be unable to secure the funding necessary to build the MOX facility.

*Id.* (Emphasis added). DOE also stated that:

> Notwithstanding our belief that the aforementioned approaches would satisfactorily permit the enforcement of our agreement, we are also prepared to support a legislative fix as well. To that end, the agreement I am forwarding you contains **a legislative proposal that specifically requires the Department to remove all plutonium brought to Savannah River after April 15, 2002 if the MOX facility is not built and operating on schedule**.

*Id.* (Emphasis added).[11]

The day after sending the proposed agreement and legislation to South Carolina, the Secretary followed up, noting that his

> inclusion in yesterday's letter of a legislative proposal . . . would actually **put into positive law a requirement** that the Department of Energy **remove** any plutonium brought to Savannah River if the MOX facility is not constructed and operating on schedule.

---

[11] DOE further explained that a delay of 18 months in the construction and operation of the MOX Facility would be treated "as precluding completion of the MOX [Facility]." *Id.* This explains why the failure to meet the January 1, 2014 processing deadline in Section 2566(c)—which equates to a two-year delay in planned operations—triggers the "firm" removal obligations.

Notably, DOE has proposed to Congress to eliminate and kill the MOX Facility and program. Incredibly, the Federal Defendants have told this Court they "take no position" on whether they are trying to shut down the program or not, despite actively advocating for the program's demise—including recent Congressional testimony from Defendants Moniz and Klotz.

….
I believe the prior steps I have taken, as outlined above, demonstrate my strong personal interest in and commitment to accommodating **the reasonable requests of the State of South Carolina**. I also believe my proposal of yesterday actually addresses each of the concerns you have raised . . . **[I]f you believe more is needed, join hands with me to seek swift passage of the legislation I have proposed.  That would allow us to move forward together in the best interests of the people of South Carolina and the United States**.

Ex. 2, Ltr. of Abraham to Hodges, dated April 12, 2002 (Emphasis added).

Fourteen years later, the Federal Defendants now come before this Court and contend that **the language DOE drafted** creates an "irrational scheme" and that the very meaning DOE gave to that language in 2002 is "absurd" and "untenable." Mot. to Dismiss at 20, 22. But this history, as well as the rest of the legislative history of Section 2566, demonstrates that the statutory framework established by the plain language of Section 2566 is exactly what Congress intended and is the only scheme that fulfils the statutory purpose.

As evident from the negotiations between South Carolina and DOE prior to the enactment of Section 2566, the primary concern of South Carolina was that any plutonium that was shipped to the State had a pathway out of the State, either through processing or removal. *See* State Mem. of Law at 5-14. DOE recognized this in a February 2002 report to Congress in which it advocated for the construction of the MOX Facility and stated that "[s]torage in place undercuts existing commitments to the states, particularly South Carolina, which is counting on disposition as a means to avoid becoming the permanent 'dumping ground' for surplus weapons-grade plutonium by providing a pathway out of the site for plutonium brought there for disposition." State Mem. of Law, Ex. 2, *Report to Congress* 5-2. This is why DOE included "firm dates" for the removal of plutonium for missing the processing deadlines in its proposed agreement to South Carolina. When it enacted Section 2566, Congress expressly found that:

> **The State of South Carolina desires to ensure** that all plutonium
> transferred to the State of South Carolina is stored safely, that the
> full benefits of the MOX facility are realized as soon as possible;
> and, **specifically, that all defense plutonium or defense
> plutonium materials transferred to the Savannah River Site
> either be processed or be removed expeditiously**.

Bob Stump National Defense Authorization Act for Fiscal Year 2003 (NDAA FY03), Pub. L.
No. 107-314, 116 Stat. 2458, Subtitle E, § 3181.[12] The Federal Defendants' new argument that
the penalty payments under Section 2566(d) are the only consequence of failing to comply with
Section 2566(c) would entirely defeat this purpose of the statute because the Federal Defendants
would **never** have to remove **any** plutonium from South Carolina. Instead, under the Federal
Defendants' interpretation, South Carolina may be entitled to receive the penalty payments, but
would be doomed to become the permanent "dumping ground" for plutonium.[13]

---

[12] The Federal Defendants misrepresent the legislative history. Partially quoting a
statement by South Carolina Congressman John Spratt regarding the requirements of Section
2566, they argue: "'The penalty payments imposed on the Department of Energy,' not an
unmentioned injunctive remedy, 'were our ace in the hole.'" Mot. to Dismiss at 18. However, the
full quote from Congressman Spratt demonstrates that, contrary to the Federal Defendants'
mischaracterization of Congressman Spratt's statement, the purpose of the statute is to require
the expeditious processing and **removal** of the plutonium:

> When South Carolina agreed to take the Nation's plutonium, it did
> not do so to become plutonium's final burial place. We only took
> the plutonium **with the promise that** a processing facility and
> **ultimate removal would be forthcoming. The penalty payments
> imposed** on the Department of Energy were our ace in the hole **to
> make sure this happened**.

Congressional Record (House), 152 Cong. Rec. H3156-04, 2006 WL 1420552 (May 24, 2006)
(emphasis added). Never did Congressman Spratt state, nor is there anything in the legislative
history to suggest, that payment of the penalties and fines would relieve the Federal Defendants
of the only obligation that effectuates the purpose of the statute—removal of the defense
plutonium.

[13] *See* 147 Cong. Rec. S7895-05, 147 Cong. Rec. S7895-05, 2001 WL 815212 (July 16,
2001) (Senator Thurmond remarking prior to the enactment of Section 2566: "I am still
concerned the administration is not fully committed to the Plutonium Disposition Program,

Ignoring that their interpretation is at complete odds with the purpose of the statute, the Federal Defendants nevertheless claim that Congress could not have intended to impose an "immediate" "injunctive remedy" against them through Section 2566(c)(1) or to require the removal of all the plutonium shipped to South Carolina but not processed by 2022. As discussed, Congress merely codified DOE's proposal to remove one metric ton of plutonium within two years of failing to meet certain processing objectives for the MOX Facility in order to address South Carolina's primary concern about becoming the permanent repository for plutonium.[14] Accordingly, Section 2566(c) is not an "injunctive remedy"—it simply is a Congressional mandate that now requires court intervention (by way of declaration and injunction) because the Federal Defendants blatantly disregard the law and their obligations.

The requirements of Section 2566(c) also do not produce an unworkable scheme or produce "absurd results." Having proposed the removal timetable set forth in the statute, it escapes logic for DOE to now call it "irrational" or "absurd." Nevertheless, the Federal Defendants ignore that Section 2566(c)(2) only requires the removal of plutonium "not processed." Thus, if after missing the initial deadline the Federal Defendants begin processing plutonium, there may not be any plutonium left for removal by 2022. Even if there was, this does not mean that Congress did not intend, as DOE proposed in 2002, to include a firm date for removal.

---

leaving South Carolina as a dumping ground for our Nation's surplus nuclear weapons material.").

[14] By statute, the Federal Defendants had two years to remove the one metric ton of plutonium from South Carolina. However, the Federal Defendants knew as early as 2006 that they were not going to meet the MOX production objective by 2014 and thus has had approximately 10 years to plan for the removal of the plutonium. *See* State Mem. of Law, Ex. 39, DOE/NNSA Report to Congress (Oct. 3, 2011).

And even if the removal requirements are difficult to meet—which they should not be considering the Federal Defendants have known about them since 2002—only Congress, and not the Federal Defendants or the Court, has the authority to rewrite the statute or change the statutory deadlines (which it has done on several prior occasions). *Stone v. Instrumentation Laboratory Co.*, 591 F.3d 239, 248-49 (4th Cir. 2009) ("If the aggressive statutory timetable is unworkable in practice, the remedy must be provided by Congress, not the courts, as we do not reweigh policy determinations made by the legislature."); *see United States v. Noland,* 517 U.S. 535, 541 n.3 (1996) ("[Defendant] may or may not have a valid policy argument, but it is up to Congress, not this Court, to revise [the statutory framework]."). Simply put, by accepting the Federal Defendants' arguments and rejecting the plain language and legislative purpose of Section 2566(c), this Court would be usurping the role of Congress.

Therefore, the plain language, the purpose, and the legislative history of Section 2566, as well as DOE's pre-litigation interpretation, all demonstrate that Section 2566(c) imposes a mandatory, non-discretionary duty on the Federal Defendants to remove one metric ton of plutonium from South Carolina by January 1, 2016. Thus, South Carolina has a cause of action under the APA to compel the Federal Defendants to comply with Section 2566(c).

## II.    THIS COURT HAS THE JURISDICTION AND AUTHORITY TO DECLARE THAT THE FEDERAL DEFENDANTS' FAILURES TO COMPLY WITH SECTION 2566(d) ARE UNLAWFUL AND TO COMPEL THE FEDERAL DEFENDANTS' COMPLIANCE.

It is undisputed that the Federal Defendants did not achieve the MOX production objective by January 1, 2016. Because the Federal Defendants opted not to remove one metric ton of defense plutonium in the first 100 days of 2016 (and, to date, have not removed any plutonium), South Carolina has a cause of action in this Court to request that the Court declare and enjoin the Federal Defendants' compliance with the statute, including removal of the defense

plutonium and payment of the economic and impact assistance fine and penalty, and this Court has the authority and Congressionally mandated obligation to compel such compliance.[15]

Just as they erroneously framed the statutory mandates for the removal of plutonium set forth in Section 2566(c) as "injunctive remedies," the Federal Defendants wrongfully claim the penalty payments prescribed by Section 2566(d) that have they have elected (but still refuse) to pay are actually "money damages" and therefore South Carolina's causes of action *maybe* belong in the Court of Federal Claims. This argument fails because Section 2566(d) does not provide, nor is South Carolina seeking, "money damages," but rather equitable and monetary relief. And even if the Court of Federal Claims could provide some limited remedy to South Carolina—which even the Federal Defendants will not acknowledge—it would fall well short of the full and adequate relief to which South Carolina is entitled and that only this Court can provide.

### A. The Complaint seeks declaratory and equitable relief to compel compliance with Section 2566(d), requiring jurisdiction in this Court.

The Federal Defendants have failed to comply with Section 2566(d), and they have no substantive defense to this claim. The statute requires satisfaction of the MOX production objective by January 1, 2016. The Secretary and DOE knew for years prior to the deadline that they could not meet it. Yet—just as with the requirement of Section 2566(c)(1)—they failed to take any substantive action to comply with Section 2566(d)(1)'s mandate to remove one metric ton of defense plutonium from the State within the first 100 days or pay fines and penalties. The Federal Defendants will not meet the MOX production objective during this calendar year, but, as they have informed this Court, they still have no intention of removing the additional one

---

[15] The APA waives sovereign immunity for all these causes of action and requests for relief in this case. 5 U.S.C.A. § 702; *Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996) ("The APA's waiver of sovereign immunity applies to any suit whether under the APA or not.").

metric ton of plutonium by the end of the year as required by Section 2566(d)(1). This lawsuit, which asserts causes of action under the APA and for mandamus, declaratory, and injunctive relief, was filed to compel the Federal Defendants to comply with plain and unambiguous Federal law and can only be litigated in this Court.

The prime objective of this lawsuit is to prevent South Carolina from becoming the "dumping ground" for the Nation's plutonium, which was the entire purpose of Section 2566. *See* Ex. 3, Table of Causes of Action; State Mem. of Law at 2-19. In order to avoid this result, South Carolina seeks declaratory relief as to the Federal Defendants' continuing legal obligations under both Sections 2566(c) and 2566(d) and injunctive relief to compel compliance with these Subsections—both of which require removal of plutonium and which only **now** require payment of the penalties because the Federal Defendants have elected to pay them. Arguing otherwise, the Federal Defendants completely disregard the fact that their compliance with Section 2566(d)(1) could have resulted in South Carolina receiving **no** money if they had elected to remove the plutonium early on under Section 2566(d)(1). They also ignore the fact that, at the time this suit was filed, the Federal Defendants still had the discretion to meet the MOX production objective or remove the plutonium and avoid any further penalties.

Far from being an adequate remedy, if all that Section 2566 provides and all that South Carolina can obtain—as Federal Defendants contend—is a "naked money judgment" in the Court of Federal Claims, then the Federal Defendants will be able to continue disregarding their obligations to the State to remove plutonium as mandated by Congress. *Bowen v. Massachusetts*, 487 U.S. 879, 905 (1988) ("We are not willing to assume, categorically, that a naked money judgment against the United States will always be an adequate substitute for prospective relief fashioned in the light of the rather complex ongoing relationship between the parties.");

*Transohio Sav. Bank v. Dir., Office of Thrift Supervision*, 967 F.2d 598, 608 (D.C. Cir. 1992) ("Because the Claims Court cannot grant the equitable relief Transohio seeks—it cannot, for example, order specific performance or rescission—the "adequate remedy" limitation on the APA's waiver of sovereign immunity does not interfere with district court jurisdiction over Transohio's claims."); *Esch v. Yeutter*, 876 F.2d 976, 984 (D.C. Cir. 1989) (holding, under similar circumstances, that seeking injunctive relief that results in payments is, pursuant to Supreme Court authority, "certainly not an action for money damages").[16]

**B. The Court of Federal Claims lacks jurisdiction over monetary relief such as the economic and impact assistance fine and penalty when the Federal Defendants elected to make such payments, and thus jurisdiction vests only in this Court.**

The Court of Federal Claims has limited jurisdiction, and in a statutory context does not have exclusive jurisdiction but rather only has jurisdiction over a claim of statutory breach and damages compensating for loss caused by injury from such breach. Here, the payments sought amount to a penalty and fine[17] for electing to not remove the defense plutonium from the State for each day within the first 100 days of the calendar year, and the APA provides an avenue of relief in this Court to accomplish compliance with the statute. *Esch*, 876 F.2d at 976 (holding that a claim to entitlement of monies under a federal program that the Federal government was refusing to pay was a claim cognizable in the district court under the APA); *see Transohio*, 967 F.2d at 610 ("[U]nder § 702 and the Tucker Act, litigants may bring common-law contract

---

[16] Section 2566(d) specifically contemplates the State of South Carolina obtaining equitable, injunctive relief against the Federal Defendants. 50 U.S.C.A. § 2566(d)(3) ("If the State of South Carolina obtains an injunction. . . ."). The statute thus contemplates equitable relief, and since the Court of Federal Claims lacks equitable jurisdiction, the statute specifically contemplates an action in this Court to enforce Section 2566(d).

[17] Federal Treasury Regulations define a "fine or other penalty" as (1) paid to a (2) State as a (3) civil penalty (4) imposed by Federal law. 26 C.F.R. § 1.162–21(a). Notably, the Treasury Regulations also provide that "[c]ompensatory damages . . . paid to a government do not constitute a fine or penalty." 26 C.F.R. § 1.162–21(b)(2).

claims only as actions for money damages in the Claims Court, but **they may bring statutory and constitutional claims for specific relief in federal district court.**") (emphasis added).

Notably, in *Esch*, the Federal government asserted that the injunctive relief sought would result in the mandatory payment of monies to the plaintiff. Thus, the Federal government argued that the plaintiff sought monetary relief and sought to have the case dismissed claiming that jurisdiction resided only with the Court of Federal Claims. *Id.* at 978. The court rejected this argument, allowing for specific monetary relief (as opposed to damages) for statutory performance. The *Esch* court further noted that in *Bowen* the Supreme Court "expressly repudiated the notion that suits seeking monetary relief from the Federal Government are necessarily suits seeking 'money damages' cognizable exclusively in the Claims Court." *Esch*, 876 F.2d at 978. This Court should reject the same argument in the same context in this case.

The Federal Defendants' attempt to reclassify a straightforward claim for specific relief to enforce a statutory mandate into something else also mirrors prior failed attempts. When addressing similar issues in *Transohio*, the court stated:

> It is no response to suggest that Transohio could reframe its claim as one for damages and bring it in the Claims Court. That is precisely the "restrictive—and unprecedented—interpretation of § 704" that the Supreme Court rejected in its most recent case addressing the relationship between the APA and the Tucker Act, *Bowen v. Massachusetts,* 487 U.S. 879 (1988).

*Transohio*, 967 F.2d at 608.

Supreme Court precedent also is inapposite to the Federal Defendants assertions:

> Our cases have long recognized the distinction between an action at law for damages—which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation—and an equitable action for specific relief—which may include an order providing for the reinstatement of an employee with backpay, or for 'the recovery of specific property *or monies,* ejectment from land, or injunction either directing or restraining

> the defendant officer's actions.' *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 688 (1949) (emphasis added). **The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'** Thus, we have recognized that relief that orders a town to reimburse parents for educational costs that Congress intended the town to pay is not "damages"

*Bowen*, 487 U.S. at 893-94 (emphasis added).

In this case, for each of the first 100 days of the year, the Federal Defendants could remove defense plutonium or pay the statutory penalties. They chose not to remove defense plutonium on any of those days, and, as a result, the Federal Defendants have elected for each one of those days to pay the monetary fine and penalty. The State of South Carolina is the master of its complaint, and it **seeks specific relief for compliance with the statute**. The Federal Defendants' attempts to rewrite the complaint are meritless.

(1) Whether to pay the economic and impact assistance penalty and fine to the State is a decision wholly within the discretion of the Federal Defendants.

In this case, any payment of the economic and impact assistance penalty is wholly within the discretion of the Federal Defendants. All the Federal Defendants have to do to avoid the penalty is process the defense plutonium in the MOX Facility (by achieving the MOX production objective) or remove one metric ton of defense plutonium in the first 100 days of the year. In fact, the Federal Defendants admit and concede that "Congress left it to" DOE and NNSA to exercise complete and total discretion "to decide whether to remove defense plutonium or pay the financial penalty. . . ." Mot. to Dismiss at 9.

Whether a statute is "money–mandating" under the Tucker Act (28 U.S.C.A. § 1491) turns on whether or not the government has discretion to make payments under a statute. In that regard, the Federal Circuit has held that a source of law is not money-mandating when the government enjoys discretion in determining whether to make payments. *See Doe v. United*

*States,* 463 F.3d 1314, 1324 (Fed. Cir. 2006) (a statute is not money-mandating when it gives the government discretion over whether or not to pay). Because Congress left the discretion to elect to make the payment of the economic and impact assistance fines and penalties wholly to the Federal Defendants, this is a money-***authorizing*** statute. *See Perri v. United States*, 340 F.3d 1337, 1341 (Fed. Cir. 2003) ("[T]he Department of Justice Assets Forfeiture Fund [ ] authorized the Attorney General to make payments from the Fund for specified purposes. . . . It is a **money-*authorizing* statute, not a money-mandating one.**") (emphasis added).

The Federal Defendants exercised their discretion to pay the penalties and fines but now seek to escape that choice and election and the statutory consequences and have failed to pay.

(2) The economic and impact assistance payment is a fine and penalty for failing to remove the defense plutonium, not a compensatory damage.

The Federal Defendants offer a bare assertion that because part of the relief requested includes the payment of money, this Court lacks jurisdiction and only the Court of Federal Claims has jurisdiction over this action. But the courts—including the Supreme Court—have held otherwise. "The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" *Bowen*, 487 U.S. at 893. Nor does the expectation of receipt of money by a state from the Federal government from a favorable outcome deprive this Court of jurisdiction. *Massachusetts v. Sullivan*, 803 F. Supp. 475, 478 (D. Mass. 1992) ("The mere fact that the Commonwealth hopes ultimately to obtain federal funds does not deprive this court of jurisdiction over the present action.").

To be a "money-mandating" statute allowing for the invocation of the limited Tucker Act jurisdiction in the Court of Federal Claims, the question is whether "the legislation which the claimant cites can fairly be interpreted as mandating **compensation** by the Federal Government **for the damage sustained**." *United States v. Testan,* 424 U.S. 392, 400 (1976) (emphasis

added). Compensation is payment to restore a person to the position they were in before an injury and damage. Damages are to compensate for a loss. The economic and impact assistance payments under Section 2566(d) are a fine and penalty the Federal Defendants can choose to pay for failing to remove defense plutonium within the first 100 days of each calendar year, beginning in 2016. Indeed, the Federal Defendants admit and concede that failure to remove the defense plutonium requires payment of "the financial **penalty**." Mot. to Dismiss at 9 (emphasis added). And, even in 2007 the U.S. Attorney's Office, on behalf of the DOE and NNSA, informed this Court that if the statutory MOX production objective is not met, "there are some rights that the State is going to be able to assert, including **up to a hundred million dollars a year in _fines_**." Ex. 4, *Aiken County v. Bodman* Hr'g Tr. of at 4:9-12, Stmt. of Asst. U.S. Attorney (emphasis added). For this reason, the Federal Defendants have admitted and conceded that the economic and impact assistance payments are fines and penalties, and cannot be damages compensation for an injury.[18] Thus, jurisdiction over the enforcement of Section 2566 seeking specific relief for compliance of that obligation can only lie with this Court.

The United States Supreme Court has directly addressed the question of whether money received by a state from the Federal government pursuant to Federal law based on enjoining or compelling the Federal government to comply with its legal obligations divests a district court of

---

[18] If the payment was compensation, then it would not be set at a single amount nor stopped after a finite time period per year and there would be a relationship to an injury or loss. Here, however, the statute commands payment based on the election of the Federal Defendants not to remove defense plutonium during the first 100 days of the year. No injury or loss is an element for payment, and thus no compensation is at issue. And if there was an injury or loss, that would extend for every day of the year, rather than just the first 100. There is simply no evidence or legislative history that allows for any interpretation that the economic and impact assistance payments are anything but a fine and penalty, and the Federal Defendants have pointed to nothing in support of their "compensation" claim while instead admitting and conceding that the payment is, as a matter of law, a "financial penalty" and "fine." Mot. to Dismiss at 9; Ex. 4, Hr'g Tr. of *Aiken County v. Bodman* at 4:9-12.

jurisdiction and requires jurisdiction in the Court of Federal Claims. It answered in the negative, holding the district court retains jurisdiction. *Bowen*, 487 U.S. 879.

In *Bowen*, the Secretary of the U.S. Department of Health and Human Services challenged the jurisdiction of the district court to hear a case in which the Commonwealth of Massachusetts was seeking an order compelling HHS to pay the state money it believed was due and owing under a federal law. Just as in the present case, "[t]he Secretary argues that § 704 should be construed to bar review of the agency action in the District Court because monetary relief against the United States is available in the Claims Court under the Tucker Act." *Bowen*, 487 U.S. at 904. The Court soundly rejected this argument: "This restrictive—and unprecedented—interpretation of § 704 should be rejected because the remedy available to the State in the Claims Court is plainly not the kind of 'special and adequate review procedure' that will oust a district court of its normal jurisdiction under the APA." *Id*. The Federal Defendants make the same argument here, and it must be rejected for the same reason the Supreme Court held district court jurisdiction was proper in *Bowen*.

> The term 'money damages,' 5 U.S.C. § 702, . . . normally refers to a sum of money used as compensatory relief. Damages are given to the plaintiff to *substitute* for a suffered loss, whereas specific remedies 'are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled.' Thus, while in many instances an award of money is an award of damages, '[o]ccasionally a money award is also a specific remedy.' *Id*. Courts frequently describe equitable actions for monetary relief under a contract in exactly those terms.

*Id. at* 895 (quoting *Maryland Dep't of Human Resources v. Department of Health and Human Services,* 763 F.2d 1441, 1446 (1985) (internal citation omitted)). Thus, the Supreme Court has noted that a cognizable claim under the APA that may have the effect of monetary **relief** (as opposed to monetary damages) is properly adjudicated by a district court. *Bowen*, 487 U.S. at

910 n.48 ("[T]he fact that the purely monetary aspects of the case could have been decided in the Claims Court is not a sufficient reason to bar that aspect of the relief available in a district court.").

Here, the specific relief includes the monetary relief as required by the statute, in addition to compliance sought under Section 2566(d) for equitable and injunctive relief to compel the removal of defense plutonium in furtherance of the legislative intent of not rendering the State the dumping ground for plutonium.

**The fact that the mandate is one for the payment of money must not be confused with the question whether such payment, in these circumstances, is a payment of money as damages or as specific relief.** Judge Bork's explanation bears repeating:

> "[The State] is seeking funds to which a statute allegedly entitles it, rather than money in compensation for the losses, whatever they may be, that [the State] will suffer or has suffered by virtue of the withholding of those funds. . . . The fact that in the present case it is money rather than in-kind benefits that pass from the federal government to the states . . . cannot transform the nature of the relief sought—specific relief, not relief in the form of damages."

*Bowen*, 487 U.S. at 900-01 (internal citations omitted) (emphasis added).

The history of the negotiations resulting in Section 2566 show that the "penalties" were to be assessed for failure to meet the milestones (*i.e.*, the MOX production objectives). *See, e.g.*, State Mem. of Law Ex. 14, Ltr. of Hodges and Condon to Abraham, dated Aug. 30, 2001 (the State requested that "DOE [ ] agree with the State of South Carolina on immediate, measurable and enforceable milestones, and on **penalties** for failure to meet such milestones.") (Emphasis added).

The legislative history in Congress also demonstrates that Congress knew the monetary payments were "penalties" and "fines." *See, e.g.*, Congressional Record (Senate), 151 Cong. Rec. S12740-01, 2005 WL 3039286 (Nov. 14, 2005) (Senator Domenici stating that delaying the MOX project would require DOE to pay the State of South Carolina up to $100,000,000 per year in **fines**. . . .") (emphasis added). The following exchange between Senators Graham and Domenici make clear that the payment is a **penalty** meant to punish the Federal Defendants for failing to meet the deadline and serves as deterrent for missing any future deadline.

> Mr. GRAHAM.
>
> In a sign of good faith to the State of South Carolina, **language was negotiated between the State of South Carolina and the Federal Government** that required the Department of Energy to convert one metric ton of defense plutonium into fuel for commercial nuclear reactors by 2011 **or face *penalties* of $1 million per day up to $100 million per year** until the plutonium is either converted into the fuel or removed from the State. It has never been the intention of South Carolina to receive ***penalty payments***….
>
> Mr. DOMENICI.
>
> …. **Any effort to eliminate funding for this project will likely foreclose a disposal pathway for plutonium stored at Savannah River _causing the Department to pay the State of South Carolina up to $100,000,000 per year in *fines*_** starting in 2014.

Congressional Record (Senate), 151 Cong. Rec. S12740-01, 2005 WL 3039286 (Nov. 14, 2005) (emphasis added). (The 2014 compliance deadline was moved to 2016 by Congress.)

Congressman Spratt stated as follows:

> [T]he state of South Carolina received assurances that the MOX fuel plant would be completed on schedule. And to be sure, we **put in place *penalty* payments for the Department of Energy if the MOX fuel plant's construction delayed** beyond 2011.
> . . . .
> When South Carolina agreed to take the Nation's plutonium, it did not do so to become plutonium's final burial place. **We only took**

> **the plutonium with the promise that a processing facility and ultimate removal would be forthcoming. <u>The *penalty* payments imposed on the Department of Energy were our ace in the hole to make sure this happened</u>**.

Congressional Record (House), 152 Cong. Rec. H3156-04, 2006 WL 1420552 (May 24, 2006) (emphasis added).

In deciding a similar case, a court stated, "[the] plaintiffs do not seek money damages. Rather, they seek rescission and declaratory relief against [a federal agency] because of its failure to perform as required by the [ ] agreements with plaintiffs. Accordingly, this Court has jurisdiction under the APA . . . to entertain plaintiffs' claims against [the federal agency]." *Ensign Fin. Corp. v. Fed. Deposit Ins. Corp.*, 785 F. Supp. 391, 399 (S.D.N.Y. 1992), *on reargument sub nom. Ensign Fin. Corp. v. F.D.I.C.*, No. 90 CIV. 5692 (KC), 1993 WL 56775 (S.D.N.Y. Feb. 16, 1993). As in *Ensign Financial*, South Carolina merely seeks declaratory and injunctive relief that the Federal Defendants do what Congress told them to do, which falls squarely in this Court's province and jurisdiction.

(3) <u>The Federal Defendants fail to argue the Court of Federal Claims provides an adequate alternative form of relief</u>.

In order for this Court not to have jurisdiction over this case, a full and adequate remedy at law must be available in another court. *See* 5 U.S.C.A. § 704. The Federal Defendants fail to proffer the Court of Federal Claims as an available and adequate remedy. They do not contend that the Court of Federal Claims could provide the declaratory and equitable relief requested by South Carolina to compel the Federal Defendants' full and continuing compliance with Section 2566(d), which includes the current obligation to remove one metric ton of defense plutonium this year as well as the obligation to remove the defense plutonium within the first 100 days of the year or make the penalty payment. Ignoring the pending removal obligation and the fact that

the penalty for each of the first 100 days this year is only now due because they have elected to pay the penalties, they simply focus on the "financial penalty" and posit that the Court of Federal Claims *could* be an avenue *if* other requirements are met. But if the Federal Defendants are not willing to address all of South Carolina's requested relief pursuant to Section 2566(d) or state that the Court of Federal Claims would have jurisdiction and that the claim under Section 2566 would be appropriate and cognizable in the Court of Federal Claims, then the Federal Defendants have failed to even proffer an adequate remedy. Instead they hedge their bets to allow them to later deny jurisdiction exists in the Court of Federal Claims, with the ultimate goal of trying to deny the State of South Carolina its day in court and avoid accountability.

Even so, the crux of the relief requested is specific performance and equitable relief—which the Court of Federal Claims cannot provide. *Bowen*, 487 U.S. 879, 905 (1988) ("The Claims Court does not have the general equitable powers of a district court to grant prospective relief."). Because the Federal Defendants do not allege or claim that jurisdiction is actually available in the Federal Court of Claims or relief is adequate, this argument fails.

### III.  SOUTH CAROLINA HAS STANDING FOR ALL OF ITS CLAIMS AND REQUESTS FOR RELIEF, AND THE FEDERAL DEFENDANTS' ATTACKS ARE BOTH MERITLESS AND PREMATURE.

Because the Federal Defendants previously (and necessarily) acknowledged to this Court that South Carolina has standing to bring suit in this Court to seek the Federal Defendants' compliance with Section 2566, the Federal Defendants do not attempt to say that South Carolina does not have standing to bring claims seeking to enforce the requirements of Section 2566. *See* Ex. 4, *Aiken County v. Bodman*, Hr'g Tr. at 53:4-5, 15, 18-19, Stmt. of Asst. U.S. Attorney ("The statute contemplates the State of South Carolina suing under this statute . . . . We know who has the right. . . . This is not an instance where the statute is silent, and let's guess. We know, Your

Honor."). Instead, the Federal Defendants attempt to avoid this inconvenient truth by claiming that the State does not have standing to bring a claim **which it has not brought** nor standing to request some of the **relief** to which the State may be entitled for the Federal Defendants' continuing disregard of the requirements of Section 2566. This attempt is meritless and, in any event, inappropriate at this stage of the litigation.

First, the Federal Defendants claim that South Carolina does not have standing to seek an injunction enjoining transfers of defense plutonium to the State pursuant to Section 2566(b)(5). However, this argument can be ignored because South Carolina has made no such claim. Rather, as expressly stated in the Complaint (¶96), South Carolina is seeking the removal of one metric ton of defense plutonium from the State pursuant to Section 2566(c) because the Federal Defendants disregarded the January 1, 2016 deadline to remove this plutonium as well as an order enjoining additional shipments of defense plutonium into the State until the Federal Defendants are in compliance with Section 2566(c).

Accordingly, the injunction on future shipments is a part of the **relief** South Carolina is seeking for the Federal Defendants failure to comply with Section 2566(c).[19] Because South

---

[19] Although the Court need not, nor should it, reach this issue at this stage of the litigation, it is important to note that the relief South Carolina is requesting is tailored to address the Federal Defendants' non-compliance with Section 2566(c). Because the Federal Defendants have not removed defense plutonium as required by Section 2566(c), South Carolina is seeking an order enjoining the importation of defense plutonium that, if removed, would meet the Federal Defendants' removal obligations pursuant to Section 2566. *See Bell v. Hood*, 327 U.S. 678, 684 (1946) ("[I]t is also well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use **any** available remedy to make good the wrong done") (emphasis added). For example, the Federal Defendants stated in their Motion to Stay that the plutonium they are currently planning to import into South Carolina from foreign countries is plutonium that, if removed, would meet their obligations pursuant to Section 2566(c). Motion to Stay (ECF No. 20) at 7-8 (informing the Court that the proposed removal from SRS next decade of six metric tons of defense plutonium, which includes

Carolina has standing for its cause of action to enforce the Federal Defendants' compliance with Section 2566(c), which the Federal Defendants do not dispute, South Carolina has standing to seek, and this Court has the authority to grant, the necessary relief. *Bell*, 327 U.S. at 684 ("[W]here federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief."); *see Meeks v. Emiabata*, 2015 WL 1636800, at *2 (W.D. Va. Apr. 13, 2015) ("[Rule] 12(b)(6) does not provide a vehicle to dismiss a portion of relief sought or a specific remedy, but only to dismiss a claim in its entirety."); *Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc.,* 21 F. Supp. 3d 620, 629, 631-32 (W.D. Va. 2014) ("[T]he nature of the relief included in the demand for judgment is immaterial to the question of whether a complaint adequately states a claim upon which relief can be granted.").

Similarly, the Federal Defendants impermissibly challenge the standing of South Carolina to seek another form of **relief** it has requested and that this Court can provide—namely, the retention by this Court of continuing jurisdiction to monitor the compliance of the Federal Defendants with their yearly obligations under Section 2566(d)(1) that already have been triggered (as of January 1, 2016) and which the Federal Defendants currently disclaim. Like with Section 2566(c), because South Carolina has standing to bring the underlying cause of action to enforce the Federal Defendants' Section 2566(d) obligations, which the Federal Defendants do not dispute, it has standing to request all relief based on such claim that this Court may deem necessary. *Meeks*, 2015 WL 1636800, at *2 ("[A] demand for relief is not part of the "statement of the claim," and is only one part of the "claim for relief." . . . Because Rule 12(b)(6) 'may be

all plutonium imported from foreign countries, "impact[s] . . . the question of whether they are complying with 50 U.S.C. § 2566").

used only to dismiss a 'claim' in its entirety[,]' it is not available to dismiss only a demand for relief.").

Therefore, because South Carolina has standing to bring its claims seeking compliance with Section 2566(c) and (d), South Carolina has standing to seek the "necessary relief" that the Court can provide. Accordingly, the Court should not accept the Federal Defendants' invitation to limit the relief the Court may deem necessary before the Court even has a chance to review the merits of the underlying causes of action. The Federal Defendants' Motion to Dismiss on these grounds should therefore be denied.

## IV.    SOUTH CAROLINA HAS A CAUSE OF ACTION AGAINST THE FEDERAL DEFENDANTS FOR THEIR VIOLATION OF THE UNITED STATES CONSTITUTION.

South Carolina alleges that the Federal Defendants "have failed to meet their mandatory statutory obligations under Section 2566 and in doing so have affirmatively undermined the MOX [Facility construction and operation] and therefore failed to faithfully execute the laws enacted by Congress and by which the President and these executive Defendants are bound." Compl. ¶87. The relief sought for this violation is "a declaration and order that Defendants' actions and inactions violate the Constitution and requiring DOE and NNSA to comply with the requirements of Section 2566." *Id.*, ¶88. This cause of action provides a supplemental basis for other causes of action, all of which collectively seek the same declaratory and injunctive relief.

The Federal Defendants first assert they cannot discern which subsections of Section 2566 they are alleged not to have complied with. Mot. to Dismiss at 13-14. However, the specific subsections of Section 2566 for which noncompliance is alleged are clearly set forth in the Complaint. This includes:

1. Section 2566(c) requiring the removal of one metric ton of defense plutonium or defense plutonium materials by January 1, 2016.

36

2. Section 2566(d) requiring the removal of one metric ton of defense plutonium or defense plutonium materials by the end of the calendar year and in each year through 2021 as well as the payment of the penalties for not removing plutonium during each of the first 100 days of this year.

As the Federal Defendants know well, they have not complied with Section 2566(c) or (d).

The Federal Defendants next assert that because the President is not an agency within the meaning of the APA, this action fails. Mot. to Dismiss at 14. Specifically, the Federal Defendants claim that "[t]o the extent South Carolina is alleging that the President has abdicated his duties under the Take Care Clause," such a claim is a nonjusticiable political question. *Id.*

The short and complete answer to both of these claims is that the President is not a defendant in this action, and South Carolina therefore does not allege an abdication of the duties of the President. No duties are directly conferred on the President by 50 U.S.C.A. § 2566. In contrast, the statute at issue in the case relied upon by the Federal Defendant, *Franklin v. Massachusetts*, was held to require that the "President, not the Secretary, takes the final action. . . ." 505 U.S. 788, 799 (1992). In this case, statutory duties created by Section 2566 are duties of the Secretary of Energy, DOE, NNSA, and its Administrator (as NNSA is a semi-autonomous agency within DOE), not the President directly. The Federal Defendants have not asserted that this argument applies to any official other than the President. Since the President is not a defendant in this action, no further discussion of this set of assertions is necessary.

The Federal Defendants further claim that "it is simply not the case that any time an agency violates a statute it automatically violates the Constitution as well." Mot. to Dismiss at 21 (citing *Dalton v. Specter*, 511 U.S. 462, 472, 474 (1994), for the proposition that "cases do not support the proposition that every action by the President, or by another executive official, in

excess of his statutory authority is *ipso facto* in violation of the Constitution"). Again, the Federal Defendants' assertions are inapposite and they mischaracterize this cause of action.

The Complaint alleges the actions and inactions violate the Constitution and the Defendants' clear duty to follow statutory directives. Congress enacted a statute with an explicit mandatory direction as it relates to a relationship with a sovereign state. The Executive Branch (*i.e.*, DOE, NNSA, and their officers) is seeking to undermine the legislative directive and mandate framing a relationship between the United States and South Carolina, and are asking the Judicial Branch to countenance this behavior. The underlying principle of checks-and-balances in the Constitution and concept of federalism prohibit the Executive Branch from usurping the Legislative Branch by rewriting statutes and failing to comply with and execute the law.

While it suffices for present purposes that there is no reason for the dismissal of the First Cause of Action, it is also worth noting that cause of action seeks only an order requiring the Executive Branch to comply with the most basic of the duties of that branch of government—the duty to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. The actions of the Federal Defendants in this case make clear that they seek to exercise a different power, and one which the Framers emphatically declined to confer on the Executive Branch—a "dispensing power," that is, a power to suspend laws or dispense with compliance with laws. The Supreme Court long ago held that to hold that that the Executive Branch alone could decide to execute which laws it would execute "would be vesting in the President a dispensing power, which has no countenance for its support in any part of the constitution; and is asserting a principle, which if carried out in its results to all cases falling within it, would be clothing the President with a power to control the legislation of congress, and paralyze the administration of justice." *Kendall v. U.S. ex rel. Stokes*, 37 U.S. 524, 525 (1838). This principle is as true today as it was in 1838.

## <u>CONCLUSION</u>

For the reasons set forth above, this Court should deny the Federal Defendants' Motion to Dismiss.

Respectfully submitted,

Alan Wilson, Fed. Bar No. 10457
Robert D. Cook, Fed. Bar No. 285
T. Parkin Hunter, Fed. Bar No. 2018
**ATTORNEY GENERAL FOR**
**THE STATE OF SOUTH CAROLINA**
Post Office Box 11549
Columbia, South Carolina 29211-1549
awilson@scag.gov
bcook@scag.gov
phunter@scag.gov
(803) 734-3970

<u>s/Randolph R. Lowell</u>
Randolph R. Lowell, Fed. Bar No. 9203
Benjamin P. Mustian, Fed. Bar No. 9615
John W. Roberts, Fed. Bar No. 11640
**WILLOUGHBY & HOEFER, P.A.**
Post Office Box 8416
Columbia, South Carolina 29202-8416
rlowell@willoughbyhoefer.com
bmustian@willoughbyhoefer.com
jroberts@willoughbyhoefer.com
(803) 252-3300

William H. Davidson, II, Fed. Bar No. 425
Kenneth P. Woodington, Fed. Bar No. 4741
**DAVIDSON & LINDEMANN, P.A.**
1611 Devonshire Drive, 2nd Floor
Post Office Box 8568
Columbia, South Carolina 29202-8568
wdavidson@dml-law.com
kwoodington@dml-law.com
(803) 806-8222

*Attorneys for the State of South Carolina*

May 12, 2016
Columbia, South Carolina