# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# AIKEN DIVISION

| | | |
|---|---|---|
| State of South Carolina, | ) | Civil Action No. 1:16-00391-JMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| United States; United States Department of Energy; Dr. Ernest Moniz, in his official capacity as Secretary of Energy; National Nuclear Security Administration; and Lt. General Frank G. Klotz, in his official capacity as Administrator of the National Nuclear Security Administration and Undersecretary for Nuclear Security; | ) ) ) ) ) ) ) ) ) | **ORDER AND OPINION** |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff State of South Carolina ("South Carolina") filed this action against Defendants United States ("U.S."); United States Department of Energy ("DOE"); Dr. Ernest Moniz, in his official capacity as Secretary of Energy (the "Secretary"); National Nuclear Security Administration ("NNSA"); and Lt. General Frank G. Klotz, in his official capacity as Administrator of the National Nuclear Security Administration and Undersecretary for Nuclear Security (the "Undersecretary") (collectively the "Federal Government Defendants") seeking injunctive, declaratory, and monetary relief for alleged violation of the provisions of 50 U.S.C. § 2566. (ECF No. 1.)

This matter is before the court pursuant to a Motion to Intervene as Party Plaintiff by Southern Carolina Regional Development Alliance ("SC Alliance") pursuant to Fed. R. Civ. P. 24. (ECF No. 6.) South Carolina and Federal Government Defendants oppose the Motion to Intervene in its entirety. (ECF Nos. 11 & 21.) For the reasons set forth below, the court

**DENIES** SC Alliance's Motion to Intervene.

## I. RELEVANT BACKGROUND TO PENDING MOTIONS

Generally, 50 U.S.C. § 2566 governs the construction and operation of a mixed oxide ("MOX") fuel facility at the Savannah River Site near Aiken, South Carolina designed to help the U.S. meet its obligations under the Plutonium Management and Disposition Agreement ("PMDA").[1]  Id. at § 2566(a)(1) ("[T]he Secretary of Energy shall submit to Congress a plan for the construction and operation of the MOX facility at the Savannah River Site, Aiken, South Carolina."). Among its provisions relevant to this action, section 2566 provides for "economic and impact assistance" to the State of South Carolina if the construction and operation of the MOX facility does not stay on schedule. Id. at § 2566(d). In this regard, South Carolina asserts that section 2566 is the codification of "the commitments of the United States and DOE to the State of South Carolina that while plutonium may be placed in South Carolina, such placement was not final disposition for long-term storage of plutonium in the State, but rather a temporary storage to implement the disposition method of MOX processing in the MOX Facility." (ECF No. 1 at 14 ¶ 52.) On February 9, 2016, South Carolina filed a Complaint alleging claims against Federal Government Defendants for failing "to meet their mandatory statutory obligations" under 50 U.S.C. § 2566 and for specifically violating subsections (c) and (d) of the Act. (ECF No. 1 at 26 ¶ 84–31 ¶ 112.)

---

[1] The PMDA, which was entered into force on July 13, 2011, is an agreement between the U.S. and Russia that "commits each country to dispose of at least 34 metric tons (MT) of weapon-grade plutonium withdrawn from their respective nuclear weapon programs." NNSA, https://nnsa.energy.gov/aboutus/ourprograms/dnn/fmd/plutonium (last visited May 23, 2016). "To implement U.S. plutonium disposition, three facilities are being constructed at the Savannah River Site: the MOX Fuel Fabrication Facility, the Waste Solidification Building, and a pit disassembly and conversion capability." NTI, http://www.nti.org/analysis/articles/plutonium-management-and-disposition-agreement-pmda-enters-force/ (last visited May 23, 2016).

On March 31, 2016, SC Alliance[2] filed its Motion to Intervene in this action. (ECF No. 6.) In its Motion, SC Alliance asserts that it should be allowed to intervene as a matter of right pursuant to Fed. R. Civ. P. 24(a) or permissively pursuant to Rule 24(b). (Id. at 4–6.) South Carolina filed a Response in Opposition to the Motion to Intervene (ECF No. 11) on April 18, 2016, and Federal Government Defendants filed their Opposition to the Motion to Intervene on May 2, 2016, both asserting that the court should deny SC Alliance's attempts to intervene by right or permissively. (ECF Nos. 11 & 21.)

## II. JURISDICTION

The court has jurisdiction over this matter under 28 U.S.C. § 1331 pursuant to Plaintiff's allegation that the matter "arises under the Constitution of the United States; the Atomic Energy Defense Provisions, 50 U.S.C.A. §§ 2501 et seq.; the Federal Administrative Procedure Act, 5

---

[2] SC Alliance describes itself as follows:

> [It] is a non-profit entity which is the Lead Organization for the South Carolina Promise Zone, an area designated by the federal government on April 28, 2015 as a high-poverty community where the federal government will partner with and invest in communities to create jobs, leverage private investment, increase economic activity, expand educational opportunities, and reduce violent crime. The South Carolina Promise Zone is home to 90,0000 [sic] residents, approximately 28.12% of whom live in poverty, and whose Median Income is approximately 45% less than the United States' Median Household Income. The South Carolina Promise Zone includes Barnwell County and Allendale County, in which the majority of land comprising SRS is located. Southern Carolina Alliance is also one of six economic development alliances in the State of South Carolina. Southern Carolina Alliance represents the most rural economic development region of the state, including Barnwell County and Allendale County. Southern Carolina Alliance owns and operates several multi-county industrial parks encompassing over 2,000 acres of industrial property for development and including areas in proximity to SRS, including ownership of the 600-acre South Carolina Advanced Technology Park directly adjacent to SRS. Individuals and landowners within the immediate vicinity of SRS are intended to be protected by the suspension provisions of 50 U.S.C. §§ 2566 [sic] that prevent the buildup of defense plutonium at the SRS.

(ECF No. 6-1 at 2–3 ¶ 6.)

U.S.C.A. §§ 701 et seq. (APA); the Mandamus and Venue Act, 28 U.S.C.A. § 1361; multiple National Defense Authorization Acts (NDAAs); and multiple appropriations acts." (ECF No. 1 at 3 ¶ 8.)

### III. LEGAL STANDARD AND ANALYSIS

A.     Intervention under Fed. R. Civ. P. 24

Fed. R. Civ. P. 24 provides for two types of intervention. "Intervention of Right" requires the court to permit anyone to intervene upon timely motion who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Thus, to intervene as of right, a movant must show: (1) timely application; (2) an interest in the subject matter of the underlying action; (3) that a denial of the motion to intervene would impair or impede the movant's ability to protect its interest; and (4) that the movant's interest is not adequately represented by the existing parties to the litigation. Houston Gen. Ins. Co. v. Moore, 193 F.3d 838, 839 (4th Cir. 1999). "A party moving for intervention under [Fed. R. Civ. P.] 24(a) bears the burden of establishing a right to intervene, and must do so by satisfying all four requirements." U.S. ex rel. MPA Constr., Inc. v. XL Specialty Ins. Co., 349 F. Supp. 2d 934, 937 (D. Md. 2004) (citing In re Richman, 104 F.3d 654, 658 (4th Cir. 1997)). Failure to satisfy even one of these requirements is sufficient to warrant denial of a motion to intervene as a matter of right. See N.A.A.C.P. v. New York, 413 U.S. 345, 369 (1973).

"Permissive Intervention," on the other hand, allows the court, in its discretion, to permit anyone to intervene upon timely motion who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In exercising discretion

4

under Fed. R. Civ. P. 24(b), "the court shall consider whether the intervention will unduly delay or prejudice the application of the rights of the original parties." Fed. R. Civ. P. 24(b)(3).

B.  The Parties' Arguments

   *1. SC Alliance*

SC Alliance seeks to intervene in this action "to challenge [Federal Government] Defendants' actions and inactions to indefinitely suspend construction of the mixed oxide fuel fabrication project (MOX Facility) at the Savannah River Site ("SRS") without complying with the statutory requirements to remove defense plutonium from SRS or make economic and impact assistance payments," in contravention of 50 U.S.C. § 2566. (ECF No. 6 at 2–3.) SC Alliance argues its entitlement to intervene by right on the basis that (1) its Motion was timely filed only 7 weeks after the filing of South Carolina's Complaint; (2) it has an interest in the instant matter because its land is "within the zone of interests that the plutonium disposition provisions of 50 U.S.C. § 2566 were intended to protect" and it expects to receive an economic benefit from "the MOX Facility and the economic and impact assistance payments mandated by 50 U.S.C. § 2566 if the MOX Facility is not built"; and (3) it is not adequately represented because its interests are more localized and focused than South Carolina's especially as it relates to alternative forms of relief.[3]  (ECF No. 6 at 4–5.)  Alternatively, SC Alliance contends that it may permissively intervene because its intervention will not cause undue delay or prejudice any party since (1) the Motion to Intervene was "filed shortly after the inception of the underlying lawsuit, prior to any

---

[3] In its Reply, SC Alliance offered an example of how its interests diverge from those of the State by pointing out that South Carolina "has litigated this very dispute with the Defendants quite recently (in 2014) and the resolution of that lawsuit resulted in neither the removal of one metric ton of plutonium from SRS, nor the attainment of the MOX production objective, nor the required economic and impact assistance, by the statutory deadlines." (ECF No. 19 at 4.) "[T]he State could file a dismissal with prejudice tomorrow, and SRS's neighboring community would have no remedy whatsoever for the indefinite storage of defense plutonium in contravention of federal statute."  (Id. at 3.)

5

scheduling order or significant litigation milestone," and (2) its Complaint shares the same background as South Carolina's Complaint and requires "interpretation of the same federal plutonium statutes . . . ."  (Id. at 6.)

### 2. *South Carolina*

South Carolina asserts that SC Alliance's Motion to Intervene as of right should be denied because it lacks a legally protectable interest since the statute it seeks to enforce "references the State and does not create any other right of action or beneficiary status."  (ECF No. 11 at 4 (quoting, e.g., State of Tex. v. U.S. Dep't of Energy, 754 F.2d 550, 551 (5th Cir. 1985) ("Because they have no defined role in the statutory scheme at issue . . . because they have no legally protectable interest that might be affected by the outcome of this proceeding, . . . the motion to intervene is DENIED)).)  In this regard, South Carolina argues that SC Alliance's position is "no different than the position of other citizens in the State" and its intervention would mean that "every citizen in the State could make the same claim for equitable apportionment of the fines and penalties that Congress directed to be paid to the State of South Carolina."  (Id. at 6.)

South Carolina next asserts that SC Alliance's Motion to Intervene should be denied because its interests are adequately represented by the State which is seeking "to enforce the same statute and achieve the same ends" under section 2566 as SC Alliance.  (Id. at 7.)  South Carolina argues that the only distinguishing factor is that SC Alliance represents a "local" perspective, but that issue is not determinative.  (Id. at 9 (citing James City Cnty., Va. v. U.S. E.P.A., 131 F.R.D. 472, 474 (E.D. Va. 1990) ("Their only concerns are that EPA had a "national" perspective, while the applicants maintain a "local" perspective, and . . . . The Court finds these propositions to be insufficient to support a claim of inadequate representation.")).)

Moreover, South Carolina argues that the section 2566 claim will be decided with or without SC Alliance's intervention and, as a result, "there is nothing to be impaired by the denial of intervention." (Id. at 10.) As its final objection to SC Alliance's intervention by right, South Carolina asserts that the intervention "would elongate and extend the case and prejudice the parties" based on the additional time after intervention it would take to litigate SC Alliance's party status as a result of the parties' likely-to-be-filed motions to dismiss. (Id. at 11.)

Additionally, South Carolina asserts that permissive intervention should be denied because SC Alliance does not add anything to the prosecution of this matter under section 2566. (Id. at 13.) In support of this assertion, South Carolina posits that SC Alliance's true purpose is to get an order from this court "requiring the State to give money to a private citizen" and this cannot occur in this forum without a waiver of sovereign immunity by South Carolina. (Id. at 14.)

### 3. *Federal Government Defendants*

Federal Government Defendants oppose the Motion to Intervene as a matter of right under Fed. R. Civ. P. 24(a) arguing that SC Alliance lacks a protectable interest because section 2566 only allows for South Carolina to receive assistance payments and "the statute makes no mention of any other party or of equitable apportionment." (ECF No. 21 at 4.) Federal Government Defendants further argue that SC Alliance fails to demonstrate that its interests are not adequately represented by South Carolina since the remedy SC Alliance is seeking is the same relief being sought by South Carolina. (Id.) Additionally, Federal Government Defendants assert that SC Alliance's permissible intervention under Fed. R. Civ. P. 24(b) should not be permitted because (1) it does not have a legally protectable interest and/or a role in section 2566's statutory scheme, and (2) it will increase the complexity of the litigation because other

landowners near SRS who might be economically affected by the MOX Facility would attempt to intervene to claim a portion of any economic assistance payment awarded to South Carolina. (ECF No. 21 at 5.)

C.     The Court's Review

   *1. Intervention by Right*

Upon review, the court finds that SC Alliance does not have a right to intervene in this action because they fail to establish that their interests are not adequately protected by South Carolina. In considering the arguments of the movant and the parties, the court observes that the only difference in the remedies sought by South Carolina and those requested in SC Alliance's proposed pleading is that SC Alliance requests an equitable determination that it is an intended beneficiary of the economic and impact assistance provided for in section 2566. (Compare ECF No. 1 at 31 ¶ A–32 ¶ G with ECF No. 6-1 at 8–9 ¶ 35.) Even with this additional request, the court is persuaded that SC Alliance shares the same ultimate concerns as South Carolina, namely that Federal Government Defendants comply with 50 U.S.C. § 2566 by removing 1 metric ton of defense plutonium from SRS and pay economic and impact assistance. (Id.)

Accordingly, because SC Alliance and South Carolina share the same ultimate goals, SC Alliance is required to overcome the presumption that its interests are adequately represented, which requires a showing of "adversity of interest, collusion, or nonfeasance." See Commonwealth of Va. v. Westinghouse Elec. Corp., 542 F.2d 214, 216 (4th Cir. 1976) (While the "burden of showing an inadequacy of representation is minimal . . . . [w]hen the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate

adversity of interest, collusion, or nonfeasance."). SC Alliance has failed to make the requisite showing. Therefore, because SC Alliance is adequately represented in this action by South Carolina, the court need not consider the remaining factors for intervention by right. See, e.g., Roussell v. Brinker Int'l, Inc., No. 05-3733, 2009 WL 6496504, at *10 (S.D. Tex. Jan. 26, 2009) ("As the Court finds that intervention of right is not afforded under elements two and three of Fed. R. Civ. P. 24(a)(2), it will not consider element four."). Accordingly, SC Alliance is not entitled by right to intervene in this action.

*2. Permissive Intervention*

SC Alliance also seeks permissive intervention under Fed. R. Civ. P. 24(b). The court denies SC Alliance's request to permissively intervene because the court is persuaded that SC Alliance's intervention will unduly delay or prejudice the application of the rights of South Carolina and Federal Government Defendants. In this regard, the court agrees with South Carolina and Federal Government Defendants that SC Alliance's intervention in this matter would complicate the litigation, potentially unduly delay the adjudication of the case on the merits, and generate little, if any, corresponding benefit to the existing parties. See Brock v. McGee Bros. Co., 111 F.R.D. 484, 487 (W.D.N.C. 1986) (denying permissive intervention where intervention would needlessly increase the cost and delay disposition of the case). Therefore, in its sound discretion, the court denies the request by SC Alliance to intervene in this action under Fed. R. Civ. P. 24(b).

### IV.  CONCLUSION

Upon careful consideration of the entire record and the arguments of the parties, the court hereby **DENIES** the Motion to Intervene as Party Plaintiff of Southern Carolina Regional Development Alliance. (ECF No. 6.)

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

May 25, 2016
Columbia, South Carolina