**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**AIKEN DIVISION**

| | | |
|---|---|---|
| State of South Carolina, | ) | Civil Action No. 1:16-cv-00391-JMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| United States; | ) | **ORDER AND OPINION** |
| | ) | |
| United States Department | ) | |
| Of Energy; | ) | |
| | ) | |
| Dr. Ernest Moniz, *in his official* | ) | |
| *Capacity as Secretary of Energy*; | ) | |
| | ) | |
| National Nuclear Security Administration; | ) | |
| *and* | ) | |
| | ) | |
| Lt. General Frank G. Klotz, *in his official* | ) | |
| *Capacity as Administrator of the National* | ) | |
| *Nuclear Security Administration and* | ) | |
| *Undersecretary for Nuclear Security*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Before the court is a motion for reconsideration, filed by Plaintiff, the State of South Carolina (the "State"), pursuant to Fed. R. Civ. P. 54(b), 59(e), and 60(b), asking the court to reconsider its rulings in its October 31, 2016 order directing further briefing in regard to the motion to dismiss filed by Defendants United States, the United States Department of Energy ("DOE"), Dr. Ernest Moniz, the National Nuclear Security Administration ("NNSA"), and Lieutenant General Frank G. Klotz (collectively "Defendants"). (ECF No. 62.)[1] For the reasons that follow, the court **DENIES** the motion for reconsideration.

---

[1] The court's previous order may be found at *South Carolina v. United States*, ___ F. Supp. 3d ___, 2016 WL 7191567 (D.S.C. 2016).

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On February 9, 2016, the State filed a complaint against Defendants asserting three causes of action, based largely on the provisions of 50 U.S.C. § 2566. (*See* ECF No. 1.) The State alleges that Defendants are responsible for operations at the Savannah River Site ("SRS"), which serves as the construction site for the MOX Facility that is intended to fabricate mixed-oxide fuel from defense plutonium owned by the federal government in accordance with international agreements. (*See id.*); 50 U.S.C. § 2566. Section 2566(h) defines the production objective of the MOX Facility as producing mixed-oxide fuel from defense plutonium at an average rate determined by its production during a defined period but not less than one metric ton of mixed-oxide fuel per year. 50 U.S.C. § 2566(h)(2).

Relevant here, subsections (c)(1) and (d)(1) provide for certain consequences in the event the MOX production objective is not achieved:

(c) Contingent requirement for removal of plutonium and materials from Savannah River Site

If the MOX production objective is not achieved as of January 1, 2014, the Secretary [of Energy] shall, consistent with the National Environmental Policy Act of 1969 and other applicable laws, remove from the State of South Carolina, for storage or disposal elsewhere--

(1) not later than January 1, 2016, not less than 1 metric ton of defense plutonium or defense plutonium materials; and

. . . .

(d) Economic and impact assistance

(1) If the MOX production objective is not achieved as of January 1, 2016, the Secretary shall, subject to the availability of appropriations, pay to the State of South Carolina each year beginning on or after that date through 2021 for economic and impact assistance an amount equal to $1,000,000 per day, not to exceed $100,000,000 per year, until the later of--

      (A)  the date on which the MOX production objective is achieved in such year; or

      (B)  the date on which the Secretary has removed from the State of South Carolina in such year at least 1 metric ton of defense plutonium or defense plutonium materials.

50 U.S.C. § 2566(c)(1), (d)(1).

In its complaint, the State alleges that its suit arises out of agency action by Defendants that fails to comply with applicable law regarding the MOX Facility. (ECF No. 1 at 1.) Relevant here,[2] the State asserted two causes of action:

(1) In its second cause of action, the State alleges that Defendants failed to meet the MOX production objective by January 1, 2014, and failed to remove one metric ton of defense plutonium by January 1, 2016, or thereafter. (*Id.* at 27.) The State alleges that Defendants have unlawfully withheld a non-discretionary, mandatory duty and obligation to the State, and it seeks an order enjoining and requiring Defendants to remove from South Carolina one metric ton of defense plutonium pursuant to § 2566(c) and preventing Defendants from transferring additional defense plutonium to SRS. (*Id.* at 27-28, 31-32.)

(2) In its third cause of action, the State alleges that Defendants failed to meet the MOX production objective, and failed to remove one metric ton of defense plutonium, by January 1, 2016, or thereafter. (*Id.* at 28.) The State alleges that Defendants have unlawfully withheld a non-discretionary, mandatory duty and obligation to the State, and it seeks an order enjoining and requiring Defendants to pay the State the economic and impact

---

[2] The State's first cause of action alleges that Defendants' actions and inactions violate the Constitution and seeks a declaration to that effect. (ECF No. 1 at 26.) As the court's October 31, 2016 order stated, the parties agreed at a hearing on the motion to dismiss that the court need not consider the constitutional claim. (ECF No. 56 at 4 n.3 (citing ECF No. 51 at 47, 57).) The instant motion for reconsideration does not address the constitutional claim.

assistance amount and to remove an additional one metric ton of defense plutonium from South Carolina, pursuant to § 2566(d). (*Id.* at 31-32.)

On April 25, 2016, Defendants filed a motion to dismiss, asserting, among other things, that they were protected by, and had not waived, sovereign immunity with respect to the third cause of action under § 2566(d). (ECF No. 17 at 30-34.) They understood the State to premise jurisdiction and a waiver of sovereign immunity on the Administrative Procedures Act ("APA"), 5 U.S.C. § 701, *et seq.*, but argued that the third cause of action was barred by 5 U.S.C. § 702 or § 704. (*Id.*)

On October 31, 2016, the court entered the order that is the subject of the instant motion for reconsideration. (*See* ECF No. 56.) The court began its analysis by noting that the State primarily seeks to enforce what it avers are two statutory rights. (*Id.* at 9.) First, under the third cause of action, the State seeks an order requiring Defendants to make the § 2566(d)(1) economic and impact assistance payments, which the court referred to as the "monetary claim." (*Id.*) Second, under the second cause of action, the State seeks an order requiring Defendants to remove one metric ton of plutonium from South Carolina pursuant to § 2566(c), which the court referred to as the "removal claim."[3] (*Id.*)

The court next determined that the State could not proceed on either claim unless there had been a waiver of sovereign immunity. (*See id.* at 6 (citing *Hawaii v. Gordon*, 373 U.S. 57, 57 (1963) (per curiam)).) The court concluded that sovereign immunity for the claims had been waived, if at all, only under the APA. (*See id.* at 7-8 (citing *Suburban Mortg. Assocs., Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 480 F.3d 1116, 1121-22 (Fed. Cir. 2007)).) Interpreting the APA

---

[3] The court noted that the State also prayed for a number of related equitable remedies that were intended as alternative measures of relief in the event the court found that an injunction requiring immediate removal was an impracticable remedy. (ECF No. 56 at 9.) The court viewed these alternative remedies as subsidiary to the removal claim. (*Id.*)

and relevant case law, the court explained that "[a] waiver of sovereign immunity authorizing jurisdiction in a district court is available when a party satisfies the requirements of both § 702 and § 704 of the APA." (*Id.* at 7 (citing *Bowen v. Massachusetts*, 487 U.S. 879, 891-93 (1988); *Consol. Edison of N.Y. v. U.S. Dep't of Energy*, 247 F.3d 1378, 1382 (Fed. Cir. 2001)).) Relevant here, § 704 provides that "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704. Thus, courts interpreting the APA have held that for the APA's waiver of sovereign immunity to apply, a plaintiff must meet § 702's requirement by seeking relief other than money damages and § 704's requirement by showing that there is no other adequate remedy for the agency action in another court. (ECF No. 56 at 8 (citing *Doe v. United States*, 372 F.3d 1308, 1312 (Fed. Cir. 2004)).) The court pointed out that, pursuant to the Tucker Act, 28 U.S.C. §§ 1346, 1491. the Court of Federal Claims ("CFC") might be another court in which an adequate remedy was available for purposes of § 704. (*Id.*) The Tucker Act waives sovereign immunity protection and authorizes monetary claims "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated damages in cases not sounding in tort." 28 U.S.C. §§ 1346, 1491(a)(1). For claims greater than $10,000, the Tucker Act assigns exclusive jurisdiction to the CFC. *See Jan's Helicopter Serv. v. F.A.A.*, 525 F.3d 1299, 1304 (Fed. Cir. 2008); *Tootle v. Sec. of the Navy*, 446 F.3d 167 (D.C. Cir. 2006).

The court determined that "'to resolve the sovereign immunity and jurisdiction questions, the court must consider the State's claims individually.'" (ECF No. 56 at 10 (brackets omitted) (quoting *Transohio Sav. Bank v. Dir., Office of Thrift Supervision*, 967 F.2d 598, 609 (D.C. Cir. 1992)) (citing *Sharp v. Weinberger*, 798 F.2d 1521, (D.C. Cir. 1986) (Scalia, J.)).) The court concluded that it lacked subject matter jurisdiction over the monetary claim because the APA does

not waive sovereign immunity with respect to that claim. (*See* ECF No. 56 at 10-17.) First, the court noted that, when examining the interplay between the Tucker Act and the APA, it is preferable to start by determining whether the CFC provides an adequate remedy for purposes of § 704. (*See id.* at 10-11 (collecting cases).) Interpreting the Supreme Court's seminal decision on the issue in *Bowen* and case law that followed,[4] the court explained that it does not look exclusively to the form of the complaint to determine whether it states a cognizable Tucker Act claim. (ECF No. 56 at 11-12 (citing *Suburban*, 480 F.3d at 1123-24, 1126; *Consol. Edison*, 247 F.3d at 1385; *Nat'l Ctr. for Mfg. Scis. v. United States*, 114 F.3d 196, 199 (Fed. Cir. 1997)).) Rather, the court asks primarily whether the complaint seeks essentially a monetary reward and considers the complexity and constancy of the relationship between the plaintiff and the federal government. (*Id.* at 12-13 (citing *Suburban*, 480 F.3d at 1126-27; *Consol. Edison*, 247 F.3d at 1383).) Assessing the nature of the relief the State seeks and the relationship between the State and the federal government implicated by § 2566(d) (*id.* at 13-17), the court determined that the CFC could provide an adequate remedy for the State's monetary claim for purposes of § 704 (*id.* at 17). Accordingly, the court concluded that the APA does not waive Defendants' sovereign immunity with respect to the monetary claim. (*Id.*)

Applying the same analysis to the State's removal claim, the court concluded that, because the CFC provided no adequate remedy for that claim and because the claim was one for other than money damages, the APA waived sovereign immunity with respect to that claim, and the court had jurisdiction over it. (*See id.* at 17-19.) The court also rejected Defendants' argument that the

---

[4] The court paid special heed to the decisions of the CFC and the Federal Circuit Court of Appeals, noting that those courts had extensive experience interpreting and applying *Bowen* and that they had provided numerous cautions regarding complex and clouded jurisdictional analysis. (ECF No. 56 at 10-11 n.4 (citing *Randall v. United States*, 95 F.3d 339, 346 (4th Cir. 1996)); *District of Columbia. v. United States*, 67 Fed. Cl. 292, 315 (2005)).)

State lacked standing to bring the claim. (*See id.* at 19-24.) Consequently, the court determined that it had jurisdiction to decide the State's removal claim but that it lacked jurisdiction to hear the monetary claim, as the CFC could provide an adequate remedy. (*See id.* at 24.)

Rather than ruling on Defendants' motion to dismiss, the court determined that it should seek additional input from the parties before proceeding further. (*See id.* at 24-31.) The court explained that, because it had jurisdiction over the removal claim, but not the monetary claim, several options were presented. First, under 28 U.S.C. § 1631, the court could transfer the monetary claim to the CFC and retain jurisdiction over the removal claim. (*See id.* at 24-25 (citing *Harbuck v. United States*, 378 F.3d 1324, 1328 (Fed. Cir. 2004); *United States v. Cnty. of Cook*, 170 F.3d 1084, 1089 (Fed. Cir. 1999)).) However, such a maneuver might result in the CFC's immediately dismissing the claim pursuant to 28 U.S.C. § 1500. (*See id.* at 25-26 (citing *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 311, 317 (2011); *Keene Corp. v. United States*, 508 U.S. 200, 212 (1993); *Harbuck*, 378 F.3d at 1324, 1328; *Cnty. of Cook*, 170 F.3d at 1091; *Lovelades Harbor, Inc. v. United States*, 27 F.3d 1545, 1548 (Fed. Cir. 1994) (en banc); *UNR Indus. v. United States*, 962 F.2d 1013, 1018, 1021 (Fed. Cir. 1992) (en banc)).) Second, the court could dismiss the monetary claim without prejudice to the State's ability to file the claim in an original action in the CFC after disposition of its removal claim in this court. (*See id.* at 26.) However, if the court dismisses the monetary claim, there is risk that it might become time-barred while litigation on the removal claim remains pending in this court. (*See id.* at 26-27.) Moreover, the court explained that it was concerned that the State's pursuing its monetary claim in the CFC at the same time the removal claim remained pending in this court might oblige either this court or the CFC to stay proceedings until a disposition in the other court had been reached. (*See id.* at 27-29.) The court noted that neither party had addressed any of these issues in their briefs, and that the court's order

7

was the first instance in which they had been raised. (*See id.* at 30.) Accordingly, the court declined

to dispose of the motion to dismiss and, instead, directed the parties to file briefs addressing

whether the court should transfer the monetary claim to the CFC and whether the court should

dismiss the monetary claim without prejudice. (*Id.* at 30-31.)

On November 28, 2016, the State filed the instant motion for reconsideration, seeking

review of the court's rulings in its October 31, 2016 order. (ECF No. 62.)

## II. LEGAL STANDARD

Any order "that adjudicates fewer than all the claims or the rights and liabilities of fewer

than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all

the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Thus, under Rule 54(b),

the "district court retains the power to reconsider and modify its interlocutory judgments . . . at

any time prior to final judgment when such is warranted." *Am. Canoe Ass'n v. Murphy Farms,*

*Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003); *see also Moses H. Cone Mem. Hosp. v. Mercury Constr.*

*Corp.*, 460 U.S. 1, 12 (1983) (noting that "every order short of a final decree is subject to reopening

at the discretion of the district judge"). The Fourth Circuit has offered little guidance on the

standard for evaluating a Rule 54(b) motion, but has held that motions under Rule 54(b) are "not

subject to the strict standards applicable to motions for reconsideration of a final judgment." *Am.*

*Canoe Ass'n*, 326 F.3d at 514; *see also Fayetteville Investors v. Commercial Builders, Inc.*, 936

F.2d 1462, 1472 (4th Cir. 1991) (finding it "unnecessary to thoroughly express [Fourth Circuit's]

views on the interplay of Rules 60, 59, and Rule 54"). In this regard, district courts in the Fourth

Circuit, in analyzing the merits of a Rule 54 motion, look to the standards of motions under Rule

59 for guidance. *See Ashmore v. Williams*, No. 8:15-cv-03633, 2017 WL 24255, at *2 (D.S.C. Jan.

3, 2017) (collecting cases). Therefore, reconsideration under Rule 54(b) is appropriate on the

following grounds: (1) to account for an intervening change in controlling law; (2) to account for newly discovered evidence; or (3) to correct a clear error of law or prevent manifest injustice. *See Beyond Sys., Inc. v. Kraft Foods, Inc.*, No. PJM-08-409, 2010 WL 3059344, at *2 (D. Md. Aug. 4, 2010) (citing *Am. Canoe Ass'n*, 326 F.3d at 514).[5] However, a motion to reconsider an interlocutory order should not be used to rehash arguments the court has already considered merely because the movant is displeased with the outcome. *See Ashmore*, 2017 WL 24255, at *3; *Sanders v. Wal-Mart Stores E.*, No. 1:14-cv-03509-JMC, 2016 WL 6068021, at *3 (D.S.C. Oct. 17, 2016) (citing *U.S. Home Corp. v. Settlers Crossing, LLC*, No. DKC 08-1863, 2012 WL 5193835, at *3 (D. Md. Oct. 8, 2012)). Nor should such a motion be used to raise new arguments or evidence that could have been raised previously. *See Nationwide Mut. Fire Ins. Co. v. Superior Solution, LLC*, No. 2:16-cv-423-PMD, 2016 WL 6648705, at *2 (D.S.C. Nov. 10, 2016); *Regan v. City of Charleston*, 40 F. Supp. 3d 698, 701 (D.S.C. 2014).

However, in assessing a motion to reconsider an interlocutory order under Rule 54(b), these standards are not applied with the same strictness as they would be if the order were a final judgment and reconsideration were sought under Rule 59(e). *Am. Canoe Ass'n*, 326 F.3d at 514-15. The standards are applied even less stringently when the issue for which reconsideration is sought implicates the court's subject matter jurisdiction. *See id.* at 515-16; *see also Bishop v. Smith*,

---

[5] The Fourth Circuit has suggested that the law of the case doctrine has evolved as a means of guiding a district court's discretion in deciding a Rule 54(b) motion for reconsideration of an interlocutory order. *Am. Canoe Ass'n*, 326 F.3d at 515. Under the law of the case doctrine, an earlier decision of the court becomes the law of the case and must be followed unless "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." *Sejman v. Warner–Lambert Co., Inc.,* 845 F.2d 66, 69 (4th Cir. 1988) (internal quotation marks omitted), *cited with approval in Am. Canoe Ass'n*, 326 F.3d at 515. This court notes that the three reasons for overcoming the law of the case doctrine mirror the three reasons for granting relief under Rule 59(e). *See United States v. Duke Energy Corp.*, No. 1:00cv1262, 2014 WL 4659479, at *3 n.4 (M.D.N.C. Sept. 17, 2014).

760 F.3d 1070 (10th Cir. 2014); 18B Charles Alan Wright et al. *Federal Practice and Procedure* § 4478.5 (2d ed. 2002).[6] "The ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." *Am. Canoe Ass'n*, 326 F.3d at 515. Nonetheless, even when subject matter jurisdiction is at issue, a Rule 54(b) motion for reconsideration is assessed under the same standards. *See id.* ("[T]hat obligation may be tempered at times by concerns of finality and judicial economy."); 18B Wright, *supra*, § 4478.5 ("Although a federal court is always responsible for assuring itself that it is acting within the limits of subject-matter jurisdiction statutes and Article III, this duty need not extend to perpetual reconsideration.").

### III. ANALYSIS

Although the State's motion for reconsideration is quite lengthy, when reduced to essentials, the State argues (A) that no waiver of sovereign immunity is necessary for it to proceed on its complaint against Defendants (*see* ECF No. 62-1 at 24-25); (B) that the court misapprehended its jurisdictional arguments by mischaracterizing the complaint (*see id.* at 4-9); (C) that the court erred by addressing two separate claims—a monetary claim and a removal claim—instead of the agency action at issue (9-23); and (D) that the court's discussion regarding § 1500 should be stricken (*see id.* at 26.) The court addresses each of these arguments in turn and concludes that none of them meet the standards for relief under Rule 54(b).

#### A. Necessary waiver of sovereign immunity

The State argues that the court's jurisdictional analysis in its October 31, 2016 order was flawed from the outset because no waiver of sovereign immunity is necessary for the court to grant

---

[6] This lowering of the bar when the movant seeks reconsideration of a decision on subject matter jurisdiction is most appropriate when, in the previous order, the court determined that it had subject matter jurisdiction and the movant now seeks to show that the court lacks subject matter jurisdiction. It seems less appropriate, and the bar should be somewhat higher, when, as here, in the previous order, the court determined that it lacked subject matter jurisdiction and the movant now seeks to show that the court possesses subject matter jurisdiction.

the relief sought in the State's complaint. (*See id.* at 29.) The State acknowledges the "general rule that 'a claim against a federal official for acts performed within his or her official capacity amounts to an action against the sovereign and is therefore barred by sovereign immunity,'" absent a waiver. (*Id.* (quoting *Int'l Fed'n of Prof'l & Tech. Eng'rs v. United States*, 934 F. Supp. 2d 816, 820 (D. Md. 2013)).) However, the State contends that its complaint falls under the *Larson*[7]-*Dugan*[8] exception to this rule, by which, under certain circumstances, sovereign immunity will not bar an action against a government officer if the officer acted *ultra vires* or if the statute on which the officer's action is based or the officer's action itself is unconstitutional. (*See id.* at 30-31); *Dugan*, 372 U.S. at 621-22; *Larson*, 337 U.S. at 689-90. The State argues that the court's failure to apply this exception in its October 31, 2016 order was a clear error of law. (ECF No. 62-1 at 30-31.)

Preliminarily, the court must consider whether the State raised this argument in response to Defendants' motion to dismiss. *See Reyazuddin v. Montgomery Cnty.*, No. DKC 11-0951, 2012 WL 642838, at *3 (D. Md. Feb. 27, 2012) (rejecting motion for reconsideration in part because movant "advance[d] an argument . . . that could have been raised in [its] prior motion, but was not"). In the instant motion for reconsideration, the State points out that, in a footnote of its 45-page response in opposition to Defendant's motion to dismiss, it incorporated by reference its entire 38-page memorandum in support of its previously filed motion for summary judgment. (*See* ECF No. 62-1 at 29 (citing ECF No. 27 at 6 n.2).) The State also points out (*see* ECF No. 62-1 at 29) that, in a one-sentence footnote of that memorandum, it argued that "'[n]o waiver of sovereign immunity is necessary when a plaintiff seeks a writ of mandamus to force a public official to perform a duty imposed upon him in his official capacity'" (ECF No. 10-1 at 25 n.55 (internal

---

[7] *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949).

[8] *Dugan v. Rank*, 372 U.S. 609 (1963).

quotation marks and ellipsis omitted) (quoting *Al Jabari v. Chertoff*, 536 F. Supp. 2d 1029, 1033 (D. Minn. 2008); *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 89 F.3d 897, 901 (D.C. Cir. 1996))).

To the extent the State points to the footnote in its memorandum and the footnote in its response incorporating the entire memorandum by reference in order to show that it raised the argument it now advances in its motion for reconsideration, the court is not persuaded. First, the practice of incorporating an entire memorandum by reference into another memorandum is not one allowed by the Local Rules, and, although courts may sometimes suffer the practice, many courts have expressly disapproved it, *see Propst v. HWS Co., Inc.*, 148 F. Supp. 3d 506, 511 (W.D.N.C. 2015); *Solais v. Vesuvio's II Pizza & Grill, Inc.*, No. 1:15cv227, 2015 WL 6110859, at *7 n.7 (M.D.N.C. Oct. 16, 2015); *Champion Pro Consulting Grp., LLC v. Impact Sports Football, LLC*, 116 F. Supp. 3d 644, 646-47 (M.D.N.C. 2015); *Daniel v. Nat'l Cas. Ins. Co.*, No. MJG-13-1549, 2014 WL 4955402, at *2 (D. Md. Sept. 29, 2014); *Remediation Prods, Inc. v. Adventus Ams., Inc.*, No. 3:07cv153RJCDCK, 2010 WL 1946999, at *23 n.13 (W.D.N.C. May 13, 2010), or have condoned it on a case-by-case basis only upon express permission by the court, *see Levy v. Wexford Health Sources, Inc.*, No. TDC-14-3678, 2016 WL 865364, at *6 (D. Md. March 7, 2016); *Wood v. Gen. Dynamics Corp.*, 157 F. Supp. 3d 428, 431 (M.D.N.C. 2016); *Moore v. Law Offices of Shapiro, Brown & Alt, LLP*, No. 3:14cv832 (DJN), 2015 WL 4877845, at *3 n.2 (E.D. Va. Aug. 13, 2015); *Design Res., Inc. v. Leather Indus. of Am.*, 900 F. Supp. 2d 612, 622 (M.D.N.C. 2012); *cf. Tri-Con, Inc. v. Volvo Trucks N. Am., Inc.*, No. 1:06cv577, 2008 WL 4849523, at *4 (M.D.N.C. Nov. 4, 2008), *adopted by Tri-Con, Inc. v. Volvo Trucks N. Am., Inc.*, No. 1:06cv577, 2009 WL 103653 (M.D.N.C. Jan. 14, 2009). Courts are less likely to sanction the practice, where, as here, the memoranda submitted by the parties in regard to the motion at issue

are already voluminous, *see Daniel*, 2014 WL 4955402, at *2; *Adventus Ams., Inc.*, 2010 WL 1946999, at *23 n.13, because allowing incorporation by reference in such circumstances would defeat the page limitation imposed by the Local Rules,[9] *see Propst*, 148 F. Supp. 3d at 511; *Solais*, 2015 WL 6110859, at *7 n.7; *Champion Pro Consulting Grp., LLC*, 116 F. Supp. 3d at 646-47.

Second, it is doubtful that a party may incorporate by reference a lengthy memorandum into an already lengthy memorandum, as the State attempts to do here, because it amounts to outsourcing the party's responsibility to research and construct its own argument within its memorandum. *See Propst*, 148 F. Supp. 3d at 511 ("[The p]laintiff has essentially asked this [c]ourt to read everything it has filed and, after doing so, construct a coherent argument against the [d]efendants' [m]otion—a task which the [p]laintiff was obligated to do *within* his opposition brief."); *Daniel*, 2014 WL 4955402, at *2 (decrying parties' attempt to "have the [c]ourt review the entirety of their respective prior filings and guess which portions thereof they may contend, *mutatis mutandi*, are pertinent"); *id.* ("[C]ounsel should not treat judges as if we were 'pigs, hunting for truffles buried in briefs.'" (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991))).

---

[9] The court notes that the State thrice has requested leave to file memoranda that exceed the page limitations imposed by Local Civ. R. 7.05 (*see* ECF Nos. 24, 39, 70), which the court granted each time (*see* ECF Nos. 26, 40, 71). In the first instance, the State was permitted to file a 40-page memorandum but instead filed a 45-page memorandum. (ECF No. 27.) In the second instance, the State was permitted to file a 20-page memorandum but instead filed a 25-page memorandum. (ECF No. 42.) In the third instance, the State was permitted to file an 18-page memorandum but instead filed a 24-page memorandum. (ECF No. 72.) The court has winked at these abuses largely because they appear to be based on the erroneous belief that pages containing the table of contents, table of authorities, and signature blocks in memoranda are not counted toward the page totals listed in Local Rule 7.05, *see* Local Civ. R. 7.05(B) (listing portions of memoranda that do not count toward page total), and because Defendants have once engaged in the same abuse (*see* ECF Nos. 39, 40, 42). If, however, the parties continue to abuse the page limitations in this manner or by profligately incorporating by reference swathes of arguments from previously filed memoranda, the court will not hesitate to strike all material in excess of the page limitations set by the Local Rules or by the court's order.

Third, even assuming the State's incorporation by reference of its entire memorandum were otherwise appropriate, it is not at all clear that, from the single sentence buried in footnote 55, the court should have sniffed out the jurisdictional argument that the State now advances in its motion for reconsideration. Although the footnote does assert that no waiver of sovereign immunity is necessary where the relief sought is a writ of mandamus against a public official to take certain actions, it makes no mention of the general rule that a suit against an officer is against the sovereign if "the [relief] requested would require the [officer]'s official affirmative action, affect the public administration of government agencies and cause . . . the disposition of property admittedly belonging to the United States," *Gordon*, 373 U.S. at 57, or the exception to the general rule outlined in *Larson* and *Dugan*. Thus, the footnote does little to alert the court that the State disagreed with the basic premise underlying Defendants' arguments regarding the APA's waiver of sovereign immunity, and generally courts are disinclined to address arguments that are not adequately raised in a party's briefing. *See De-Occupy Honolulu v. City & Cnty. of Honolulu*, No. 12-006688 JMS-KSC, 2013 WL 2284942, at *6 n.9 (D. Haw. May 21, 2013); *Seifer v. PHE, Inc.*, 196 F. Supp. 2d 622, 625 n.4 (S.D. Ohio 2002); *Callahan v. Barnhart*, 186 F. Supp. 1219, 1230 n.5 (M.D. Fla. 2002).

The State's decision to reduce its sovereign immunity analysis in its motion for summary judgment to a single-sentence footnote is perplexing, as sovereign immunity is an obvious hurdle to the State's success. The State's decision to rely on that footnote, which does not clearly raise the argument advanced in the instant motion, through an oblique reference in its opposition to a motion to dismiss is doubly perplexing, especially when the motion to dismiss was based in large part on sovereign immunity grounds and when the argument the State now advances, if it had merit, would have skirted Defendants' sovereign immunity argument altogether and obviated the

court's consideration of it. Regardless of the State's reasons for raising the argument in a manner almost certain to escape the court's notice, the court can hardly be said to have committed clear error in disregarding it.

Setting aside the State's failure to adequately raise the argument in its opposition to the motion to dismiss, the court concludes the argument does not otherwise merit relief pursuant to Rule 54(b). The State contends that the court's failure to apply the *Larson-Dugan* exception to this case was a clear error of law. (ECF No. 62-1 at 30-31.) The court disagrees. As Defendants correctly point out (ECF No. 67 at 22-23), a number of courts have held that the *Larson-Dugan* exception does not extend to claims for relief that must be paid out of the public treasury, *see Danos v. Jones*, 652 F.3d 577, 587 (5th Cir. 2011) ("Even where the *Larson* exception to sovereign immunity applies, . . .  it does not extend to monetary relief against the United States."); *Clark v. Library of Congress*, 750 F.2d 89, 104 (D.C. Cir. 1984) ("Even if the [officer]'s actions were both *ultra vires* and unconstitutional, sovereign immunity would still bar [the plaintiff]'s claims for monetary relief because these two exceptions are only applicable to suits for specific, non-monetary relief."); *Zapata v. Smith*, 437 F.2d 1024, 1025, 1027 (5th Cir. 1971) ("[T]here is a well recognized exception to the exception . . . which makes it clear that . . . the suit is nevertheless one against the United States[:] . . . it is clear beyond peradventure that the suit is one against the United States since the remedy sought . . . can be satisfied only out of the public treasury. It follows, therefore, that . . . the United States is an indispensable party . . . [resulting in] dismissal because the United States is protected by sovereign immunity and has not consented to the suit."); *see also Johnson v. Mathews*, 539 F.2d 1111, 1124 (8th Cir. 1976) (interpreting the *Larson* exception to be inapplicable when the relief sought is "retroactive payments from the federal treasury" and leaving to the Supreme Court the task of restricting this exception to the exception); *Knight v. New York*,

443 F.2d 415, 419-21 (2d Cir. 1971) (same). This limitation on the *Larson-Dugan* exception stems from *Larson*'s footnote 11. *See Johnson*, 539 F.2d at 1124. Although some circuits have viewed footnote 11's limitation narrowly, the circuit courts cited above have interpreted it broadly to preclude from the exception cases in which the relief sought would require expenditure from the treasury. *See id.* (collecting cases). All agree that the case law in this area suffers from inconsistency and confusion, *see Schlafly v. Volpe*, 495 F.2d 273, 278 (7th Cir. 1974); *Knight*, 443 F.2d at 419-20 (citing *Malone v. Bowdoin*, 369 U.S. 643 (1962)), and neither the Fourth Circuit nor this district has offered a conclusive pronouncement on the issue.

Here, in its third cause of action under § 2566(d), the State seeks relief that would result in expenditure from the federal treasury.[10] This claim falls squarely under the limitation to the *Larson-Dugan* exception, as interpreted by the circuit courts cited in the preceding paragraph. Because no controlling precedent requires otherwise, the court concludes that it was not a clear error of law to not apply the *Larson-Dugan* exception to the monetary claim.[11] *See United States v. Holland*, No. 0:15-cr-00666-JMC, 2016 WL 4771283, at *4 ("Generally, there is no cause to disturb a challenged decision under clear error review merely because decisions from other courts,

---

[10] The court notes that, in assessing whether the *Larson-Dugan* exception applies, courts have proceeded on a claim-by-claim basis, separating claims based on the relief the plaintiff seeks. *See Danos*, 652 F.3d at 583-84; *Clark*, 750 F.2d at 102-04; *Petterway v. Veterans Admin. Hosp.*, 495 F.2d 1223, 1225 (5th Cir. 1974).

[11] In general, "[a] prior decision does not qualify as [clearly erroneous] by being 'just maybe or probably wrong; it must strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish.' It must be 'dead wrong.'" *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009) (internal citations and ellipsis omitted) (quoting *Bellsouth Telesensor v, Info. Sys. & Networks Corp.*, 65 F.3d 166, 1995 WL 520978, at *5 n.6 (4th Cir. 1995) (unpublished table disposition); *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1998)). Although the stringency with which this standard is applied is lessened somewhat in the context of a Rule 54(b) motion to reconsider an interlocutory order, the court notes that a movant is unlikely to demonstrate that the court engaged in clear legal error in the absence of controlling precedent or near uniformity in the opinion of non-controlling legal authorities.

which do not reflect the controlling law of this circuit, [suggest] a different conclusion."); *Johnson v. Fed. Express Corp.*, 996 F. Supp. 2d 302, 326 (M.D. Pa. 2014) (noting, for purposes of reconsideration, that, where law "remains unsettled," movant "fail[s] to establish that the court committed clear error" by not following non-controlling line of cases). The court's determination that the State must point to a waiver of sovereign immunity in order to proceed with its monetary claim was not clearly erroneous.

## B. Correct characterization of the complaint

The State next argues that the court's October 31, 2016 order mischaracterized the State's complaint. The court's order concluded that the court lacked jurisdiction over the State's third cause of action due to § 704 of the APA, which provides that a district court may review "[a]gency action . . . for which there is no other adequate remedy in a court," such as the CFC. 5 U.S.C. § 704. As relevant here, "agency action" is defined as "the whole or part of an agency . . . failure to act." 5 U.S.C. § 551(13); *see* 5 U.S.C. § 701(b)(2). Thus, here, the relevant question under § 704 is whether another court, such as the CFC, provides an adequate remedy for an agency's failure to act.

The court viewed the State's complaint as alleging two agency actions, or two failures to act. The court understood the State's second cause of action under § 2566(c) to allege that Defendants had failed to remove one metric ton of defense plutonium, as subsection (c) allegedly obligated Defendants to do. (*See* ECF No. 56 at 27 ("In its removal claim, the State asserts that it is entitled to an injunction requiring Defendants to remove one metric ton of plutonium from SRS due to Defendants' failure to remove the plutonium in accordance with § 2566(c)(1).").) The court understood the State's third cause of action under § 2566(d) to allege that Defendants had failed to pay the economic and impact assistance payments, as subsection (d) allegedly obligated

Defendants to do. (*See* ECF No. 56 at 13 ("The monetary claim is a request for a monetary reward from the federal government because it is based on an allegation of liability for Defendants' failure to make the payments in accordance with § 2566(d)."); *id.* at 17 ("[T]he State's monetary claim seeks to enforce payment of the statutorily prescribed amounts . . . .").) Having understood the State to be seeking review of two separate agency actions, or failures to act, which the court described in terms of the relief sought—the removal claim and the monetary claim, respectively— the court concluded that the CFC provided an adequate remedy for the third cause of action, the monetary claim.

In the instant motion for reconsideration, the State argues that the court's analysis was flawed from the outset. It contends that its complaint alleged only one agency action, or failure to act, namely Defendants' failure either to meet the MOX production objective or to remove one metric ton of plutonium from South Carolina. (*See* ECF No. 62-1 at 14.) The facts that Defendants did not remove one metric ton of plutonium from South Carolina under subsection (c) or pay the economic and impact assistance payments under subsection (d), the State argues, are merely "legal wrongs" stemming from the agency action, the failure to process or remove the plutonium. (*Id.* at 16 (citing 5 U.S.C. § 702).) Under § 704, the State argues that the court was required to determine whether the CFC, under its Tucker Act jurisdiction, could provide an adequate remedy for Defendants' failure to achieve the MOX production objective or remove plutonium, and, because the State sought the statutory relief found in both subsections (c) and (d), the CFC could not provide an adequate remedy. (*Id.* at 17-21.) The court's view—that the complaint alleges two agency actions, two failures to act—confuses the alleged legal wrongs suffered by the State with the agency action it actually alleged and resulted in the court's artificial distinction between the

removal claim and the monetary claim and its decision that the CFC has exclusive jurisdiction over the latter. (*Id.*)

The State's argument appears to be asserted under the principle that a motion for reconsideration should be granted upon a showing of manifest injustice. *See Am. Canoe Ass'n*, 326 F.3d at 514; *Beyond Sys., Inc.*, 2010 WL 3059344, at *2. "Manifest injustice occurs where the court 'has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the [c]ourt by the parties, or has made an error not of reasoning but of apprehension.'" *Sanders*, 2016 WL 6068021, at *3 (ellipsis omitted) (quoting *Campero USA Corp. v. ADS Foodservice, LLC*, 916 F. Supp. 2d 1284, 1292-93 (S.D. Fla. 2012)). A patent misunderstanding or misapprehension of the facts or arguments, so as to warrant a finding of manifest injustice, occurs only where such error was indisputably obvious and apparent from the face of the record. *See In re Roemmele,* 466 B.R. 706, 712 (Bankr. E.D. Pa.2012) ("A party may only be granted reconsideration based on manifest injustice if the error is 'apparent to the point of being indisputable.' In order for a court to reconsider a decision due to 'manifest injustice,' the record presented must be 'so patently unfair and tainted that the error is manifestly clear to all who view it.'" (internal citations and brackets omitted) (quoting *Tri–State Truck Ins., Ltd. v. First Nat'l Bank of Wamego,* No. 09-4158-SAC, 2011 WL 4691933, at *3 (D. Kan. Oct. 6, 2011); *Conway v. A.I. duPont Hosp. for Children,* 2009 WL 1492178, at *6 n.8 (E.D. Pa. May 26, 2009))).

The court rejects the State's argument for several reasons. First the court concludes that it did not patently misunderstand the State's allegations or arguments. Although the State points to irrelevant representations made by Defendants (*see* ECF No. 62-1 at 15-16), [12] the only

---

[12] The State points to several sentences in Defendants' filings that, at best, suggest that they understand § 2566 to set forth a policy to either meet the MOX production objective or remove the plutonium, or else to pay the economic and impact assistance payments. (*See* ECF No. 62-1 at 15-16 (citing ECF No. 17 at 15; ECF No. 33 at 7).) Contrary to the State's assertion, the court does

representations of its own to which it points are certain allegations in the complaint (*see id.* at 14, 16 (citing ECF No. 1 ¶¶ 90-95, 98-100)). Those allegations are included in the second and third causes of action, but they do not identify expressly any conduct as the "agency action" at issue. Instead, for both causes of action, the closest the complaint comes to specifying agency action is broadly worded (*see id.* ¶¶ 95, 111) ("Defendants have a nondiscretionary, mandatory duty and obligation to the State of South Carolina pursuant to Section 2566 which has been unlawfully withheld and for which no other remedy exists."), tracking language from the APA, *see* 5 U.S.C. § 706(1) ("The reviewing court shall . . . compel agency action unlawfully withheld . . . ."). Although, in both causes of action, the State alleges that Defendants failed to meet the MOX production objective and failed to remove plutonium (*see* ECF No. 1 ¶¶ 90, 92-94, 98-100), the complaint also alleges that Defendants "have failed to comply with the economic and impact assistance payments to the State of South Carolina per the mandatory direction of Congress and the governing statute, Section 2566" (*id.* ¶ 82; *see also id.* ¶¶ 89, 97 (incorporating allegation into second and third causes of action)). Consequently, the complaint is hardly clear on what exact conduct is alleged to be the agency action for purposes of APA review.

Furthermore, the State's myopic reliance on the allegations of the complaint ignores the numerous representations it made to this court regarding the agency actions, or failures to act, at issue and specifying the nondiscretionary, mandatory duties that have been unlawfully withheld

---

not view these statements as agreement that the agency action at issue is the failure to process or remove plutonium. In any event, as a general matter, the court fails to see how Defendants' understanding of the State's arguments has anything to do with how the court understood them or how it should have understood them. It would be a strange thing if a defendant's understanding of a plaintiff's arguments dictated the court's understanding of the same.

The State also points out that Defendants do not dispute that they have not met the MOX production objective or removed the plutonium. (*Id.*) Again, the court fails to see the relevance of this argument. The mere observation that certain agency conduct is not in dispute does not *ipso facto* render that conduct "agency action" for purposes of the APA, and it certainly does not preclude other agency conduct from being "agency action."

(*i.e.*, agency actions, per § 706(1)). For instance, in its memorandum supporting its motion for summary judgment, the State asserted in the main headings of its argument that "**THE SECRETARY AND DOE HAVE FAILED TO PERFORM A MANDATORY, NON-DISCRETIONARY DUTY TO REMOVE ONE METRIC TON OF WEAPONS-GRADE PLUTONIUM FROM SOUTH CAROLINA BY JANUARY 1, 2016**" and that "**THE SECRETARY AND DOE HAVE FAILED TO PERFORM A MANDATORY, NON-DISCRETIONARY DUTY TO PROVIDE ECONOMIC AND IMPACT ASSISTANCE PAYMENTS TO SOUTH CAROLINA**." (ECF No. 10-1 at 30-31 (emphasis and capitalization in original).) In the body of the memorandum, the State contends that Defendants

> must comply with the mandatory, nondiscretionary statutory obligation to provide the daily $1 million economic and impact assistance payments. *See* 50 U.S.C.A. § 2566(d)(1). Yet, to date, [Defendants] have failed to provide any economic and impact assistance payments to the State (or even acknowledge that obligation).

> It therefore cannot be disputed that [Defendants] have unlawfully failed to perform their non-discretionary, mandatory duty under Section 2566(d)(1). . . . Therefore, as with Section 2566(c), the [c]ourt is left with only one option: compel the unlawfully withheld action, *i.e.*, payment to the State of the economic and impact assistance.

> . . . .

> . . . . Pursuant to Section 2566(d), Congress mandated that [Defendants] remove one metric ton of defense plutonium or defense plutonium materials from the State during calendar year 2016 and provide economic and impact assistance of $1 million per day to the State until such plutonium is removed, up to $100 million. Because, to date, [Defendants] have not removed any defense plutonium or defense plutonium materials from the State but have not yet provided the $1 million per day economic and impact assistance payments, [Defendants] have failed and continue to fail to perform their statutorily imposed duty. Accordingly, pursuant . . . 5 U.S.C.[ §] 706(1), Congress has mandated that the [c]ourt compel [Defendants] to perform this duty.

(*Id.* at 32, 36. (internal citation omitted)) In its reply brief supporting the motion for summary judgment, the State employed roughly the same main headings (*see* ECF No. 42 at 6, 12) and stated

that its complaint asks the court "to enjoin . . . Defendants to comply with the plain requirements

of Section 2566. . . . [C]ompliance with Subsection (d) can be accomplished by meeting the MOX

production objective or removing one metric ton of plutonium from the State and . . . paying the

assistance penalties to the State" (*id.* at 14).[13]

Aside from its arguments regarding summary judgment, the State's arguments opposing a

third party's motion to intervene are also telling. The third party moved to intervene, seeking to

"challenge Defendants *actions and inactions* to indefinitely suspend construction of the [MOX

Facility] . . . without complying with the statutory requirements to remove defense plutonium from

SRS or make economic and impact assistance payments, in contravention of 50 U.S.C. §[] 2566."

(ECF No. 6 at 2-3 (emphasis added).) In the only cause of action in its proposed complaint, the

third party alleged that Defendants did not meet the MOX production objective and "contrary to

the requirements of  . . . § 2566, Defendants have not paid economic and impact assistance

payments[] or removed at least 1 metric ton of defense plutonium." (ECF No. 6-1 ¶¶ 30-31.) In the

very next paragraph, the proposed complaint alleged that these "actions and inactions of

Defendants set forth above constitute unlawful and unreasonable actions which contravene

Congressional mandate, . . . exceed Defendants' statutory authority, . . . and constitute

*unreasonably withheld agency action* . . . ." (*Id.* ¶ 32 (emphasis added).) In opposing the third

party's motion to intervene, the State averred that "the cause of action asserted by the [third party]

seeking to enforce Section 2566 . . . is the *exact same claim* that the State . . . is prosecuting." (ECF

No. 11 at 7 (emphasis added).) The State also averred that § 2566 "requires [Defendants] to remove

not less than one metric ton of defense plutonium from the State of South Carolina each year and

---

[13] The State's reply brief also lists four instances in which Defendants "failed to comply" with congressional mandates or directives in § 2566, including the directives to remove plutonium and to pay economic and impact assistance payments. (ECF No. 42 at 5.)

pay to the State . . . each year beginning on January 1, 2016 economic and impact assistance" (ECF No. 11 at 2 (quotation marks and emphasis omitted)) and that its complaint already contained a "claim," seeking "an [o]rder compelling Defendants to make the impact assistance payments mandated by 50 U.S.C. § 2566." (*Id.* at 7.) The court relied on these averments by the State in denying the motion to intervene. (*See* ECF No. 36 at 8 ("[T]he court is persuaded that [the third party] shares the same ultimate concerns as [the State], namely that . . . Defendants comply with 50 U.S.C. § 2566 by removing 1 metric ton of defense plutonium from SRS and pay economic and impact assistance.").)

The State's arguments against Defendants' motion to dismiss are equally revealing. The State averred that this court has jurisdiction over its "cause of action," which asks the court to declare that "Defendants' *failure* to comply with Section 2566(d) are *unlawful* and to *compel* . . . Defendants' *compliance*." (ECF No. 27 at 27 (emphasis added).) The "compliance" the State seeks "includ[es] removal of the defense plutonium and payment of the economic and impact assistance [payments]." (*Id.* at 27-28.) The State emphasized that, under § 2566(d), it does not seek damages; instead, it seeks, and § 2566 provides for, "equitable and monetary relief." (*Id.* at 28.) The State castigated Defendants for "fail[ing] to take any substantive action to comply with Section 2566(d)(1)'s mandate to remove one metric ton of defense plutonium . . . or pay fines and penalties." (*Id.*) The State also castigated Defendants for asserting that "they cannot discern which subsections of Section 2566 they are alleged not to have complied with," because "the specific subsections of Section 2566 for which noncompliance is alleged are clearly set forth in the [c]omplaint," including "Section 2566(d), [which] require[es] the removal of one metric ton of defense plutonium . . . as well as the payment of the penalties." (*Id.* at 42-43; *see also* ECF No. 27-2 (describing the "statutory requirements" for § 2566(d)(1) as "**remove**" and "**Pay**" (emphasis

in original)).) At the motions hearing, the State continued this line of argument, stating that "[section] 2566 imposes a legal obligation to pay that hundred million dollars" and that the State "ha[s] asked for specific performance under the statute. That is a cognizable claim under the APA because that is *agency action unlawfully withheld. Congress said, go pay*. . . . [Defendants do not] have the discretion about whether they're going to do this or not. *Congress has said in a statute you shall remove and you shall pay*." (ECF No. 51 at 49, 53 (emphasis added).)

In sum, the State consistently argued to this court[14] that § 2566(d), upon which its third cause of action in the complaint is based, imposes on Defendants a non-discretionary, mandatory duty and obligation to make the economic and impact assistance payments; that Defendants' failure to make these payments caused them to be out of compliance with § 2566(d); that Defendants' failure to make the payments was an action that was unlawfully withheld and provided the court the authority under the APA to compel Defendants to comply with § 2566(d) by ordering them to make the payments; and that the failure to pay constitutes an agency action. Despite all these consistent representations, the State now asserts that it only ever alleged one agency action (or the failure to act or comply with a non-discretionary, mandatory duty the unlawful withholding of which constitutes an agency action the court may compel), namely, Defendants' failure to either meet the MOX production objective or remove one metric ton of defense plutonium. This assertion

---

[14] The court's observations are further bolstered by two other filings by the State. In opposing one of Defendants' motions for extension of time, the State listed as an undisputed fact—alongside Defendants' alleged failures to meet the MOX production objective and remove plutonium from South Carolina—that Defendants "have failed to provide economic and impact assistance payments to the State of South Carolina." (ECF No. 15 at 5-6.) In opposing Defendants' motion to stay proceedings, the State averred that "the only issues to resolve" regarding Defendants' "compliance or non-compliance with Section 2566" were purely legal in nature because "[i]t is undisputed that if Section 2566 requires . . . Defendants to (1) remove plutonium from the State by the deadlines set forth in the statute and (2) pay the penalties and fines, . . . Defendants have not complied with the statute because . . . Defendants, as they acknowledge, have failed to do either." (ECF No. 35 at 3 & n.1.)

is belied by the record. The court did not misunderstand the State's position, and it certainly did not do so patently. A court can hardly be said to have patently misunderstood a party when it attributed to that party a position the party had consistently taken. *See Pierce v. Dist. of Columbia*, 146 F. Supp. 3d. 197 (D.D.C. 2015); *cf. Waite v. All Acquisition Corp.*, No. 15-cv-62359-BLOOM/Valle, 2016 WL 2346768, at *2 n.3 (S.D. Fla. March 10, 2016).

Second, beyond disagreeing with the State's argument that it misunderstood the State's position, the court notes that the State's argument overlooks the extent of the court's discretion to construe a complaint in the context of addressing a sovereign immunity defense arising in the intersection of the APA and the Tucker Act. As the court explained in its October 31, 2016 order (*see* ECF No. 56 at 12-13), the forum-shopping spawned by *Bowen*'s confusing holding has caused courts to caution that they "will not tolerate a litigant's attempt to artfully recast its complaint to circumvent the jurisdiction of the Court of Federal Claims." *Consol. Edison*, 247 F.3d at 1385; *see Suburban*, 480 F.3d at 1123-24 ("[D]ressing up a claim for money as one for equitable relief will not remove the claim from Tucker Act jurisdiction and make it an APA case.") In assessing a complaint in such circumstances, a court is not required to, and should not, end its inquiry at the face of the complaint. *See James v. Caldera*, 159 F.3d 573, 579 (Fed. Cir. 1998) ("Our inquiry, however, does not end with the words of the complaint, however instructive they may be, for we still must 'look to the true nature of the action in determining the existence or not of jurisdiction.'" (quoting *Katz v. Cisneros*, 16 F.3d 1204, 1207 (Fed. Cir. 1994)); *Williams v. Sec'y of the Navy*, 787 F.2d 552, 557-58 (Fed. Cir. 1986) ("Substance not form is controlling . . . . It is well-settled that 'a plaintiff should not be allowed to avoid the jurisdictional (and hence remedial) restrictions of the Tucker Act by casting its pleadings in terms that would enable a district court to exercise jurisdiction under a separate statute.'" (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C.

Cir. 1982))). Instead, the court should look to the relief sought: "when the plaintiff's claims, regardless of the form in which the complaint is drafted, are understood to be seeking a monetary reward from the Government, then . . . a straightforward analysis calls for determining whether the case falls within the jurisdiction of the Court of Federal Claims." *Suburban*, 480 F.3d at 1126.

Here, looking beyond the face of the State's complaint, the court determined that the third cause of action, even though garbed in terms of declaratory and injunctive relief, was, in fact, a claim for monetary relief. (*See* ECF No. 56 at 13.) To the extent the State now contends this construction of its complaint was in error in part because it believes the CFC's exclusive Tucker Act jurisdiction applies only to claims for money damages in compensation for injury (*see* ECF No. 62-1 at 11 & n.1), this argument was already fully argued and should not be reargued here, *see Ashmore*, 2017 WL 24255, at *3; *Sanders*, 2016 WL 6068021, at *3; *U.S. Home Corp.*, 2012 WL 5193835, at *3. In any event, the court's legal conclusion that the CFC's Tucker Act jurisdiction over claims for monetary relief extends beyond only those claims seeking money damages in compensation for injury sustained, in the way that the State understands those terms, is not clearly erroneous. *See Doe v. United States*, 100 F.3d 1576, 1579-84 (Fed. Cir. 1996); *ARRA Energy Co. I v. United States*, 97 Fed. Cl. 12, 22-25 (2011); *see also Portsmouth Redevelopment & Hous. Auth. v. Pierce*, 706 F.2d 471, 473 (4th Cir. 1983). Moreover, as the court explained in its previous order, the relief sought by the State for its third cause of action—a declaration and injunction requiring Defendants to make statutorily-obligated payments—falls squarely within the CFC's exclusive Tucker Act jurisdiction. (*See id.* (citing *Kanemoto v. Reno*, 41 F.3d 641, 647 (Fed. Cir. 1994); *Dist. of Columbia*, 67 Fed. Cl. at 313).) In short, given the broad discretion (or even mandate) the court has to look beyond the face of the complaint in this context, it should not

be surprising that the court characterized the causes of action in the State's complaint differently than the manner in which the State attempted to present them.

Third, along with looking to the relief sought, a court, in engaging in this sovereign immunity and jurisdictional analysis, might also look to the source of the rights upon which the complaint is based.[15] *See Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 375-76 (2d Cir. 1999) (collecting cases); *Terran ex rel. Terran v. Sec'y of Health & Human Servs.*, 195 F.3d 1302, 1310 (Fed. Cir. 1999); *United States v. J&E Salvage Co.*, 55 F.3d 985, (4th Cir. 1995); *Megapulse, Inc.*, 672 F.2d at 968. Here, the source of the rights upon which the second and third causes of action are based bolster the court's view that two agency actions are at issue, to which the court referred as the removal claim and the monetary claim. The State asserts that the court's review is appropriate under § 706(1) of the APA because the conduct of which they complain constitutes agency action unlawfully withheld, and specifically constitutes a failure to act. *See* 5 U.S.C. §§ 551(13), 701(b)(2), 706(1). In *Norton v. Southern Utah Wilderness Alliance (SUWA),* 542 U.S. 55 (2004), the Supreme Court concluded that such "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take.*" 542 U.S. at 64 (emphases in original). The latter prerequisite—that the action the agency has allegedly failed to take be one that it is required to take—"carried forward the traditional practice prior to [the APA's] passage" when judicial review of agency action was achieved through mandamus, which was "normally limited to enforcement of 'a specific, unequivocal command.'" *Id.* at 63 (quoting *ICC v. N.Y., N.H. & H.R. Co.*, 287 U.S. 178, 204 (1932)).

---

[15] In its October 31, 2016 order, the court did not address the "rights" side of this "rights and remedies" analysis, *see Up State Fed. Credit Union*, 198 F.3d at 375-76, preferring instead to provide the CFC leeway in interpreting § 2566. However, the State seems intent in the instant motion to force the court's hand.

Because the State premises its causes of action on § 706(1), these causes of action can proceed only if they allege that Defendants failed to take a discrete action that they were required to take. The only sources of rights on which the State relies for its second and third causes of action are § 2566(c) and § 2566(d), respectively. Thus, in assessing the source of rights on which the State's complaint relies, the court must inquire whether § 2566(c) and (d) provide for discrete actions that Defendants are required to take, meaning that they contain specific, unequivocal commands to Defendants. Despite a great amount of argument from the parties on the issue, the plain language of § 2566(c) can be said to contain only one required action that may be called a specific, unequivocal command that is relevant[16]: the Secretary of Energy shall remove from South Carolina at least one metric ton of defense plutonium not later than January 1, 2016. The only other relevant action mentioned in subsection (c) is the achievement of the MOX production objective as of January 1, 2014; but the achievement itself is not required in subsection (c), and neither subsection (c) nor the remainder of § 2566 contains a specific, unequivocal command to meet the MOX production objective by January 1, 2014. Instead the MOX production objective is mentioned in subsection (c) only in relation to the Secretary's failure to achieve it by January 1, 2014, which acts as a condition precedent to the command to remove the defense plutonium. *See Edwards v. Dist. of Columbia*, 821 F.2d 651, 658-59 (D.C. Cir. 1987) (noting that, for purposes of determining agency action under the APA, statutory "conditions precedent do not, by themselves, constitute independent duties"); *see also El Paso Nat. Gas Co. v. United States*, 750 F.3d 863, 891 (D.C. Cir. 2014) (applying *SUWA*); *Wopsock v. Natchees*, 279 F. App'x 679, 686-87 (10th Cir. 2008); *Ctr. for Biological Diversity v. U.S. Envtl. Protection Agency*, 794 F. Supp. 2d 151, 156-58 (D.D.C. 2011); *cf. ARRA Energy Co. I*, 97 Fed. Cl. at 22-25. Likewise, the plain language of §

---

[16] Only subsection (1) of § 2566(c) is at issue.

2566(d) can be said to contain only one required action that may be called a specific, unequivocal command that is relevant[17]: the Secretary shall pay for economic and impact assistance. The other relevant actions mentioned in subsection (d)—the achievement of the MOX production objective by January 1, 2016, or thereafter; the availability of appropriations; the removal in the year of at least one metric ton of defense plutonium—are not required by subsection (d) and, at most, appear to be conditions to the command to pay. Thus, the source of the rights asserted by the State supports the court's characterization of the second and third causes of action in the complaint. The second cause of action constitutes the removal claim because, aside from the other reasons outlined in the preceding paragraphs, § 2566(c) appears to offer review pursuant to § 706(1) based only Defendants' failure to remove defense plutonium. Likewise, the third cause of action constitutes the monetary claim because, among other reasons, § 2566(d) appears to offer review pursuant to § 706(1) based only on Defendants' failure to pay.[18]

In sum, the court did not patently misunderstand the State's position regarding the causes of action in its complaint, as the court merely attributed to the State the position it consistently

---

[17] Only subsection (1) of § 2566(d) is at issue.

[18] The court also finds it strange that the only agency action, or failure to act, the State now asserts that they alleged in their complaint is Defendants' failure to meet the MOX production objective or else to remove one metric ton of plutonium from South Carolina. As relevant to allegations of an agency's failure to act, § 706(1), on which the State bases the two causes of action at issue, permits the reviewing court only to compel agency action that has been unlawfully withheld. Yet, the State's complaint does not request the court to compel Defendants either to meet the MOX production objective or else to remove one metric ton of plutonium; instead, it requests the court to compel Defendants to remove one metric ton of plutonium and to pay the economic and impact assistance payments. In the context of § 706(1), such a request is nonsensical unless removal and paying are agency actions that have been unlawfully withheld. The State's attempts to designate the failure to remove under § 2566(c) and the failure to pay under § 2566(d) as "legal wrongs" provides no guidance. Section 706(1) does not authorize the court generally to address and remedy legal wrongs but, instead, only authorizes the court to compel unlawfully withheld agency action. If the complaint alleged only the agency action that the State now asserts and if the State succeeded on the merits, the court, under § 706(1), would be able to compel Defendants only to achieve the MOX production objective or to remove one metric ton of plutonium.

took. Moreover, the relief sought in the two causes of action as well as the source of rights on which they are based support the court's characterization of the complaint as alleging two agency actions (or failures to act), to which the court referred as the removal claim and the monetary claim.

## C. Assessment of the claims

Next, the State argues that the court erred by assessing its complaint on a claim-by-claim basis rather than by assessing the agency action at issue. In the State's view, a claim-by-claim analysis is "contrary to the plain language and purposes of the APA and contradicts the relevant case law, all of which require this Court to focus on the 'agency action' at issue in the case to determine whether the CFC could provide an 'adequate remedy,' not the individual claims or requests for relief." (ECF No. 62-1 at 8.) The State presses three reasons why a claim-by-claim analysis is flawed. First, the State argues that the plain language of the APA precludes a claim-by-claim analysis. (*Id.* at 9-10.) Section 704 of the APA provides that "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review," 5 U.S.C. § 704, and the State points out that, pursuant to § 706(1), a reviewing court, in the correct circumstances, is to "compel agency action unlawfully withheld," 5 U.S.C. § 706(1). The State contends that "nothing in the plain language of the APA requires or supports the [c]ourt's claim-specific analysis with respect to the [§ 704] 'adequate remedy' determination" and cites to the well-known rule of statutory construction that, when the language of a statute is plain and unambiguous, judicial inquiry into the statute's meaning is complete, and the court should enforce the plain and unambiguous meaning. (ECF No. 62-1 at 9-10 (citing *In re Rowe*, 750 F.3d 392, 396 (4th Cir. 2014)).) In the State's view, "the proper 'adequate remedy' analysis consists of: (1) identifying the 'agency action' at issue; (2) identifying the alleged 'legal wrongs' suffered because of agency

action; and (3) determining whether there is another court that can provide a <u>complete</u> remedy or <u>full</u> relief for <u>all</u> of these alleged wrongs." (*Id.* at 13 (emphases in original).)

Second, the State asserts that the relevant case law shows that the court committed clear legal error in engaging in a claim-by-claim analysis. The State criticizes the court's reliance on *Transohio* and *Sharp*. (*See* ECF No. 62-1 at 10.) In the October 31, 2016 order, the court quoted *Transohio*'s instruction that "'to resolve the sovereign immunity and jurisdiction questions, the court must consider the State's claims individually,'" (ECF No. 56 at 10 (brackets omitted) (quoting *Transohio*, 967 F.2d at 609)), an approach the *Transohio* court picked up from then-Judge Scalia's opinion in *Sharp*, *see Transohio*, 967 F.2d at 609 (citing *Sharp*, 798 F.2d 1521). However, the State points out that this instruction was given in the context of determining whether, under § 702, another "statute that grants consent to suit expressly or impliedly forbids the relief which is sought," 5 U.S.C. § 702, and not whether, under § 704, an adequate remedy for the agency action is available in another court (*see* ECF No. 62-1 at 10-12). The State next argues, that in other relevant cases, courts have asked whether "a monetary payment" available as a remedy in the CFC under the Tucker Act "would afford complete and adequate relief to the plaintiff for all requests for relief arising out of the 'agency action' at issue." (*Id.* at 12; *see id.* at 12-13 (analyzing *Suburban*, 480 F.3d 1116; *Consol. Edison*, 247 F.3d 1378; *Brazos Elec. Power Coop., Inc. v. United States*, 144 F.3d 784, 787 (Fed. Cir. 1998) *Kanemoto*, 41 F.3d 641; *ARRA*, 97 Fed. Cl. 12).)

Third, the State engages in a lengthy argument regarding the policies and purposes underlying the APA and the Tucker Act. (ECF No. 62-1 at 21-28.) The gist of the argument is that, because the court's October 31, 2016 order found that "the same agency action is at issue for all of the State's requests for relief and that the same questions of statutory interpretation likely would need to be answered by this Court and the CFC," the purposes of the APA and the Tucker Act

demand that the case not be bifurcated, and the court committed clear legal error in deciding that bifurcation was appropriate and imposed a manifest injustice on the State by requiring it to proceed in two different fora. (*Id.* at 23; *see id.* at 28.)

The court is not convinced that the plain and unambiguous language of the APA expressly or implicitly precludes claim-by-claim analysis, that the relevant case law is so pellucid on the point that a claim-by-claim analysis would constitute clear legal error, or that the relative purposes and policies underlying the APA and the Tucker Act are so clear and so easily applicable that bifurcation based on a claim-by-claim analysis amounts to clear legal error and works manifest injustice. But the court need not conclusively decide these issues. Each of the State's arguments are aimed at showing that a court must determine whether all of the remedies, to which a plaintiff may be entitled, that emanate from a challenged agency action may be provided by another court. In other words, the State argues that statutory language, case law, and policy require a court to determine whether another court can provide all of the remedies that emanate ultimately from a single agency action, and that asking whether one remedy emanating from an agency action is available in another court and separately asking whether another remedy emanating from the same agency action is available in another court amounts to clear legal error and works manifest injustice. Although the court is not convinced that the State's arguments are correct, the court need not refute them because, even accepting the State's arguments in this regard, no Rule 54(b) relief is warranted.

The State's arguments are all premised on its assertion that there is only one agency action at issue: Defendants' failure either to achieve the MOX production objective or else to remove one metric ton of defense plutonium. However, as the court explained in Part II.B, *supra*, the October 31, 2016 order correctly treated the second and third causes of action as two separate agency

actions, to which the court referred as the removal claim and the monetary claim. Perhaps, the court could have used terminology that did not so closely tie the causes of action to the putative relief requested, which might have suggested that it engaged in the type of relief-focused claim-by-claim analysis that the State now decries. Regardless, the nomenclature does not change the fact that two separate agency actions are challenged in the State's complaint. The court has construed the second cause of action as asserting that Defendants failed to remove one metric ton of plutonium by January 1, 2016, after all the conditions triggering the requirement to do so had been met. The court assessed all the potentially available remedies sought for this challenged agency action and determined that an adequate remedy is not available in the CFC. The court construed the third cause of action as asserting that Defendants failed to make the economic and impact assistance payments after all the conditions triggering the requirement to do so had been met. The court assessed all the potentially available remedies sought for this challenged agency action—separately from assessing the remedies for the agency action challenged in the second cause of action—and determined that an adequate remedy is available in the CFC. In none of this did the court commit the type of error to which the State's arguments are directed: it did not separately assess remedies emanating from the same agency action.

The State has not asserted that an agency-action-by-agency-action analysis would constitute legal error or work manifest injustice, and, in fact, the State's arguments and the three-part test it advocates all seem to presume that such analysis is required. No case law cited by the State indicates that separately assessing under § 704 two challenged agency actions is clear legal error, and the limited available case law, which has little to say on the matter, suggests that a court is permitted to do so. *Cf. Fanin v. U.S. Dep't of Veterans Affairs*, 572 F.3d 868, 876-78 (11th Cir. 2009) (citing *SUWA*, 542 U.S. at 62, 64; *Lujan*, 497 U.S. at 891, 893-94). Thus, the State has failed

to show that the court's assessment of the two agency actions at issue was clearly erroneous or resulted in manifest injustice. Moreover, even if the court agreed with the State that a relief-focused claim-by-claim analysis is prohibited, this could not result in Rule 54(b) relief because the court's analysis in its October 31, 2016 order is not impugned by this prohibition and would not be altered in light of it. *See Holland*, 2016 WL 4771283, at *4 ("[R]econsideration of the court's [decision] is not warranted because the [movant] has not shown any harm caused by that [decision] would be ameliorated by reconsideration of the issue."); *id.* (collecting cases); *Rohm & Haas Co. v. Brotech Corp.*, No. 90-109-JJF, 1996 WL 34454086, at *1 (D. Del. March 30, 1996) ("In no event should reargument be granted where the matters advanced for reargument would not reasonably have altered the result previously reached by the [c]ourt." (quotation marks, alteration, and ellipsis omitted)).

## D. The court's § 1500 discussion

Lastly the State argues that the October 31, 2016 order's discussion regarding the potential actions that the CFC might take if the State seeks to litigate its third cause of action in that forum (such as the court's discussion as to a potential dismissal by the CFC pursuant to § 1500) should be stricken. (*See* ECF No. 62-1 at 31.) The State points out that the court's order noted that the parties had never addressed the issues discussed and that the order was the first time the issues had been raised. (*See id.* (citing ECF No. 56 at 30).) Citing to the rule that reconsideration is warranted when the court decides matters that have not been presented by the parties for determination, the State contends that the discussion should be stricken. (*See id.* (citing *Selvidge ex rel. Selvidge v. United States*, No. 93-4083-DES, 1995 WL 89016, at *1 (D. Kan. Feb. 13, 1995) (explaining that reconsideration is justified due to "a mistaken decision by the court of issues outside those presented for determination"))); *see also Sanders*, 2016 WL 6068021, at *3 ("Manifest injustice

occurs where the court . . . has made a decision outside the adversarial issues presented to the [c]ourt by the parties . . . ." (internal quotation marks omitted)).

The court concludes that the State has not demonstrated that Rule 54(b) relief is appropriate on the basis here asserted. As even the State appears to acknowledge (*see* ECF No. 62-1 at 24 n.11, 31), the court's discussion regarding § 1500 was part of a larger discussion concerning the *potential* consequences of the court's ruling that it had jurisdiction over the second cause of action but not over the third cause of action (*see* ECF No. 56 at 24-31.) The court adverted to this by mentioning several times what the CFC was *likely* to do in light of § 1500 and the Federal Circuit case law interpreting and applying § 1500. (*See* ECF No. 56 at 25-26.) The court did not *decide* anything regarding § 1500 or even what consequences shall or should result from the court's ruling as to the second and third causes of action. (*See id.* at 31 (declining to rule on the motion to dismiss).) Thus, the court did not, in fact, *decide* matters beyond those that the parties presented to it for decision. Accordingly, the only basis offered for reconsideration here is inapposite.

In any event, once the court determined that it lacked jurisdiction over the third cause of action, it was required to determine whether transfer was appropriate under 28 U.S.C. § 1631. *See In re Teles AG Informationstechnologien*, 747 F.3d 1357, 1361 (Fed. Cir. 2014); *Tex. Peanut Farmers v. United States*, 409 F.3d 1370, 1375 n.7 (Fed Cir. 2005). The only other option is dismissal. *See Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 778-79 (2000) ("'Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" (quoting *Ex Parte McCardle*, 74 U.S. 506, 7 Wall 506, 514 (1868))). It is precisely because the court must make this decision, because the decision may turn in part on the operation of § 1500, and because the parties had provided no briefing on the issue, that the court alerted the parties to the issue by discussing, among

other things, the operation of § 1500 and postponed its decision until the parties had the opportunity to address it. The State has not pointed to any rule of law that prevents the court from directing further briefing as to a jurisdictional issue such as this one, and the court is not aware of any. Accordingly, the State has failed to show that Rule 54(b) relief is appropriate.

## IV. CONCLUSION

For the foregoing reasons, the State's motion to reconsider the court's October 31, 2016 order (ECF No. 62) is hereby **DENIED**.

**IT IS SO ORDERED**.

*J. Michelle Childs*

United States District Court Judge

February 7, 2017
Columbia, South Carolina