**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION**

| | | |
|---|---|---|
| State of South Carolina, | ) | Civil Action No. 1:16-cv-00391-JMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| United States; | ) | |
| | ) | |
| United States Department of Energy; | ) | |
| | ) | |
| Rick Perry, *in his official capacity as Secretary of Energy*; | ) | |
| | ) | |
| National Nuclear Security Administration; *and* | ) | |
| | ) | |
| Lt. General Frank G. Klotz, *in his official capacity as Administrator of the National Nuclear Security Administration and Undersecretary for Nuclear Security*, | ) | |
| | ) | |
| Defendants. | ) | |

The State of South Carolina ("the State") filed a complaint alleging that Defendants United States, the United States Department of Energy ("DOE"), the Secretary of Energy, the National Nuclear Security Administration ("NNSA"), and the Administrator of NNSA (collectively "Defendants") failed to adhere to statutory obligations within 50 U.S.C. § 2566. (ECF No. 1.) In earlier orders, the court dismissed the complaint's first cause of action (asserting a constitutional claim) and third cause of action (asserting a claim under § 2566(d)), leaving the second cause of action (asserting a claim under § 2566(c) as the only remaining matter.[1] The case is now before

---

[1] In the first order addressing Defendants' motion to dismiss the complaint, which may be found at *South Carolina v. United States*, ___ F. Supp. 3d ___, 2016 WL 7191567 (D.S.C. 2016), the court directed the parties to file supplemental briefing regarding the correct disposition of the third cause of action. (*See* ECF No. 56). The State filed a motion for reconsideration of that order, which

the court pursuant to the State's motion for summary judgment. (ECF No. 10). For the reasons that follow, the court **GRANTS** the motion **IN PART** and **DENIES** it **IN PART**.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Much of the relevant facts and procedural background of this case are set forth in the court's March 14, 2017 order disposing of Defendants' motion to dismiss:

> At the end of the Cold War, the United States and Russia engaged in efforts to consolidate and reduce their surplus weapons-usable plutonium ("defense plutonium") and jointly developed plans to prevent the proliferation of nuclear weapons. In September 2000, the United States and Russia entered into the Plutonium Management and Disposition Agreement ("PMDA"), under which each country is committed to disposing of at least 34 metric tons of defense plutonium withdrawn from their respective nuclear weapons program. While non-proliferation discussions were underway, DOE, over a number of years, evaluated dozens of options for disposing of the United States' surplus defense plutonium. Ultimately, DOE designated as its "preferred alternative" a dual-path strategy: DOE would immobilize a portion of the defense plutonium within glass or ceramic materials and would convert the other portion into mixed-oxide ("MOX") fuel, which would be used as fuel for commercial nuclear reactors.

> Producing MOX fuel from defense plutonium required the construction of a facility to fabricate the fuel, and, in early 2000, DOE chose to construct a MOX fabrication facility ("MOX Facility") at the Savannah River Site ("SRS"). SRS encompasses 310 square miles in western South Carolina, adjacent to the Savannah River, which forms much of the border between South Carolina and Georgia. When constructed in the 1950s, SRS produced materials, primarily plutonium, for weapons and other national defense missions. Currently, aside from serving as the location for the MOX Facility, SRS also is dedicated to conducting research and development and storing plutonium and uranium waste from around the world.

> In late 2002, Congress enacted, and the President signed into law, the Bob Stump National Defense Authorization Act for Fiscal Year 2003, Pub. L.

---

the court denied in another order (ECF No. 75), which may be found at *South Carolina v. United States*, ___ F. Supp. 3d ___, 2017 WL 491694 (D.S.C. 2017). Following the filing of the supplemental briefs, the court entered an order granting in part the motion to dismiss and dismissing the State's third cause of action without prejudice to the State's ability to file an original action in the Court of Federal Claims ("CFC") and raise the issue there. (ECF No. 76.) Thereafter, in another order, the court addressed the remainder of Defendants' motion to dismiss, dismissed the first cause of action, but denied Defendants' request to dismiss the second cause of action. (*See* ECF No. 84.)

No. 107-314, 116 Stat. 2458 (2002), relevant parts of which are now codified at 50 U.S.C. § 2566. As later amended, § 2566, entitled, "Disposition of Weapons-Usable Plutonium at Savannah River Site," provides a detailed plan for the MOX Facility, including the requirement that the Secretary of Energy submit to Congress, by a certain date, a plan for the construction and operation of the MOX Facility. Starting in 2004, the Secretary also must submit to Congress an annual report assessing the United States' progress toward meeting its obligations under the PMDA and "whether the MOX production objective has been met." [50 U.S.C. § 2566(a).] The MOX production objective is defined as the average rate at which the MOX Facility converts defense plutonium into MOX fuel over a given period of time, but may not be less than the equivalent of producing one metric ton of MOX fuel per year.

In the event that the MOX production objective is not achieved as of January 1, 2014, subsection (c)(1) states that "the Secretary shall remove" from South Carolina "not less than one metric ton of defense plutonium" by January 1, 2016. [50 U.S.C. § 2566(c)(1).] . . . The statute states that the removal of the defense plutonium is to be consistent with the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, and other applicable laws.

(ECF No. 84 at 2-4 (internal citations, brackets, and ellipses omitted).)

On February 9, 2016, the State filed a complaint containing three causes of action. (ECF No. 1.) In previous orders, the court dismissed the first and third causes of action, leaving only the second cause of action remaining. (*See* ECF Nos. 56, 75, 76, 84.) In the second cause of action, the State alleges that subsection (c)(1) imposes a mandatory, non-discretionary duty on the Secretary to remove from South Carolina one metric ton of defense plutonium by January 1, 2016, in the event the MOX production objective is not achieved by January 1, 2014; that the MOX production objective was not achieved by January 1, 2014, or thereafter; and that the Secretary did not remove from South Carolina one metric ton of defense plutonium by January 1, 2016, or thereafter. (*See* ECF No. 1 at 27-28.) In relevant part, the complaint requests "a declaration and order . . . enjoining and requiring Defendants to immediately remove one metric ton of defense plutonium or defense plutonium materials from [South Carolina] pursuant to [§] 2566(c)," a "declaration and order" "enjoining Defendants from . . . transferring . . . defense plutonium . . . to

[SRS] . . . until th[e] [c]ourt enters an order finding that Defendants are in full compliance with [§] 2566 and [are] achieving the MOX production objective," and "[a] declaration and order retaining jurisdiction over this matter regarding . . . Defendants' compliance with [§] 2566 and this Court's order, including the prohibition on the transfer of defense plutonium or defense plutonium materials [and] compliance with [§] 2566(c)." (*Id.* at 27-28, 31-32.)

In its motion for summary judgment, the State asserts that it is undisputed that the MOX production objective was not achieved as of January 1, 2014, and that the Secretary did not remove from South Carolina one metric ton of defense plutonium by January 1, 2016. (*See* ECF No. 10-1 at 27.) The State contends that subsection (c)(1) imposes a mandatory, non-discretionary duty on the Secretary to remove from South Carolina one metric ton of defense plutonium by January 1, 2016, if the MOX production objective is not achieved by January 1, 2016. (*See id.*) Because the MOX production objective was not met by January 1, 2014, and because the Secretary failed to remove the one metric ton of defense plutonium by January 1, 2016, the State argues that the court must compel the Secretary to remove the one metric ton of defense plutonium by an order in the nature of mandamus, pursuant to 28 U.S.C. § 1361, or an order to compel agency action unlawfully withheld, pursuant to § 10(e) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1). (*See* ECF No. 10 at 2; ECF No. 10-1 at 25, 30-31.) In relevant part, the State requests a "declar[ation] that . . . Defendants have failed to comply with their mandatory, non-discretionary duties pursuant to 50 U.S.C. § 2566," a "declar[ation] and order[ that] . . . Defendants . . . immediately remove from [South Carolina] one metric ton of defense plutonium . . . pursuant to their obligations under . . . [§] 2566(c)," a declar[ation] and order[ that] . . . Defendants not . . . move or transfer any plutonium to South Carolina . . . until th[e] [c]ourt enters an order finding the Secretary and DOE are in full compliance with [§] 2566," and "an order . . . retaining

4

continuing jurisdiction over this matter regarding . . . Defendants' ongoing and continuous compliance with [§] 2566." (ECF No. 10 at 2-3; *see* ECF No. 10-1 at 37.)

In response, Defendants concede that there is no dispute that the MOX production objective was not achieved by January 1, 2014, or thereafter or that the Secretary did not remove from South Carolina one metric ton of defense plutonium by January 1, 2016, or thereafter. (*See* ECF No. 38 at 10; ECF No. 51 at 38.)[2] However, Defendants argue that the State's motion nonetheless should be denied for several reasons. First, they argue that subsection (c)(1) does not impose a mandatory, non-discretionary duty on the Secretary to remove one metric ton of plutonium. (*See* ECF No. 38 at 19-21.) Next, they argue that their current efforts to plan and accomplish removal from South Carolina of several metric tons of defense plutonium (as evidenced by the extensive exhibits they have submitted) demonstrate that Defendants are satisfying any removal obligation under subsection (c) and, thus, should preclude the issuance of mandamus. (*See id.* at 21-26.) Defendants also argue that the court has discretion to deny issuing mandamus based upon equitable considerations, which, they claim, favor denial due to the inherent practical and legal exigencies of transferring plutonium to another location that are evidenced by their numerous exhibits. (*See id.* at 26-31). Lastly, Defendants argue that the State's request for the court to retain jurisdiction in this matter should be denied because it is premised on speculation regarding future events that are not ripe for adjudication. (*See id.* at 47.)

## II. LEGAL STANDARD

Summary judgment is appropriate when the materials in the record show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[2] In their response, Defendants "den[ied] that they have not removed any defense plutonium from the State of South Carolina." (ECF No. 38 at 10.) However, at the subsequent motions hearing, Defendants, either clarifying or abandoning their previous denial, expressly conceded that they did "not . . . dispute that [they] haven't removed a ton of plutonium since 2014." (ECF No. 51 at 38.)

Fed. R. Civ. P. 56(a). "[I]n ruling on a motion for summary judgment, 'the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [its] favor.'" *Tolan v. Cotton*, ___ U.S. ___, 134 S. Ct. 1861, 1863 (2014) (per curiam) (brackets omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248.

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in its pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *See id.* at 324.

### III. ANALYSIS

The court's analysis proceeds by first examining whether the State has shown that it is entitled to summary judgment on its second cause of action with respect to the forms of relief sought pursuant to § 1361 or § 706(1). Second, the court considers whether the State is entitled to an order maintaining the court's continued jurisdiction over this matter. Third, the court examines whether the State has shown that it is entitled to summary judgment on its second cause of action with respect to the declaratory relief it seeks.

**A. Relief pursuant to § 1361 or § 706(1)**

The State asserts that it is entitled to two forms of relief pursuant to § 1361 or § 706(1). Specifically, it asserts that it is entitled to an order mandating the Secretary to remove one metric ton of defense plutonium pursuant to subsection (c)(1) and an order enjoining or suspending

Defendants' transfer of plutonium to SRS until the court finds that Defendants are in compliance with § 2566. Before addressing the parties' arguments regarding whether the State has shown that it is entitled to summary judgment, such that the court could grant the relief sought, the court finds it useful first to set forth the applicable law, examining the interplay between § 1361 and § 706(1).

      1. *Applicable law: interplay between § 1361 and § 706(1)*

District courts "have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "Mandamus is a 'drastic' remedy that must be reserved for 'extraordinary situations' involving the performance of official acts or duties." *Cumberland Cnty Hosp. Sys., Inc. v. Burwell*, 816 F.3d 48, 52 (4th Cir. 2016) (quoting *Kerr v. U.S. Dist. Court for N. Dist. of Cal.*, 426 U.S. 394, 402 (1976)). "[T]o establish the conditions necessary for issuance of a writ of mandamus, the party seeking the writ must demonstrate that (1) [it] has a clear and indisputable right to the relief sought; (2) the responding party has a clear duty to do the specific act requested; (3) the act requested is an official act or duty; (4) there are no other adequate means to attain the relief [it] desires; and (5) the issuance of the writ will effect right and justice in the circumstances." *United States ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F.3d 502, 511 (4th Cir. 1999).

Three of the elements necessary for the issuance of mandamus bear emphasizing. First, mandamus will not issue unless the official or agency has a clear duty to perform the action the plaintiff requests the court to compel. *See Pittson Coal Grp. v. Sebben*, 488 U.S. 105, 121 (1988) ("The extraordinary remedy of mandamus under . . . § 1361 will issue only to compel the performance of 'a clear nondiscretionary duty.'" (quoting *Heckler v. Ringer,* 466 U.S. 602, 616 (1984))); *Cumberland*, 816 F.3d at 52 ("[T]o show that it is entitled to mandamus relief, a plaintiff

must show, among other things, that it has a clear and indisputable right to the relief sought and that the responding party has a clear duty to do the specific act requested." (internal quotation marks omitted)); *Rahman*, 198 F.2d at 511 ("[T]he party seeking [the mandamus remedy] . . . must demonstrate not only that [it] has a clear right to the relief sought but also that the responding party has a clear duty to perform the act amounting to the relief sought."); *In re First Fed. Sav. & Loan Ass'n of Durham*, 860 F.2d 135, 138 (4th Cir. 1998) ("[M]andamus . . . may be invoked only where . . . the respondent has a clear duty to do the particular act requested by the petitioner."); *Syngenta Crop Prot., Inc. v. U.S. Envtl. Prot. Agency*, 444 F. Supp. 2d 435, 451 (M.D.N.C. 2006) ("Because the writ of mandamus requested by [the plaintiff] does not relate to the particular act that [the agency] has a duty to perform, judgment on the pleadings dismissing this claim is appropriate."); *see also McHugh v. Rubin*, 220 F.3d 53, 57 (2d Cir. 2000) ("[A] writ of mandamus may not be granted pursuant to § 1361 unless there is a plainly defined and peremptory duty on the part of the defendant to do the act in question." (quotation marks omitted)). Thus, in an action seeking mandamus under § 1361, the only action that a court may compel is the action the plaintiff asserts the defendant has a duty to perform. Mandamus cannot be used to compel some other action in lieu of the action that the defendant has a duty to perform.

Second, "issuance of the writ [of mandamus] is in large part a matter of discretion with the court to which the petition is addressed." *Kerr*, 426 U.S. at 403. Even if "a party seeking issuance of a writ of mandamus meets its burden of showing the prerequisites have been met, a court still exercises its own discretion in deciding whether or not to issue the writ." *Marquez-Ramos v. Reno*, 69 F.3d 477, 479 (10th Cir. 1995). Thus, when an agency's "sluggishness has violated a statutory mandate [to take action by a deadline]," the question remains, "whether [the court] should exercise [its] equitable powers to enforce the deadline," as "[e]quitable relief, particularly mandamus, does

not necessarily follow a finding of a violation: respect for the autonomy and comparative institutional advantage of the executive branch has traditionally made courts slow to assume command over an agency's choice of priorities." *In re Barr Labs., Inc.*, 930 F.2d 72, 74 (D.C. Cir. 1991); *see In re Medicare Reimbursement Litig.*, 414 F.3d 7, 10 (D.C. Cir. 2005) ("Even when the legal requirements for mandamus jurisdiction have been satisfied, however, a court may grant relief only when it finds compelling equitable grounds." (internal quotation marks and ellipsis omitted)); *13th Reg'l Corp. v. U.S. Dep't of Interior*, 654 F.2d 758, 762-63 (D.C. Cir. 1980) ("[O]ur finding that [the prerequisites of mandamus were met] does not necessarily lead us to conclude that this extraordinary remedy should be invoked [because,] . . . 'a writ of mandamus' issuance is largely controlled by equitable principles.'" (parentheses omitted) (quoting *Duncan Townsite Co. v. Lane*, 245 U.S. 308, 312 (1917))); *cf. Cumberland*, 816 F.3d at 56 (citing *In re Barr Laboratories* with approval).

Third, mandamus is only appropriate where no other remedy is available. *See Kerr*, 426 U.S. at 403 ("[As] condition[] for its issuance . . . , the party seeking issuance of the writ [must] have no other adequate means to attain the relief [it] desires . . . ."); *accord In re City of Va. Beach*, 42 F.3d 881, 884 (4th Cir. 1994). Where a statute provides an adequate avenue for a plaintiff to challenge the official's failure to perform his duty, mandamus under § 1361 is not available. *See In re Breard*, 811 F.2d 818, 826 (4th Cir. 1987); *Raya v. Clinton*, 703 F. Supp. 2d 569, 575 (W.D. Va. 2010).

"The APA authorizes suit by 'a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute.'" *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61 (2004) (brackets omitted) (quoting 5 U.S.C. § 702). "[A]gency action" is defined for purposes of the APA to include "the whole or part of an agency

. . . failure to act," 5 U.S.C. § 551(13); *see* 5 U.S.C. § 701(b)(2), and includes, for example, an agency's "failure to . . . take some decision by a statutory deadline," *Norton*, 542 U.S. at 63; *see also Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 195 (4th Cir. 2013). "The APA provides relief for a failure to act in § 706(1): 'The reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed.'" *Norton*, 542 U.S. at 62.

In *Norton*, the Supreme Court ruled that "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Id.* at 64. Regarding the latter limitation—that the action be one that the agency was required to take—the Supreme Court explained that

> the APA carried forward the traditional practice prior to its passage, when judicial review was achieved through use of the so-called prerogative writs—principally writs of mandamus under the All Writs Act . . . . The mandamus remedy was normally limited to enforcement of a specific, unequivocal command, the ordering of a precise, definite act about which an official had no discretion whatever.

*Id.* at 63 (internal citations, quotation marks, brackets, and ellipsis omitted). As a result, "§ 706(1) empowers a court only to compel an agency to perform a ministerial or non-discretionary act or to take action upon a matter, without directing *how* it shall act." *Id.* at 64 (internal quotation marks omitted).

Like the Supreme Court in *Norton*, a number of other courts have recognized that § 706(1) "carried forward" the practice of judicial review of agency actions under the traditional mandamus remedy, now codified at § 1361. *See S. Utah Wilderness All. v. Norton*, 301 F.3d 1217, 1226 n.6 (10th Cir. 2002) ("Courts have often explained that the standards for compelling agency action through a writ of mandamus and through § 706(1) are very similar . . . ."), *rev'd on other grounds*, 542 U.S. 55 (2004); *Indep. Mining Co., Inc. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (citing *Japanese Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 n.4 (1986)); *Hyatt v. U.S.*

*Patent & Trademark Office*, 146 F. Supp. 3d 771, 781 & n.25 (E.D. Va. 2015); *Aslam v. Mukasey*, 531 F. Supp. 736, 742 (E.D. Va. 2008). Courts have also noted that, in some important ways, "the exact interplay between these two statutory schemes has not been thoroughly examined by the courts." *Indep. Mining Co.*, 105 F.3d at 507. However, as relevant to this case, two facets of the interplay between § 706(1) and § 1361 are clear.

First, the availability of judicial review for challenged agency conduct under the APA precludes review of, and issuance of mandamus for, the same conduct under § 1361. Although neither the Fourth Circuit nor this court appear to have addressed the issue, at least two other district courts within the Fourth Circuit have, and both have concluded that mandamus relief pursuant to § 1361 is not available when relief is available under the APA, because the APA presents an adequate alternative remedy. *See Callaway Golf Co. v. Kappos*, 802 F. Supp. 2d 678, 690 (E.D. Va. 2011); *Klock v. Kappos*, 731 F. Supp. 2d 461, 470 (E.D. Va. 2010); *Burandt v. Dudas*, 496 F. Supp. 2d 643, 652-53 (E.D. Va. 2007); *Syngenta Crop Prot.*, 444 F. Supp. 2d at 452-53. Moreover, every other court of appeals that has addressed the issue has also concluded that the availability of relief under the APA forecloses the issuance of mandamus under § 1361. *See Serrano v. U.S. Attorney Gen.*, 655 F.3d 1260, 1264 (11th Cir. 2011); *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1268 (11th Cir. 2011); *Sharkey v. Quarantillo*, 541 F.3d 75, 93 (2d Cir. 2008); *Benzman v. Whitman*, 523 F.3d 119, 124, 132-33 (2d Cir. 2008); *Mt. Emmons Mining Co. v. Babbitt*, 117 F.3d 1167, 1170 (10th Cir. 1997); *Stehney v. Perry*, 101 F.3d 925, 934 (3d Cir. 1996); *Thompson v. U.S. Dep't of Labor*, 813 F.2d 48, 52 (3d Cir. 1987); *Seiden v. United States*, 537 F.2d 867, 870 (6th Cir. 1976); *see also Indep. Mining Co.*, 105 F.3d at 507 n.6 ("[W]e question the applicability of the traditional mandamus remedy under [§ 1361] where there is an adequate remedy under the APA.").

Second, if, under § 706(1), a plaintiff alleges that an agency's inaction has resulted in the unlawful withholding of an agency action, the APA authorizes the court only to compel the particular action that the plaintiff alleges has been unlawfully withheld. This conclusion is strongly suggested (if not outright reached) by the Supreme Court in *Norton*, which determined that "the only agency action that can be compelled under the APA is action legally *required*," a determination it based largely on the prior practice of courts compelling agency action through mandamus. 542 U.S. at 63-64. As described above, that practice permitted courts to compel the performance of only the particular non-discretionary duty that the agency was alleged to have failed to perform. *See Pittson Coal Grp.*, 488 U.S. at 121; *Ringer*, 466 U.S. at 616; *Cumberland*, 816 F.3d at 52; *McHugh*, 220 F.3d at 57; *Rahman*, 198 F.2d at 511; *In re First Fed. Sav. & Loan Ass'n*, 860 F.2d at 138; *Syngenta Crop Prot.*, 444 F. Supp. 2d at 451. Whether relying on prior mandamus practice or not, a number of courts have concluded that, under § 706(1), they are authorized only to compel the agency action that is alleged to have been unlawfully withheld. *See, e.g.*, *Firebaugh Canal Water Dist. v. United States*, 712 F.3d 1296, 1302 (9th Cir. 2013); *Hyatt v. U.S. Patent & Trademark Office*, 110 F. Supp. 3d 644, 650 (E.D. Va. 2015); *Laporte v. United States*, No. 09-cv-7247 (KMK), 2011 WL 3678872, at *8 (S.D.N.Y. Aug. 19, 2011); *Long Term Care Pharmacy All. v. Leavitt*, 530 F. Supp. 2d 173, 186-87 (D.D.C. 2008).

A third facet of the interplay between § 706(1) and § 1361 is less clear but, as the parties' briefing suggests (*see* ECF No. 10-1 at 28-29; ECF No. 38 at 26-28), must be resolved in order to decide the instant motion. As previously explained, under § 1361, even when the party seeking mandamus has met the prerequisites for its issuance, a court, exercising its own discretion, may still decline to issue mandamus based on equitable considerations. *See Kerr*, 426 U.S. at 403; *Duncan Townsite Co.*, 245 U.S. at 312; *In re Medicare Reimbursement Litig.*, 414 F.3d at 10;

*Marquez-Ramos*, 69 F.3d at 479; *In re Barr Labs.*, 930 F.2d at 74; *13th Reg'l Corp.*, 654 F.2d at 762-63; *cf. Cumberland*, 816 F.3d at 56. However, § 706(1) provides that "[t]he reviewing court *shall . . . compel* agency action unlawfully withheld." 5 U.S.C. § 706(1) (emphasis added). As this court's March 14, 2017 order amply illustrates, a statute's use of the word "shall" creates a presumption that what follows it is mandatory[3] (*see* ECF No. 84 at 8-9); thus, the language of § 706(1) strongly suggests that, once a party seeking the relief afforded by § 706(1) meets the requirements for granting such relief, the court has no discretion to decline granting that relief on the basis of equitable considerations. Thus, the court confronts a conflict between traditional practice under the historical forerunner of § 706(1) (which suggests the court has discretion to decline mandamus relief) and the language of § 706(1) (which suggests the court lacks discretion to decline that relief).

The court takes as its starting point the first case to address the issue. The Tenth Circuit's decision in *Forest Guardians v. Babbitt*, 174 F.3d 1178 (10th Cir. 1999), ruled that, when an agency has unlawfully withheld a statutorily mandated action, a reviewing court must compel the agency to take the action and has no equitable discretion to deny that relief. *See* 174 F.3d at 1187-91. Because it is the seminal case and represents the bulk of analysis on one side of the issue, the court sets forth the relevant portions of *Forest Guardian*'s analysis here:

> 1. *"Shall" means shall.* Unpersuaded by the clear language of § 706 and the weight of authority interpreting the imperative nature of "shall," the Secretary [of the Interior] argues that this court is not required to issue an injunction. Instead, the Secretary urges this court to use its equitable discretion to permit his continued non-compliance with the [statute], citing several

---

[3] The APA's judicial review provisions employ both the words "may" and "shall" in reference to a reviewing court's actions. *See* 5 U.S.C. §§ 702, 705, 706. As Defendants have previously argued, when legislation employs both the words "may" and "shall" in reference to an entity's actions, the presumption that the word "shall" is mandatory is at its strongest. (*See* ECF No. 17 at 26 n.20 (citing *Lopez v. Davis*, 531 U.S. 230, 241 (2001); *Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 671 (D.C. Cir. 2016))); *see also* 3 Norman Singer & Shambie Singer, *Sutherland Statutory Construction* § 57:11 (7th ed. 2012).

Supreme Court opinions that hold that even in the face of a government statutory violation, the power to grant or deny injunctive relief rests in the sound discretion of the court. However, these cases also unmistakably hold that Congress may restrict the court's jurisdiction in equity by making injunctive relief mandatory for a violation.

While the Supreme Court has made clear that courts should not lightly infer Congress' intent to curtail the courts' traditional equitable power to exercise discretion in the granting of injunctive relief, the Court has likewise made clear Congress' power to curb the courts' discretion by clear expression. Through § 706 Congress has stated unequivocally that courts must compel agency action unlawfully withheld or unreasonably delayed.

. . . .

2. *"Unlawfully withheld" vs. "unreasonably delayed."* Courts have given little attention to the distinction between agency action "unlawfully withheld" and agency action "unreasonably delayed" from the drafting of [the] APA. However, that distinction is important in this case because the discretion Congress took away from courts by using "shall" in the first portion of § 706(1) arguably could come back to the courts through Congress' use of the modifier "unreasonably" as applied to actions "delayed" (as opposed to actions "withheld") in the second portion of § 706(1).

As with all questions of statutory interpretation, we first look to the text of Congress' provisions. Unfortunately, the ambiguity of § 706 is the source of our confusion. Section 706 merely sets out the alternative conditions under which a court must compel agency action—i.e., when agency action is "unlawfully withheld" or "unreasonably delayed." Moreover, neither the APA's other substantive provisions nor its structure cast light on the meaning of § 706.

Further, notwithstanding the debate concerning the propriety of finding statutory meaning by reference to legislative history, the floor debates and committee reports attendant to the APA provide little guidance regarding any possible distinction between "unlawfully withheld" and "unreasonably delayed." The Senate Report accompanying the original APA explained only that the judicial review provisions "expressly recognize the right of properly interested parties to compel agencies to act where they improvidently refuse to act." S. Rep. No. 79–752 (1945). Even the document which has been called the Government's own most authoritative interpretation of the APA, the 1947 Attorney General's Manual on the Administrative Procedure Act (AG's Manual), which the [Supreme] Court has repeatedly given great weight,[4] fails

---

[4] In *Norton*, the Supreme Court again relied heavily on the AG's Manual in determining that a reviewing court is limited to compelling only legally required agency actions. *See* 542 U.S. at 63-64.

to illuminate any distinction between "unlawfully withheld" and "unreasonably delayed." With respect to § 10(e)(A) of the APA, the AG's Manual explains that:

> Clause (A) authorizing a reviewing court to compel agency action unlawfully withheld or unreasonably delayed, appears to be a particularized restatement of existing judicial practice under section 262 of the Judicial Code . . . . Orders in the nature of a writ of mandamus have been employed to compel an administrative agency to act, . . . or to compel an agency or officer to perform a ministerial or non-discretionary act. Clause (A) of section 10(e) was apparently intended to codify these judicial functions.
>
> Obviously, the clause does not purport to empower a court to substitute its discretion for that of an administrative agency . . . . However, . . . a court may require an agency to take action upon a matter, without directing how it shall act.

Attorney General's Manual on the Administrative Procedure Act, at 108 (1947). Thus, while the AG's Manual places the APA's judicial review provisions in their historical context and clarifies the courts' power to compel agency action, it sheds no light on the difference between agency action "unlawfully withheld" and "unreasonably delayed."

In the absence of any clear statutory guidance we will simply apply the most straight forward common sense reading of these two phrases. Thus, if an agency has no concrete deadline establishing a date by which it must act, and instead is governed only by general timing provisions—such as the APA's general admonition that agencies conclude matters presented to them "within a reasonable time," *see* 5 U.S.C. § 555(b)—a court must compel only action that is delayed unreasonably. Conversely, when an entity governed by the APA fails to comply with a statutorily imposed absolute deadline, it has unlawfully withheld agency action and courts, upon proper application, must compel the agency to act.

Thus, the distinction between agency action "unlawfully withheld" and "unreasonably delayed" turns on whether Congress imposed a date-certain deadline on agency action. In our opinion, when an agency is required to act—either by organic statute or by the APA—within an expeditious, prompt, or reasonable time, § 706 leaves in the courts the discretion to decide whether agency delay is unreasonable. However, when Congress by organic statute sets a specific deadline for agency action, neither the agency nor any court has discretion. The agency must act by the deadline. If it withholds such timely action, a reviewing court must compel the action unlawfully withheld. To hold

otherwise would be an affront to our tradition of legislative supremacy and constitutionally separated powers.

In support of the contrary position, the Secretary argues that we should exercise our discretion and consider the context surrounding his legislative duty, as the District of Columbia Circuit did under similar circumstances in *In re Barr Lab*[*oratories*]. In *In re Barr* [*Laboratories*], the court . . . held that the [agency]'s sluggish pace violated a statutory deadline, but refused to issue the writ of mandamus sought by [the plaintiff]. Without reference to § 706, the court explained that equitable relief, particularly mandamus, does not necessarily follow a finding of a violation. The court then stated that[ its] leading case in this area, [*Telecomms. Research & Action Ctr. v. Fed. Commc'ns Comm'n* (*TRAC*), 759 F.2d 70 (D.C. Cir. 1984)]*, identified [equitable] principles that have helped courts determine when mandamus is an appropriate remedy for agency delay. Dismissing the import of Congress' deadline, the court concluded that a finding that delay is unreasonable does not, alone, justify judicial intervention.

In light of the clear command of § 706, we cannot agree. Section 706 requires that a reviewing court shall compel agency action unreasonably delayed, and despite the *In re Barr* court's contrary conclusion, we believe that once a court deems agency delay unreasonable, it must compel agency action.

Neither *TRAC* nor any of the cases it relied on to discern the [equitable principles to employ] involved agency inaction in the face of a mandatory statutory deadline. However helpful the [equitable principles] of *TRAC* may be when considering a discretionary time schedule, we decline to apply it to the Secretary's failure to [take an action] where Congress has established a specific, non-discretionary time within which the agency must act. When an agency fails to meet a concrete statutory deadline, it has unlawfully withheld agency action.

*Forest Guardians*, 174 F.3d at 1187-91 (internal citations, quotation marks, brackets, and ellipsis omitted).

Outside of the Tenth Circuit, a few courts have agreed with *Forest Guardians*' conclusion that when an agency action is "unlawfully withheld" under § 706(1), a reviewing court has no equitable discretion to deny an order compelling the action, *see Oxfam Am., Inc. v. U.S. Sec. & Exch. Comm'n*, 126 F. Supp. 3d 168, 172-76 (D. Mass. 2015); *W. Watersheds Project v. Foss*, No. CV 04-168-MHW, 2006 WL 2868846, at *3 (D. Idaho Oct. 5, 2006), or suggest that they might

agree with that proposition, *see Irshad v. Napolitano*, No. 8:12cv173, 2012 WL 4593391, at *11 n.7 (D. Neb. Oct. 2, 2012); *Izaak Walton League of Am. v. Kimbell*, 516 F. Supp. 2d 982, 986 (D. Minn. 2007); *cf. Christopher Vill., Ltd. P'ship v. Retsinas*, 190 F.3d 310, 316 n.8 (5th Cir. 1999).

The treatment of *Forest Guardians* in the Ninth Circuit is somewhat confusing. Initially, cases decided by several courts in the Ninth Circuit agreed with *Forest Guardians*' approach. *See Butte Envtl. Council v. White*, 145 F. Supp. 2d 1180, 1184-85 (E.D. Cal. 2001); *Ctr. for Biological Diversity v. Badgley*, No. 00-1045-KI, 2000 WL 1513812, at *2 (D. Or. Oct. 11, 2000); *Biodiversity Legal Found. v. Badgley*, No. Civ. 98-1093-KI, 1999 WL1042567, at *6 (D. Or. Nov. 17, 1999), *rev'd on other grounds*, 309 F.3d 1166 (9th Cir. 2002). However, in an appeal from one of these cases, the Ninth Circuit offered a confusing position on *Forest Guardians*. *See Biodiversity Legal Found. v. Badgley* (*Badgley*), 309 F.3d 1166, at 1176-78 (9th Cir. 2002). After noting the district court's agreement with *Forest Guardians* and the fact that the statute at issue had set a deadline for the agency to take a non-discretionary action, which the agency had failed to meet, the court explained that, because "Congress has specifically provided a deadline for performance by the [agency], . . . no [*TRAC*] balancing of factors is required or permitted." *Id.* at 1176-77 & n.11. Despite using language that comports with *Forest Guardians*' approach, the court next stated that "a statutory violation does not always lead to the automatic issuance of an injunction" and that "when federal statutes are violated, the test for determining if equitable relief is appropriate is whether an injunction is necessary to effectuate the congressional purpose behind the statute." *Id.* at 1177 (citing *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 313 (1982); *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 194 (1978)). Looking at the statute at issue there, the court determined that Congress had foreclosed a reviewing court's equitable discretion and that the statute required the court to provide injunctive relief when the agency missed a statutory deadline

to act. *See id.* at 1177-78. For this reason, the court concluded that the district court "had no discretion to consider the [agency]'s [equitable arguments]." *Id.* at 1178. Since the case was decided, one court in the Ninth Circuit has consistently understood *Badgely* to permit a reviewing court to exercise its discretion and decline injunctive relief under § 706(1) even if the agency has failed to meet a statutorily imposed deadline but also to limit the court's equitable discretion to determining only whether injunctive relief would effectuate the purposes of the statute that set the deadline. *See Ctr. for Food Safety v. Hamburg*, 954 F. Supp. 2d 965, 970-71 (N.D. Cal. 2013); *Ctr. for Biological Diversity v. Brennan*, 571 F. Supp. 2d 1105, 1131, 1135 (N.D. Cal. 2007); *Ctr. for Biological Diversity v. Abraham*, 218 F. Supp. 2d 1143, 1159-60 (N.D. Cal. 2002).[5]

Courts in the D.C. Circuit also have weighed in on *Forest Guardians'* approach. The D.C. Circuit, confronting a case in which an agency had unreasonably delayed an action under a statute that provided no deadline (rather than and agency that unlawfully withheld an action under a statute that imposed a deadline), explained that "'a finding that delay is unreasonable does not, alone, justify judicial intervention,'" *Cobell v. Norton*, 240 F.3d 1081, 1096 (D.C. Cir. 2001) (quoting *In re Barr Labs.*, 930 F.2d at 75), and declined to apply *Forest Guardians'* rule that, once a court finds an agency's delay unreasonable, it must compel the action, *see id.* at 1096 n.4 (citing *Forest Guardians*, 174 F.3d at 1191).

Aside from *Cobell*, a district court decision offered a textual rationale for not following *Forest Guardians*. *See Ctr. for Biological Diversity v. Pirie*, 201 F. Supp. 2d 113, 117-19 (D.D.C. 2002), *vacated on other grounds sub nom. Ctr. for Biological Diversity v. England*, Nos. 02-5163, 02-5180, 2003 WL 179848 (D.C. Cir. Jan. 23, 2003). As in *Forest Guardians*, the *Pirie* court noted that lawmakers may restrict a court's equitable powers in providing relief for a statutory violation,

---

[5] However, another court in the Ninth Circuit has followed *Forest Guardians'* approach even after *Badgley*. *See W. Watersheds Project*, 2006 WL 2868846, at *3.

and that by using the word "shall" in § 706(1), lawmakers used the strongest language to express their intent that a judicial remedy was mandatory. *See id.* at 118 (quoting *United States v. Monsanto,* 491 U.S. 600, 607 (1989)). Despite the strong language of § 706(1), the court disagreed with *Forest Guardians*' determination that, in § 706(1), "'shall' means shall" and that a reviewing court has no equitable discretion to decline issuing an order to compel the agency action. *See id.* at 118-19. The *Pirie* court's disagreement is based largely on *Forest Guardians*' failure to consider the language of § 702.

As originally enacted in 1946, all of what is now codified at 5 U.S.C. §§ 702-706, was contained § 10 of the APA. *See* Administrative Procedure Act, § 10, Pub. L. 79-404, 60 Stat. 237, 243-44 (1946). Section 10(a) of the APA, titled "Right of review," provided that, absent exceptions not applicable here, "[a]ny person suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action within the meaning of any relevant statute, shall be entitled to judicial review thereof." *Id.* at 243. This remains (with some non-substantive changes) the first sentence of § 702. Section 10(e), titled "Scope of review," provided what is now set forth (again with non-substantive changes) in § 706. Following the APA's codification in Title 5 of the U.S. Code, §§ 702 and 703 were amended in 1976, *see* Act of Oct. 21, 1976, Pub. L. 94-574, 90 Stat. 2721. The amendment added three sentences to the end of § 702, and the third new sentence is relevant for purposes of this order:

> Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

*Id.*

On the whole, the amendments to §§ 702 and 703 were intended to enact a limited waiver of sovereign immunity, and both the House of Representatives and Senate Reports on the amendment confirm that it was

> not intended to affect or change defenses other than sovereign immunity. All other than the law of sovereign immunity remain unchanged. This intent is made clear by clause (1) of the third new sentence added to [§] 702:
>
>> Nothing herein . . . affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground.
>
> These grounds include, but are not limited to, the following: . . . extraordinary relief should not be granted because of the hardship to the defendant or to the public ("balancing the equities") . . . .

H.R. Rep. No. 94-1656, at 12 (1976); S. Rep. No. 94-996, at 11 (1976).

The *Pirie* court viewed amended § 702 and the language of the House and Senate Reports explaining the intent behind the amendment as "expressly recognizing courts' discretion to balance the equities" and concluded that "the more specific language of § 702" should trump "the more general language of § 706." 201 F. Supp. 2d at 119. As a result, the court was unable to "hold that Congress has clearly and unequivocally limited that discretion under the APA." *Id.*

Defendants argue that the court should not follow *Forest Guardians*. (*See* ECF No. 38 at 26-28.) First, Defendants assert that the court's choice whether to follow *Forest Guardians* is restricted in some way by precedent. They observe that, like *In re Barr Laboratories*, the Fourth Circuit's mandamus jurisprudence authorizes courts to use discretion to deny mandamus relief based on *TRAC*-like equitable considerations (*see id.* at 26-27 (citing *Rahman*, 198 F.3d at 511)) and that both the Fourth Circuit and the Supreme Court have treated § 706(1) and traditional mandamus as equivalent (*see id.* at 26-28 & n.16 (citing *Norton*, 542 U.S. at 63; *Vill. of Bald Head Island*, 714 F.3d at 195)). They also assert that the Fourth Circuit, in *Cumberland*, rejected the

*Forest Guardians* approach in favor of *In re Barr Laboratories* and that this court is bound by that decision. (*See id.* at 28.)

The court is not persuaded that its decision is at all restricted by precedent. The mere fact that the Fourth Circuit, in *Rahman* and other cases, has sanctioned, under § 1361, the practice of denying mandamus relief based on the court's equitable discretion is, alone, not enough to conclude that the Fourth Circuit has sanctioned the same practice under § 706(1). Nor is the fact that the Supreme Court (in *Norton*) and the Fourth Circuit (in *Village of Bald Head Island*) have recognized that § 706(1) carried forward the traditional mandamus practice of compelling only agency actions that are legally required enough to conclude that § 706(1) also carried forward the practice, to the extent it exists, of denying relief based on the court's equitable discretion. In short, merely because some of the facets of mandamus jurisprudence have informed practice under § 706(1) does not mean that § 706(1) incorporates wholesale no more and no less than all of the facets of mandamus jurisprudence. Neither Supreme Court nor Fourth Circuit precedent holds (let alone suggests) otherwise. Moreover, concluding that a court, after finding that agency action has been unlawfully withheld under § 706(1), may decline to compel that action based solely on traditional mandamus practice completely elides the language of § 706(1). In the court's estimation, any decision that determines that a court retains discretion to deny relief under § 706(1) must, at a minimum, deal with the language of the statute. The Supreme Court and the Fourth Circuit cases to which Defendants point do not purport to determine whether § 706(1) authorizes courts to use discretion to deny the relief described therein, and they do not attempt to confront the language of § 706(1) that strongly indicates that no discretion is authorized. The court will not ascribe to the Supreme Court or the Fourth Circuit decisions on issues that the Supreme Court and the Fourth Circuit have not addressed.

Likewise, the court does not agree that its ability to follow *Forest Guardians* is somehow constrained by the Fourth Circuit's decision in *Cumberland*. As Defendants concede, no district court in the Fourth Circuit has addressed *Forest Guardians*' analysis, and, despite Defendants' inexplicable argument that the Fourth Circuit rejected *Forest Guardians* in *Cumberland*, it did not even cite *Forest Guardians* (let alone assess and reject it) in *Cumberland*, nor has it done so in any other decision. Further, *Cumberland* concerned an action for mandamus under § 1361, and did not concern an action for an order compelling agency action unlawfully withheld under § 706(1). It, therefore, had no opportunity to address whether the *Forest Guardians* approach should be followed in this circuit or whether the language of § 706(1) altered traditional mandamus practice permitting courts to deny relief pursuant to equitable considerations. *Cumberland*'s reference to *In re Barr Laboratories*, then, is hardly surprising, as that case likewise concerned an action for mandamus and not an action under § 706(1). Both *Cumberland* and *In re Barr Laboratories* are simply inapposite: they provide no basis for deciding whether a court, proceeding under § 706(1), has discretion to not compel agency action unlawfully withheld.

Next, Defendants seem to assert that the court should consider other cases in which *Forest Guardians*' approach was rejected. (*See* ECF No. 38 at 27-28.) Having done so, the court finds many of them unpersuasive for reasons similar to those for which the court has already concluded that *Cumberland* and *In re Barr Laboratories* are inapposite. To whatever extent the Ninth Circuit, in *Badgley*, rejected *Forest Guardians*, it did so without addressing § 706(1)'s language and based its decision almost exclusively on *Romero-Barcelo* and *Hill*, which involve a court's inherent authority to grant an injunction and not its authority to compel agency action under § 706(1). Because neither *Badgley* nor of the cases on which it relies confront the language of § 706(1), the court does not find *Badgley* or the cases in the Ninth Circuit that follow it persuasive. Likewise, to

the extent the D.C. Circuit, in *Cobell*, rejected *Forest Guardians*, it did so without addressing § 706(1)'s language and by relying almost completely on *In re Barr Laboratories*, which did not involve § 706(1). For these reasons, the court does not find *Cobell* persuasive authority in determining whether the court, under § 706(1), may decline to compel agency action unlawfully withheld.

Defendants' final argument for rejecting *Forest Guardians* is that it fails to account for the language of § 702, which, Defendants claim, expressly preserves the court's discretion to decline to compel agency action that has been unlawfully withheld. (*See* ECF No. 38 at 28 n.16.) Although they fail to explain the argument beyond a single sentence, Defendants' argument essentially advances the same analysis used by the *Pirie* court. Thus, rather than assess Defendants' undeveloped argument, the court assesses *Pirie*'s analysis. Although the *Pirie* court confronted the language of §§ 702 and 706, ultimately the court does not find its analysis persuasive.

First, the relevant language in § 702 from the 1976 amendment—"Nothing herein . . . affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground," 5 U.S.C. § 702—does not directly apply to the scope-of-review provision of the APA found in § 706(1). This is so primarily because the court understands the word "herein" to refer only to § 702 and not to § 706(1). "'Herein' as used in legal phraseology is a locative adverb[,] and its meaning is to be determined by the context. It may refer to the section, the chapter or the entire enactment in which it is used." *Gatliff Coal Co. v. Cox*, 142 F.2d 876, 882 (6th Cir. 1944); *see Herein*, Black's Law Dictionary (10th ed. 2014) (defining "herein" to mean "[i]n this thing (such as a document, section, or paragraph)." When the word "herein" is used in conjunction with an exception or proviso, to determine the word's scope (i.e., whether it applies to the particular section in which it is used or

rather to the entire chapter), courts ask whether the exception or proviso in which the word appears is in reference to matter within the section only or within the chapter as a whole. *See Gatliff Coal Co.*, 142 F.2d at 882. ("The fact that ["herein"] was used . . . in a section where none of the substantive matter set up in the succeeding sections . . . appeared must mean that it is to be applied to the whole Act . . . ."); *In re Eloise Curtis, Inc.*, 261 F. Supp. 325, 347 (S.D.N.Y. 1966) ("The word 'herein' in [the section] must refer to the Act as a whole. The reference ['fails to qualify as herein provided'] could not be to [the section] itself because th[e section] does not deal with qualification[s] . . . ."); *cf. Prarie Sky Ltd. v. Daley*, No. 04-5080(DSD/JSM), 2006 WL 2095439, at *3 (D. Minn. July 27, 2006) (concluding, in interpreting purchase agreement, that, "[a]s indicated by the phrase 'if title is made marketable as provided herein,' the term 'herein' refers only to the [particular] section because only that section describes how the seller may make title marketable. In other words, 'herein' does not refer to the entire purchase agreement" (internal brackets and ellipsis omitted)).

Here, it appears that the sentence in which "herein" is used is aimed at containing the effect of the waiver of sovereign immunity accomplished by the 1976 amendment to § 702. The first sentence added by the amendment waives the limitation on judicial review occasioned by the doctrine of sovereign immunity by stating that an otherwise appropriate "*action* . . . shall not be *dismissed* nor *relief* therein be *denied* on the *ground* that it is against the United States." 5. U.S.C. § 702 (emphasis added). The first clause of the third sentence tracks the first sentence's language and ensures that its sovereign immunity waiver is not understood to slacken any other legal or equitable restriction on suits against the United States: "[n]othing herein . . . affects other limitations on judicial review or the power or the duty of the court to *dismiss* any *action* or *deny* any *relief* on any other appropriate legal or equitable *ground*." *Id.* (emphasis added). The second

clause of the third sentence, likewise, contains the effects of § 702's sovereign immunity waiver by ensuring that any relief provided under the APA is not bootstrapped into some other statutory scheme affording judicial review merely because in both the United States has consented to suit: "[n]othing herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Id.* Thus, the third sentence, the proviso, in which the word "herein" is located qualifies language found only in § 702 and no other sections of chapter 7. Nothing in the language of the third sentence suggests that it is intended to qualify other sections of chapter 7, and none of the other sections contain a waiver of sovereign immunity that could be qualified by the third sentence added to § 702.

The court's view that the third sentence is intended to contain the effects of the sovereign immunity waiver found in § 702 and is not intended to qualify other sections in chapter 7 is bolstered by the legislative history to which the *Pirie* court pointed. Both the House and Senate Reports confirm that the predominant purpose of the amendment was to enact a waiver of sovereign immunity, and the third sentence added to § 702 by the amendment "made clear" the "intent" that the amendment did not "affect or change defenses other than sovereign immunity" and that "[a]ll other than the law of sovereign immunity remain unchanged." H.R. Rep. No. 94-1656, at 12 (1976); S. Rep. No. 94-996, at 11 (1976). Nothing in the legislative history of the amendment demonstrates an intent to address the scope-of-review provisions in § 706; in fact, the strongest indicators of legislative intent to be found in the amendment's legislative history expressly disclaim any intent to address any other facet of chapter 7 aside from the sovereign immunity issue.[6]

---

[6] To the extent Defendants or the *Pirie* court understand the House and Senate Reports on the 1976 amendment to have some bearing on the legislative intent for the language of § 706(1), the court disagrees. Legislators' views on the meaning of a provision enacted three decades previously are largely irrelevant for the purposes of ascertaining legislative intent. *See Union Carbide Corp. v.*

Because the proviso found in the third sentence qualifies only § 702 and does not qualify the other sections of chapter 7, the court concludes that the word "herein" used in the proviso refers to § 702 and not to other sections in chapter 7, including § 706(1). As a result, when § 702 states that "[n]othing herein . . . affects . . . the power . . . of the court to . . . deny relief on any other appropriate . . . equitable ground," it means that nothing in § 702—specifically, nothing in § 702's waiver of sovereign immunity—affects the power of a court to deny relief based on equitable considerations. The third sentence does *not* mean that nothing in § 706(1) affects the power of the court to deny relief based on equitable considerations. In other words, the third sentence added to § 702 has no bearing on whether § 706(1)'s language (that the reviewing court shall compel agency action unlawfully withheld) divests reviewing courts of their discretion to decline issuing an order to compel the agency action based on equitable considerations.

---

*Richards*, 721 F.3d 307, 316 (4th Cir. 2013) ("As the Supreme Court has observed, 'post-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation.'" (brackets omitted) (quoting *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011)); *see also Bruesewitz*, 562 U.S. at 242 ("Real (pre-enactment) legislative history is persuasive to some because it is thought to shed light on what legislators understood an ambiguous statutory text to mean when they voted to enact it into law. But post-enactment legislative history by definition 'could have had no effect on the congressional vote.'" (quoting *Dist. of Columbia v. Heller*, 554 U.S. 570, 605 (2008) (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005))); *Laborers' Local 265 Pension Fund v. iShares Trust*, 769 F.3d 399, 409 (6th Cir. 2014) ("[A] post-enactment legislative body has no special insight regarding the intent of a past legislative body." (citing *Penn. Med. Soc. v. Snider*, 29 F.3d 886, 898 (3d Cir. 1994))). Although a subsequent legislature's views on a previously enacted statute might be relevant to legislative intent if that legislature amends the particular provision at issue, here, the 1976 amendment did not alter § 706(1), and, thus, the views expressed in the House and Senate Reports—even assuming they refer to § 706(1)—would be immaterial. *See Pierce v. Underwood*, 487 U.S. 552, 566-67 (1988) (rejecting as authoritative congressional gloss contained in committee report on previously enacted legislation "because it is not an explanation of any language that the . . . [c]ommittee drafted . . . and because there is no indication that [the subsequent Congress] thought it was doing anything insofar as the present issue is concerned"); *Univ. Med. Ctr. of Se. Nev. v. Thompson*, 380 F.3d 1197, 1202 (9th Cir. 2004) ("[S]ubsequent legislative history is an unreliable guide to legislative intent. This is particularly the case when . . . the discussion of existing law does not accompany a related amendment to the pertinent statutory provision." (internal quotation marks and citation omitted) (citing *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 840 (1988))).

Second, the court disagrees with the only other reason offered by the *Pirie* court for rejecting *Forest Guardians*. In the *Pirie* court's view, § 702's language that "[n]othing herein . . . affects . . . the power . . . of the court to . . . deny relief on any other appropriate . . . equitable ground," 5 U.S.C. § 702, is "specific language . . . expressly recognizing the courts' discretion to balance the equities" that qualifies the "more general language of § 706," which states that a court shall compel unlawfully withheld agency action, 201 F. Supp. 2d at 119. "'It is a well-settled principle of construction that specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling.'" *Strawser v. Atkins*, 290 F.3d 720, 733 (4th Cir. 2002) (quoting *Kepner v. United States*, 195 U.S. 100, 125 (1904)). As an initial matter, the court does not believe that this rule of construction has any application here. In the court's view, the language in § 702's proviso qualifies the effect of the sovereign immunity waiver in that section and does not qualify any other limitations on the court's equitable powers, while the language in § 706(1) acts as a limitation on the court's equitable powers in an appropriate suit under the APA but has no bearing on whether the suit is appropriate as a jurisdictional matter. *See Oxfam Am., Inc.*, 126 F. Supp. 3d at 176 ("[Section] 702 provides that courts retain appropriate equitable jurisdiction[;] however, it does not create equitable discretion where there is none."). Thus, even assuming that § 702 contains more specific language than § 706(1), "the sections are not general or specific with respect to each other" and, thus, "[t]he rule of construction cited . . . is simply inapplicable in the context of th[is] case[]." *La. Pub. Serv. Comm'n v. Fed. Commc'ns Comm'n*, 476 U.S. 355, 376 n.5 (1986).

Aside from finding that the rule of construction cited in *Pirie* is inapplicable here, the court also is not persuaded that § 702's language is, in fact, more specific than § 706(1)'s language. As previously explained, in the originally enacted legislation, §§ 702-706 were all subsections of § 10

of the APA. Thus, at the outset, the court notes it is unlikely that § 706(1) addressed matters more general than were addressed in § 702. *See* 1A Singer & Singer, *supra*, § 20:7 ("The presumption is that the statute flows in orderly progression from general statement to specific instance so that ordinarily the qualification of a later clause upon an earlier one is to be expected."). This conclusion is buttressed by the fact that § 702 sets out a general right to judicial review of agency action, while §§ 703-706 address subsidiary issues (the form and venue for the judicial review authorized in § 702, the type of agency actions made reviewable by § 702, the availability of interim relief while review authorized by § 702 is pending, and the scope of a court's review authorized by § 702). Beyond the structure of chapter 7, there is simply no reason to believe that § 702 addresses the equitable discretion of a court reviewing agency action any more specifically than § 706(1) addresses that issue. The limitation imposed in § 706(1) applies only to a court reviewing an agency action pursuant to the APA and flatly states that the reviewing court shall compel the agency action if it has been unlawfully withheld. The qualification contained in the relevant sentence of § 702 does not apply specifically to a court reviewing an agency action under the APA but, instead, applies generally to "any action" before a court. 5 U.S.C. § 702. Notably, the § 702 qualification states not only that nothing herein detracts from a court's legal or equitable power to deny relief but also that nothing herein *adds to* a court's powers. *See id.* ("Nothing herein . . . affects other *limitations* on judicial review . . . ." (emphasis added)). In the court's view, the relevant sentence of § 702 may be read as generally preventing § 702 (or even all of chapter 7) from being understood as detracting from or adding to the equitable powers *already held* by courts, while § 706(1) may be read as specifically depriving courts reviewing agency action under the APA of any equitable power to decline issuing an order to compel unlawfully withheld action. *See*

28

*Oxfam Am., Inc.*, 126 F. Supp. 3d at 176 ("[Section] 702 provides that courts retain appropriate equitable jurisdiction[;] however, it does not create equitable discretion where there is none.").

In the end, the court is persuaded that the *Forest Guardians* approach is correct and that the plain language of § 706(1) requires a reviewing court that has found that agency action has been unlawfully withheld to issue an order compelling that agency action and does not permit the court to decline to do so based on equitable considerations. Nothing in the text of § 706(1) or the rest of chapter 7 persuades the court that the presumptively mandatory "shall" should be viewed as mandatory or that the court has the equitable discretion to decline issuance of such an order once it determines that agency action has been unlawfully withheld. As *Forest Guardians* suggested, and as this court's own research confirms, nothing in the legislative history of the APA as originally enacted demonstrates that lawmakers did not mean what they said in § 706(1). Moreover, much of the case law on which Defendants rely either is inapposite because it involves mandamus relief under § 1361 rather than relief pursuant to § 706(1) or is unpersuasive because it relies only on § 1361 jurisprudence and makes no attempt to address the plain language of § 706(1). The court concludes, along with the *Forest Guardians* court, that "when an entity governed by the APA . . . has unlawfully withheld agency action[,] . . . courts, upon proper application, must compel the agency to act." 174 F.3d at 1190.

2. *Application*

Having considered the interplay between § 1361 and §706(1), the court first concludes that the State may proceed only under the APA. The court has already determined that the State may bring its second cause of action under the APA (*see* ECF No. 56 at 17-24) and, therefore concludes that the APA provides an adequate remedy that precludes review or issuance of mandamus under § 1361. *See Serrano*, 655 F.3d at 1264; *Hollywood Mobile Estates Ltd.*, 641 F.3d at 1268; *Sharkey*,

541 F.3d at 93; *Benzman*, 523 F.3d at 124, 132-33; *Mt. Emmons Mining Co.*, 117 F.3d at 1170;

*Indep. Mining Co.*, 105 F.3d at 507 n.6; *Stehney*, 101 F.3d at 934; *Thompson*, 813 F.2d at 52;

*Seiden*, 537 F.2d at 870; *Callaway Golf Co.*, 802 F. Supp. 2d at 690; *Klock*, 731 F. Supp. 2d at

470; *Burandt*, 496 F. Supp. 2d at 652-53; *Syngenta Crop Prot.*, 444 F. Supp. 2d at 452-53.

Second, pursuant to § 706(1), the court concludes that it must enter an order compelling

the Secretary, consistent with NEPA and other applicable laws, to remove one metric ton of

defense plutonium from South Carolina for storage or disposal elsewhere. The court has already

determined that the plain and unambiguous language of § 2566(c)(1) imposes on the Secretary a

non-discretionary duty to remove from South Carolina one metric ton of defense plutonium by

January 1, 2016, if the MOX production objective is not achieved as of January 1, 2014. (ECF No.

84 at 18-45.) It is undisputed that the MOX production objective was not achieved by January 1,

2014; therefore, the Secretary has a non-discretionary duty to remove from South Carolina one

metric ton of defense plutonium by January 1, 2016. It is undisputed that the Secretary did not

remove one metric ton of defense plutonium from South Carolina by the January 1, 2016 deadline.

The Secretary's failure to remove one metric ton of defense plutonium from South Carolina by the

January 1, 2016 deadline constitutes agency action unlawfully withheld for purposes of § 706(1).

*See In re Paralyzed Veterans of Am.*, 392 F. App'x 858, 860 (Fed. Cir. 2010) ("Congress clearly

imposed on the Secretary a date-certain deadline to issue a final regulation. Under such

circumstances, the agency has no discretion in deciding to withhold or delay the regulation, and

failure to comply is unlawful."); *Badgley*, 309 F.3d at 1177 ("The [agency]'s failure to comply

with the twelve-month deadline is not in accordance with . . . the governing law."); *Forest

Guardians*, 174 F.3d at 1190 ("[W]hen an entity governed by the APA fails to comply with a

statutorily imposed absolute deadline, it has unlawfully withheld agency action . . . ."); *id.* at 1191

("When an agency fails to meet a concrete statutory deadline, it has unlawfully withheld agency action."). Because the court concludes that there is no genuine dispute that the Secretary has unlawfully withheld agency action, the State has demonstrated that it is entitled to judgment as a matter of law, as the court must enter an order compelling the Secretary to take the unlawfully withheld agency action. *See Forest Guardians*, 174 F.3d at 1187-91.

Third, the court concludes that, pursuant to § 706(1), it cannot enter an order enjoining Defendants from transferring plutonium into South Carolina until the court finds that the Secretary and DOE are fully in compliance with § 2566. The State's second cause of action (its only remaining cause of action) alleges that the Secretary unlawfully withheld agency action by failing to remove one metric ton of defense plutonium from South Carolina in accordance with subsection (c)(1). The State has not alleged that the Secretary has a non-discretionary duty to suspend transfers of plutonium to South Carolina, nor has it alleged the Secretary somehow unlawfully withheld agency action by transferring plutonium into South Carolina. Consequently, under a mandamus action, the court could not compel the Secretary to suspend transfers of plutonium to South Carolina because such suspension is not the particular non-discretionary duty that the Secretary is alleged to have failed to perform. *See Pittson Coal Grp.*, 488 U.S. at 121; *Ringer,* 466 U.S. at 616; *Cumberland*, 816 F.3d at 52; *McHugh*, 220 F.3d at 57; *Rahman*, 198 F.2d at 511; *In re First Fed. Sav. & Loan Ass'n*, 860 F.2d at 138; *Syngenta Crop Prot.*, 444 F. Supp. 2d at 451. For the same reason, the court cannot compel the Secretary to suspend transfers of plutonium to South Carolina under § 706(1). *See, e.g.*, *Firebaugh Canal Water Dist.*, 712 F.3d at 1302; *Hyatt*, 110 F. Supp. 3d at 650; *Laporte*, 2011 WL 3678872, at *8; *Long Term Care Pharmacy All.*, 530 F. Supp. 2d at 186-87.

Fourth, for the reasons stated in the preceding paragraph, among others, although the court must enter an order compelling the Secretary to remove from South Carolina one metric ton of defense plutonium, the court cannot, in that order, compel the Secretary to do so *immediately*. As explained above, the court can only compel the agency action that is alleged to have been unlawfully held. Here, the only agency action alleged to have been unlawfully withheld is the Secretary's non-discretionary duty to remove from South Carolina one metric ton of defense plutonium found in subsection (c)(1). However, the statute requires that such removal be "consistent with [NEPA] and other applicable laws." 50 U.S.C. § 2566(c). It should go without saying that an order compelling agency action unlawfully withheld could not compel the agency to take an unlawful action. Here, for instance, the court could not order the Secretary to remove the one metric ton of defense plutonium *inconsistently* with NEPA and other applicable laws, and it likewise could not order the Secretary to remove the one metric ton of defense plutonium without regard to whether removal was consistent with NEPA and other applicable laws. Defendants have asserted that the Secretary could not, consistent with NEPA and other applicable laws, immediately remove the one metric ton of defense plutonium, and they have supported this assertion with a great deal of evidence. (*See* ECF No. 38 at 11-12, 23-26, 28-31; ECF No. 51 at 34.) The State has conceded this point and does not dispute that the Secretary could not, consistent with NEPA and other applicable laws, immediately remove the one metric ton of plutonium from South Carolina. (*See* ECF No. 42 at 10-11; ECF No. 51 at 13-17, 21-23). Accordingly, because there is no dispute that the Secretary could not immediately remove from South Carolina the one metric ton of defense plutonium in a manner consistent with NEPA and other applicable laws, the court cannot order immediate removal.

Moreover, although the court concludes that it must grant summary judgment to the State and enter an order compelling the Secretary to remove from South Carolina the one metric ton of defense plutonium, such an order must consider the work that is necessary to accomplish the removal consistently with NEPA and other applicable laws. *See Forest Guardians*, 164 F.3d at 1274; *Oxfam Am., Inc.*, 126 F. Supp. 3d at 176. The court also recognizes that the order must be fashioned so as to not decree *how* the Secretary should accomplish the task of removing the one metric ton of defense plutonium. *See Hyatt*, 110 F. Supp. 3d at 652-53 (citing *Norton*, 542 U.S. at 65). Although Defendants have offered evidence regarding the difficulty of removal and have made vague assertions as to timeframes for accomplishing some of the prerequisites for removal to be completed, neither Defendants nor the State have provided sufficient evidence or argument upon which the court might properly craft an injunctive order. Accordingly, the court will not enter the order until after it has obtained further submissions from the parties. *See Hamburg*, 954 F. Supp. 2d at 972.

**B. Relief in an order retaining continued jurisdiction**

The State is entitled to summary judgment on its second cause of action insofar as it requests an order compelling the Secretary to remove from South Carolina the one metric ton of defense plutonium, but the State also requests the court enter an order retaining continuing jurisdiction over this matter until it finds that Defendants are in compliance with § 2566. Although it appears that the court has discretion to retain jurisdiction over a case pending the accomplishment of an agency action that has been unlawfully withheld, *see Baystate Med. Ctr. v. Leavitt*, 587 F. Supp. 2d. 37, 41 (D.D.C. 2008) (citing *Cobell*, 240 F.3d at 1109), the court should be hesitant to do so absent compelling circumstances, *Nat. Res. Def. Council, Inc. v. U.S. Food &*

*Drug Admin.*, 884 F. Supp. 2d 108, 117 (S.D.N.Y. 2012) (citing *Sierra Club v. U.S. Army Corps of Eng'rs*, 701 F.2d, 1011, 1042 (2d Cir. 1983); *Baystate Med. Ctr.*, 587 F. Supp. 2d. at 41).

Because the parties have not sufficiently addressed the bases for the court to retain continuing jurisdiction, the court will grant the State's request only to the limited extent of retaining jurisdiction until an order compelling the Secretary to remove from South Carolina the one metric ton of defense plutonium has been entered. At that time, the court will re-evaluate whether to exercise its discretion to retain jurisdiction until compliance with the order has been accomplished. The parties should address the issue in their submissions to the court.

## C. Declaratory relief

Finally, the State requests relief in the form of a declaration, under the Declaratory Judgment Act, 28 U.S.C. § 2201, "that the [Secretary] ha[s] failed to comply with [his] mandatory, nondiscretionary dut[y] pursuant to 50 U.S.C.[] § 2566." (ECF No. 10 at 2; ECF No. 10-1 at 37.) Under the Declaratory Judgment Act, a district court, in a case or controversy otherwise within its jurisdiction, "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers discretion on the courts rather than an absolute right upon the litigant.'" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (*quoting Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). Courts have long interpreted the Act's permissive language "to provide discretionary authority to district courts to hear declaratory judgment cases." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998). "[A] declaratory judgment action is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and

controversy giving rise to the proceeding.'" *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (*quoting Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)).

The State's second cause of action satisfies the case or controversy requirement, as there is a valid jurisdictional basis for the court to decide the matter.[7] The only issue presented here is whether the court should exercise its discretion to grant the declaratory relief the State seeks. The court concludes that it should not grant declaratory relief because the declaration sought will not serve a useful purpose and will not afford relief from the controversy giving rise to this case.

"[T]he existence of another adequate remedy does not necessarily bar a declaratory judgment." *Ford Motor Co. v. United States*, 811 F.3d 1371, 1379 (Fed. Cir. 2016) (citing *Powell v. McCormack*, 395 U.S. 486-499-500 (1969)); *see also* Fed. R. Civ. P. 57 ("The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."); 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2578 (4th ed. 2016) ("[T]he existence of another adequate remedy does not bar a declaratory judgment."). However, "district courts may refuse declaratory relief where an alternative remedy is better or more effective." *Ford Motor Co.*, 811 F.3d at 1379-80; *see* 10B Wright & Miller, *supra*, § 2578 ("The court, however, in the exercise of [its] discretion . . . properly may refuse declaratory relief

---

[7] Generally, a past injury does not form the basis for declaratory relief unless it is accompanied by continuing harm or a real and immediate threat of repeated injury. *See Peter B. v. Buscemi*, No. 6:10-767-TMC, 2013 WL 869607, at *7 (D.S.C. March 7, 2013) (citing *Green v. Mansour*, 474 U.S. 64, 74 (1985); *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)). However, if an entity governed by the APA fails to take a non-discretionary action by a statutorily imposed deadline and thereafter continues to take the action, the entity's conduct amounts to a continued violation of law for which declaratory relief is permitted. *See Forest Guardians v. Johanns*, 450 F.3d 455, 462 (9th Cir. 2006); *see also Padres Hacia Una Vida Mejor v. Jackson*, 922 F. Supp. 2d 1057, 1068-70 (E.D Cal. 2013) (declining to grant declaratory relief in action seeking both declaratory and injunctive relief for agency's failure to take action by a statutory deadline specifically because agency had already taken the action); *accord In re. Am. Fed'n of Gov't Emps., AFL-CIO*, 837 F.2d 503, 505 (D.C. Cir. 1988). Here, the Secretary's failure to remove the defense plutonium amounts to a continuing violation of § 2566.

if the alternative remedy is better or more effective."). Here, the State seeks both injunctive relief, in the form of an order compelling the Secretary to remove from South Carolina one metric ton of defense plutonium, premised on the Secretary's failure to comply with his non-discretionary duty to remove the defense plutonium under § 2566(c)(1), and a declaration that the Secretary has failed to comply with his non-discretionary duty to remove the defense plutonium. Thus, the injunctive relief the State will receive subsumes the declaratory relief it seeks and, the court may deny declaratory relief on the ground that the State is already entitled to the more effective injunctive remedy.

Furthermore, the court believes that declaratory relief would be unnecessary to afford relief from any controversy arising in from the State's second cause of action. In the absence of extraordinary circumstances, courts rightly presume that executive officials will be responsive to judicial determinations that they are in violation of legal obligations without the need to reduce that determination to an enforceable judgment. *See Roe v. Wade*, 410 U.S. 113, 166 (1973); *Pit River Tribe v. U.S. Forest Serv.*, 615 F.3d 1069, 1082-83 (9th Cir. 2010); *N. Cheyenne Tribe v. Hodel*, 851 F.2d 1152, 1157 (9th Cir. 1988); *Cuesnongle v. Ramos*, 835 F.2d 1486, 1500 n.12 (1st Cir. 1987); *Jenkins v. Bowling*, 691 F.2d 1225, 1233-34 (7th Cir. 1982). Here, entering declaratory judgment against an executive official who already has been provided the court's authoritative decision in the form of a judicial opinion and who already will be subject to an order compelling him to act accordingly would be unnecessarily strong medicine. The court declines to prescribe it.

## IV. CONCLUSION

For the foregoing reasons, the State's motion for summary judgment (ECF No. 10) is **GRANTED IN PART** and **DENIED IN PART**.

Specifically, the State's request:

(1) for an order compelling the Secretary to remove from South Carolina one metric ton of defense plutonium is **GRANTED IN PART**, with a more specific description of the injunctive relief to be forthcoming in a separate order, and **DENIED IN PART**, to the extent the State requests that the order compel the Secretary to remove the defense plutonium immediately;

(2) for the court to enter an order retaining its jurisdiction in this matter is **GRANTED IN PART**, to the extent the court **ORDERS** that it retains jurisdiction in this matter until the forthcoming injunctive relief is entered, and **DENIED IN PART WITHOUT PREJUDICE**, in all other respects;

(3) for declaratory relief is **DENIED**; and

(4) for relief pursuant to its first and third cause of action, which have heretofore been dismissed, is **DENIED** as moot.

The parties are hereby **ORDERED** to meet and confer and prepare a joint written statement setting forth, if necessary, proposed deadlines, schedules, or other items in detail sufficient to form the basis of the injunctive order contemplated by this order. *See Hamburg*, 954 F. Supp. 2d at 972. The joint written statement shall be submitted on or before **April 21, 2017**, and, after reviewing the statement, the court will determine the need for further submissions or hearings.

**IT IS SO ORDERED**.

J. Michelle Childs

United States District Court Judge

March 20, 2017
Columbia, South Carolina