**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION**

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:16-00391-JMC |
| | ) | |
| UNITED STATES; | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| ENERGY; | ) | |
| | ) | |
| RICK PERRY, in his official capacity as | ) | |
| Secretary of Energy; | ) | |
| | ) | |
| NATIONAL NUCLEAR SECURITY | ) | |
| ADMINISTRATION; and | ) | |
| | ) | |
| LT. GENERAL FRANK G. KLOTZ, | ) | |
| in his official capacity as Administrator of the | ) | |
| National Nuclear Security Administration and | ) | |
| Undersecretary for Nuclear Security; | ) | |
| | ) | |
| Defendants. | ) | |

**STATE OF SOUTH CAROLINA'S RESPONSE TO
FEDERAL DEFENDANTS' STATEMENT CONCERNING REMEDY**

Pursuant to this Court's August 14, 2017 text order (ECF No. 102), the State of South Carolina (the "State") hereby submits the following response to the Federal Defendants' Statement Concerning Remedy (ECF No. 100).

## Discussion

**I.    The Federal Defendants' Statement ignores § 2566 and this Court's Prior Order.**

As this Court held in its March 20, 2017 Order & Opinion ("Order"), "the plain and unambiguous language of § 2566(c)(1) imposes on the Secretary a *non-discretionary* duty to

remove from South Carolina one metric ton of defense plutonium by January 1, 2016, if the MOX production objective was not achieved as of January 1, 2014." Order (ECF No. 86) at 30 (emphasis added). The Court further held that, because it is undisputed that the Federal Defendants did not achieve the MOX production objective by January 1, 2014, the Federal Defendants' failure to remove one metric ton of defense plutonium from South Carolina by the January 1, 2016 deadline constitutes unlawfully withheld agency action under the Administrative Procedures Act (APA). *Id.* Accordingly, this Court properly concluded "that it must enter an order compelling the Secretary, consistent with NEPA and other applicable laws, to remove one metric ton of defense plutonium for storage or disposal elsewhere" and requested that the parties submit a statement setting forth proposed deadlines, schedules, or other items in detail sufficient to form the basis of the injunctive order contemplated by this Court's Order. *Id.* at 30, 37.

On July 31, 2017, the State proposed that the Federal Defendants remove one metric ton of defense plutonium or defense plutonium materials from South Carolina for storage or disposal elsewhere within two years (*i.e.*, an enforceable two-year deadline), which is the exact period of time originally provided by Congress for removal in § 2566(c)(1). State's Proposal for Injunctive Relief (ECF No. 97) ("State's Proposal"). The Federal Defendants, however, have now submitted a proposal that flatly disregards the existence and requirements of § 2566(c)(1) as well as the rulings set forth in this Court's Order. Federal Defendants' Statement Concerning Remedy (ECF No. 100) ("Federal Defendants' Statement").

A.     The Federal Defendants' proposal that this Court simply allow them to proceed with their "projected" schedule is contrary to the law and is an affront to Congress, this Court, and the State.

The Federal Defendants' proposal of an "estimated" and "projected" schedule for removal, which the Federal Defendants note is subject to change, is wholly inconsistent with the

2

requirements of § 2566, Congressional intent, and this Court's request for a proposal with deadlines to incorporate into an injunctive order. *See Center for Food Safety v. Hamburg*, No. 4:12-cv-04529-PJH, Order Granting Injunctive Relief at 2 (N.D. Cal. 2013) ("[B]y setting deadlines . . . Congress indicated that the rule-making process should be closed-ended, rather than open-ended. Thus, the court finds defendant's 'target timeframes' to be an inadequate response to the request that the parties submit a proposal regarding deadlines that can form the basis of an injunction.").

As this Court has already found, Congress established an enforceable deadline of January 1, 2016, for the removal of defense plutonium, indicating that Congress intended removal to occur by a date certain. Accordingly, any injunctive order must also include an enforceable deadline for removal of defense plutonium to effectuate the plain language of the § 2566(c)(1) and Congressional intent. *Am. Lung Ass'n v. Browner*, 884 F. Supp. 345, 347-49 (D. Ariz. 1994) (rejecting agency's proposed schedule where it "wholly defeats the mandate by Congress' that certain deadlines be met"); *Sierra Club v. Ruckelshaus*, 602 F.Supp. 892, 899 (N.D. Cal. 1984) ("To accept EPA's proposal for further, indefinite, and virtually open-ended extension of the time for compliance . . . would be to, in effect, repeal the Congressional mandate."). As their Statement makes abundantly clear, the only way the Federal Defendants will even attempt to remove the defense plutonium consistent with the requirements of § 2566 is if this Court imposes an enforceable deadline.

The Federal Defendants do not offer any authority that supports their position that this Court should not impose an enforceable deadline for the removal of the defense plutonium. Rather, the single case they cite in alleged support for that proposition, *Environmental Defense Center v. Babbitt*, 73 F.3d 867 (9th Cir. 1995), is inapposite and, if anything, supports this Court's imposition

of an enforceable deadline. In *Babbitt*, the Ninth Circuit, agreeing with the district court, held that the Secretary of Interior violated a non-discretionary statutory duty, but, because *Congress* in a later-enacted appropriation act had expressly prohibited the Secretary of Interior from using any appropriated funds at that time to perform that specific duty, the Ninth Circuit remanded to the district court to specify the time for compliance after appropriated funds became available. *Id*. at 871-72. Left out of the Federal Defendants' description of this case is the fact that, on remand, and just 10 days after appropriations became available, the district court set a date certain for compliance and ordered the Secretary of Interior to comply with its statutory duty within 14 days. *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1193 (10th Cir. 1999) (discussing *Environmental Defense Center v. Babbitt,* No. CV–95–2867–R (D.C. Cal. 1996)).[1] Here, Congress did not prohibit prior to January 1, 2016, and has not now prohibited, the Federal Defendants from using their available appropriated funds to meet their § 2566(c)(1) obligation to remove defense plutonium from South Carolina, nor have the Federal Defendants argued that Congress has done so. The issue here is not a lack of resources, but rather the Federal Defendants' lack of effort and lack of desire to comply with, or even attempt to comply with, the specific mandate of § 2566(c)(1).

Moreover, any "inadequate resources" or "impossibility" defense by the Federal Defendants is premature at this stage. *See Forest Guardians*, 174 F.3d at 1192 ("In the face of

---

[1] Likewise, the district court in *Forest Guardians*, on remand and after being reversed for failing to compel the Secretary of Interior's unlawfully withheld action, set a date certain for compliance and ordered the Secretary of Interior to comply with its statutory duty at issue in that case within 30 days. *Forest Guardians v. Babbitt*, No. 1:97-cv-00453-JEC-DJS (D.N.M. 1999). Notably, the court required compliance within 30 days even though Congress had originally given, through the applicable statute, the Secretary of Interior two years to perform the statutory duty. *Forest Guardians,* 174 F.3d at 1181-82 (discussing applicable statutory deadline). Here, the State is seeking the Federal Defendants' compliance in the same period of time set by Congress in § 2566(c)(1)—an eminently reasonable request.

Congress' clear command, the Secretary's inadequate resource argument must fail with respect to the appropriate remedy. Section 706 [of the APA] requires us to compel the unlawfully withheld agency action."). These defenses are only available when there is a "present inability" to comply after a diligent and good faith attempt, not when there is just an alleged possibility of a future inability to comply prior to even attempting compliance. State's Proposal at 10-12; *Forest Guardians,* 174 F.3d at 1192 (rejecting federal agency's impossibility defense at remedy stage) (citing, amongst others, *United States v. Rylander,* 460 U.S. 752, 757 (1983) ("In a civil contempt proceeding . . . a defendant may assert a *present* inability to comply with the order in question.") (emphasis in original)); *see Robertson v. Jackson,* 972 F.2d 529, 535 (4th Cir. 1992) ("The potentiality that the Commissioner may, at some future time, be unable . . . to comply with federal requirements does not relieve him of his responsibility under federal law to attempt fully to ensure compliance. In the event that a contempt order should be issued against the Commissioner, the defense of impossibility of compliance would be available if he had done everything within his power to comply with the district court's order.").

In other words, if the Federal Defendants fail to meet the deadline imposed by this Court, then they may raise the impossibility defense if, and only if, they had made a diligent and good faith attempt to meet the deadline. *See Sierra Club v. Johnson,* 444 F. Supp. 2d 46, 53 (D.D.C. 2006) ("An agency thus bears a heavy burden to demonstrate the existence of an impossibility . . . [and] [w]hen an agency has failed to meet a mandatory statutory deadline, it is insufficient for the agency to demonstrate only that it has proceeded in good faith; it also must demonstrate that it has exercised 'utmost diligence' in its efforts to comply with the statute.") *see also Rylander*, 460 U.S. at 757 ("It is settled, however, that in raising [the impossibility] defense, the defendant has a burden

of production."); *Browner*, 884 F. Supp. at 347 ("[T]he agency carries a heavy burden to show that compliance with statutory mandated deadlines is impossible or infeasible.").

Accordingly, the Federal Defendants' proposal that this Court simply allow them to proceed on their "projected" and "estimated" timeline for removal of the defense plutonium from South Carolina without any enforceable deadlines should be rejected. Instead, this Court should impose the State's proposed enforceable deadline of two years, for which the Federal Defendants' failure to meet will subject them to contempt sanctions unless they can demonstrate that, notwithstanding a good faith and diligent effort to meet the deadline, compliance was impossible.[2] *Natural Resources Defense Council, Inc. v. Train*, 510 F.2d 692, 704-705 (D.C. Cir. 1974) ("Requiring the courts to rely on mere exhortation to move with expedition toward compliance within a 'reasonable time' would undercut their ability to spur reticent defendants to render the performance to which the plaintiff and public are entitled. The authority to set enforceable deadlines both of an ultimate and an intermediate nature is an appropriate procedure for exercise of the court's equity powers to vindicate the public interest.").

B.    The Federal Defendants' projected time period for removal of one metric ton of defense plutonium is entirely inconsistent with the requirements of § 2566.

As set forth in this Court's Order, pursuant to § 2566(c)(1), the Federal Defendants had two years from January 1, 2014, to remove one metric ton of defense plutonium from South Carolina. It is now over 1 ½ years past the January 1, 2016 deadline, which means the Federal Defendants have had over 3 ½ years to remove the defense plutonium. Yet, the Federal Defendants now seek an additional eight years (at least) to complete the task, and thus, are asking this Court

---

[2] The Federal Defendants' demonstrated attitude of impossibility is consistent with its lack of effort and desire to comply with the law, and presages for this Court that they have no intention of complying with any firm deadline this Court imposes.

for approval to do in approximately 12 years what Congress required them to do in two years. What is more, even that request for an expanded period of time is uncertain based on their reservation that the schedule may need to subsequently be revised. This request attempts to usurp the power of Congress and render § 2566(c)(1) meaningless and should be rejected by this Court. *See State of New York v. Gorsuch*, 554 F. Supp. 1060, 1063 (S.D.N.Y. 1983) ("[I]t is clear that Congress expressly considered and concluded that a specific timetable was necessary. . . . To ignore or modify the statutory timetable would be to flout the considered judgment of Congress."); *Sierra Club v. Thomas*, 658 F. Supp. 165, 174-175 (N.D. Cal. 1987) ("Congress's determination that the issuance of regulations should occur within a particular period of time thus limits the Court's discretion in fashioning an equitable remedy.").

What might be most staggering about the Federal Defendants' proposed time period for removal of one metric ton of defense plutonium is that, in making such a proposal, the Federal Defendants completely ignore the fact that § 2566(c)(2) requires them to remove *all* of the defense plutonium transferred to the State of South Carolina since 2002—approximately 10 metric tons— by January 1, 2022, which is almost four years before the time the Federal Defendants are now estimating for the removal of just one metric ton. Accordingly, the Federal Defendants are now admitting a clear lack of any effort on their part to comply with the future requirement of § 2566(c)(2) and are also asking this Court to endorse conduct that not only is inconsistent with § 2566(c)(1) but that would be in direct violation of § 2566(c)(2).[3]

---

[3] The State recognizes that, in theory, the Federal Defendants could process all the defense plutonium located at the SRS through the MOX facility prior to the January 1, 2022 deadline and, thus, would not have any obligation to remove under § 2566(c)(2). However, in reality, as the Federal Defendants previously have admitted, there is no chance that the MOX facility will be processing any defense plutonium by January 1, 2022, primarily because the Federal Defendants are actively trying to terminate the MOX program (and have been obstructing that project for the last several years).

The State, on the other hand, has proposed an enforceable deadline for removal of one metric ton of defense plutonium from South Carolina for storage or disposal elsewhere two years from the date of this Court's forthcoming injunctive order. As discussed in the State's Proposal, two years is the same time period established by Congress in § 2566(c)(1) for removal of one metric ton, and also is the same time period the Department of Energy (DOE) proposed for removal prior to the enactment of § 2566. Simply put, Congress has already considered "the work that is necessary to accomplish removal consistently with NEPA and other applicable laws," Order (ECF No. 86) at 33 (citing *Forest Guardians*), and has determined that two years is a sufficient amount time to complete this work. *See Sierra Club v. Johnson*, 444 F. Supp. 2d 46, 57 (D.D.C. 2006) ("The Court will not second-guess Congress's determination that it would be (or would have been) possible to regulate these sources within the time frame set by the statute.").

Relying solely on the vague estimates of one mid-level DOE employee unsupported by any formal analyses, the Federal Defendants now apparently challenge this Congressional determination.[4] Fed. Defs. Stmt. at 24-25. However, this is not the proper time or place for such a challenge. It is not the proper time because the Federal Defendants, as they admit, have not yet attempted to comply with the specific mandate of § 2566(c)(1). And it's not the proper place because, if the Federal Defendants truly believed § 2566(c)(1) imposed an unreasonable requirement (notwithstanding the fact that DOE initially proposed the two-year time period), then their recourse was with Congress alone. *See Pillsbury v. United Engineering Co.*, 342 U.S. 197,

---

[4] A little over a year ago, this same individual filed a sworn statement that removal could be done by 2022. (ECF No. 38-2). Now, it is 2025. And this individual was not supposed to be available until September to provide a statement in any event. This is a microcosm of how DOE and NNSA operate. It indicates that if the Court imposes a hard and fast deadline with consequences, only then will the Federal Defendants respond, even though, based on their long history of inaction, it is likely such response would even then consist only of excuses on why they are unable and unwilling to comply with the law.

200 (1952) ("[T]he power to change the statute is with Congress, not us."); *Natural Resources Defense Council, Inc. v. U.S. Envtl. Prot. Agency.*, 797 F.Supp. 194, 198 (E.D.N.Y. 1992) ("EPA's proper recourse is to persuade Congress to amend the statute, not to defy the statute and seek relief with this Court.").

Nevertheless, and notwithstanding that the two-year deadline was imposed by Congress and initially proposed by DOE, the Federal Defendants complain that the *State* is "requesting the impossible" and contend the "State ignores two important factors." Fed Defs Stmt. at 24-25.[5] First, there is no way to know at this point if meeting a two-year deadline is impossible (although Congress, at least, did not think it was) because the Federal Defendants have not yet attempted to

---

[5] The Federal Defendants also oddly criticize the State for not telling them *how* to accomplish removal in two years and even suggest that the State somehow conceded that a two-year deadline was unreasonable by mentioning at the hearing in this matter the Federal Defendants' initial five-year proposal—or at least what the Federal Defendants asserted at the time was a five-year proposal—for removal through a downblending process. Fed Defs Stmt. at 24-25. However, the two-year deadline was established by Congress, making it presumptively reasonable, and the State has consistently stated that it is not the State's place to tell the Federal Defendants *how* to comply with their statutory duties, which is exactly what the State was stating in the hearing excerpts cited by the Federal Defendants. Hr'g Tr. 57:21-24 ("[I]f they want me to tell them how to do it, I'm happy to tell them how to do it, but I don't necessarily think that's the State's place.").

The State also has acknowledged that the Federal Defendants are welcome to pursue the downblending process to meet their statutory obligations *if* it assists in removing the defense plutonium from South Carolina in the most expeditious way possible in compliance with § 2566. But the Federal Defendants cannot use the fact they want to use the downblending process as a shield to even attempting to comply with Congress' two-year deadline or formally analyze other options for accomplishing removal in two years. Nor did the State even remotely imply that two years was unreasonable. Instead, what the State acknowledged was that removal was "not as simple as just loading up a canister of plutonium on a back of a truck and driving it out … to New Mexico or Texas or wherever it's going to go." Hr'g Tr. at 14:13-15.

Interestingly, while the Federal Defendants addressed New Mexico as a potential destination for the defense plutonium, the Federal Defendants do not address the State's mention of Texas as a potential repository for all the defense plutonium. The Pantex facility in Texas is home to more defense plutonium than SRS and does not (currently) have all of the limitations that the New Mexico facilities have. It would seem that Pantex is a logical place for the defense plutonium to call home—an option that the Federal Defendants have remained silent on. *See* discussion *infra* Section II.

meet such a deadline.[6] Second, as demonstrated by the Federal Defendants' ability to submit their Statement by August 11 in accordance with this Court's August 1 text order (rather than the September 15 submission date they requested), *deadlines* often motivate people to do what they previously thought was impossible or would take longer to accomplish. *Train*, 510 F.2d at 712 ("Although these steps may be cumbersome, even awesome, they may well be within the agency's grasp, at least generally. The court's injunction should serve like adrenalin, to heighten the response and to stimulate the fullest use of resources. This may run the risk of overstimulating the organism, but palliative measures may be taken with regard to specific categories *if indicated at a later date*.") (emphasis added).

Moreover, the Federal Defendants' contention that the State has ignored "two important factors" is baseless and a blatant attempt to re-litigate the issue of whether § 2566(c)(1) imposed a non-discretionary duty upon the Federal Defendants to remove one metric ton of defense plutonium from South Carolina by January 1, 2016.  In an apparent attempt to show that Congress did not anticipate that the Federal Defendants would actually have to comply with § 2566(c)(1), the Federal Defendants state: "Congress passed § 2566 believing that the MOX facility would be operational prior to January 1, 2014, and certainly prior to January 1, 2016, and would thus be available to process defense plutonium for removal." Fed Defs Stmt. at 25. While Congress may have believed that the MOX facility would be operational prior to the deadlines in § 2566(c)(1), the entire reason § 2566(c)(1) was enacted was to protect South Carolina if the MOX facility was *not* operational by then. Thus, the existence of § 2566(c)(1), at the very least, indicates that Congress anticipated that the MOX facility might not be operational by the deadlines and that the

---

[6] Also, as discussed below, given that defense plutonium is stored in several locations across the United States and has been transferred on numerous occasions, their halfhearted claims of impossibility are not only premature, but unsupported. *See* discussion *infra* Section II.

Federal Defendants would have to remove the defense plutonium without the benefit of the MOX facility. *See* discussion *infra* Section IV (discussing reporting required by Congress regarding Federal Defendants' efforts to remove defense plutonium from South Carolina if MOX facility is not operational by certain deadlines).

The most glaring flaw in the Federal Defendants' contention, however, is that they completely "ignore" the fact that the current deadlines in § 2566(c)(1) were not the original deadlines in the statute when it was passed. As recognized by this Court in its March 14, 2017 Order (ECF No. 84) at 39-41, Congress has twice amended § 2566 to extend the deadlines in § 2566(c)(1) to account for delays in the MOX program. As the Court previously held, "the fact that subsection (c)'s deadlines were extended along with other deadlines that Defendants do not dispute are mandatory, supports the conclusion that subsection (c)'s deadlines are also mandatory." Order (ECF No. 84) at 39-41 (also holding, "The reasonableness of the amendments do not fare as well under Defendants' view. If . . . failure to meet the deadlines in subsection (c)(1) carries no consequences, why would lawmakers extend the time for accomplishing the tasks set forth in subsection (c)(1)?"). Regardless of whatever point the Federal Defendants were trying make with their contention, the fact that Congress did not amend § 2566(c)(1) another time to extend the current deadlines is evidence that Congress expected the Federal Defendants to meet the two-year removal deadline by January 1, 2016. At the very least, the prior amendments confirm that Congress is the proper authority to modify the time periods in the statute, not the Federal Defendants, or even this Court.

With respect to the second "important factor" the State allegedly ignored, the Federal Defendants remarkably contend that the inclusion of "consistent with [NEPA] and other applicable laws" in § 2566(c)(1) "mak[es] the two-year timeframe only relevant if a removal can be done

consistently with the applicable statutes and regulations." Fed. Defs. Stmt. at 25. The State certainly agrees that the inclusion of "consistent with [NEPA] and other applicable laws" evidences Congress' intent that any removal will be done safely and legally; however, this language does not render the two-year deadline (which Congress specifically stated "shall" be met) a nullity. If Congress so wished, it could have easily stated in § 2566 that, if the January 1, 2014 MOX production deadline was not met, the Federal Defendants "shall, consistent with NEPA and other applicable laws, remove one metric ton of defense plutonium from South Carolina *as expeditiously as possible*." Instead, Congress imposed a date certain for removal, which is evidence of a clear determination by Congress that removal could be accomplished by that date in compliance with NEPA and all other applicable laws and, at the very least, Congress' expectation that the Federal Defendants would do everything in their power to attempt to remove the defense plutonium by the deadline in compliance with NEPA and all other applicable laws.[7]

Accordingly, this Court should reject the Federal Defendants' "projected" eight-year schedule for processing and removing one metric ton of defense plutonium from South Carolina, which in and of itself would require this Court to allow the Federal Defendants to violate another provision of the law (§ 2566(c)(2)). To the contrary, this Court should compel the "unlawfully withheld action" and require the Federal Defendants to remove one metric ton of defense plutonium from South Carolina for storage or disposal elsewhere within two years of this Court's forthcoming injunctive order in accordance with Congressional mandate.

---

[7] At bottom, the Federal Defendants' discussion of the procedural requirements associated with NEPA attempt to confuse the principal issue before the Court and to excuse their inaction to comply with § 2566(c). *See* discussion *infra* Section II. Rather than ensure that the environmental impacts of its compliance with the § 2566(c)(1) requirement that one metric ton of defense plutonium is removed from South Carolina are appropriately considered, which is the purpose of the environmental exercises under NEPA, the Federal Defendants instead use NEPA as shield to defend their unlawful inaction under § 2566.

C.    The Federal Defendants' discretionary agency goals do not trump Congressional mandate.

Another major flaw in the Federal Defendants' proposal is that it is entirely based on what they want to do, and not what Congress, through § 2566, directed them to do. The "estimate" they provide to this Court is for them to *process* (*i.e.*, downblend) and *then* remove one metric ton of defense plutonium. Indeed, the Federal Defendants devote the majority of their Statement to discussing the downblending process, as they previously did in opposition to the State's motion for summary judgment on this issue. It also is clear from their Statement and the accompanying Declaration of Henry Allen Gunter (the "Gunter Declaration") that the Federal Defendants' focus during the four months since this Court's Order was only on bolstering their argument for downblending and that they did not seriously analyze any other alternatives for removal. *See* discussion *infra* Section II (discussing lack of additional information included in Gunter Declaration).

However, as the Federal Defendants admit, "the downblending process is nowhere mentioned or anticipated by § 2566," Fed Defs' Stmt. at 30, and, as they acknowledge, was not developed or implemented to comply with § 2566 because the Federal Defendants apparently did not realize § 2566 imposed any deadline or requirement to remove defense plutonium from South Carolina until this Court's March 20, 2017 Order.[8] *Id*. at 14-15. As set forth in the statute and as

---

[8] The Federal Defendants take umbrage with the State's assertion that the Federal Defendants have not attempted to comply with the specific mandate of § 2566(c)(1), calling it "deeply disingenuous." Fed Defs' Stmt. at 14. However, one sentence later in the Federal Defendants' Statement, they acknowledge that they did not attempt to comply with the specific requirement of § 2566(c)(1) because, they claim, they did not believe it actually imposed a requirement on them until this Court told them it did. *Id*. Whether the failure to comply was the result of bad faith, as the State believes, or the result of the Federal Defendants' inability to comprehend the plain terms of § 2566(c)(1), as the Federal Defendants' contend, does not change the undisputed fact that the Federal Defendants did not attempt (and have yet to attempt) to comply

this Court previously held, § 2566 requires the expeditious *removal* of defense plutonium from South Carolina for "*storage* or disposal *elsewhere*" should the MOX Facility not be operational. While the downblending process may help the Federal Defendants comply with the mandate of § 2566(c)(1) and this Court's forthcoming injunctive order, they cannot add this additional step to what Congress has required and then use the difficulties and delays[9] they are having with the downblending process as an excuse for not removing the defense plutonium from South Carolina in compliance with § 2566.

The State understands that the Federal Defendants *want* to move forward with downblending (since it is actually their proposed replacement for the MOX program that they are currently trying to kill) and that they have already started moving in that direction. And the State is not proposing that they should stop downblending in general should Congress allow them to proceed. But nowhere has Congress mandated that they must downblend—not in § 2566 or in any other statute. Accordingly, downblending is, at most, only an agency (*i.e.*, discretionary) goal, and thus, it cannot be used as a replacement for meeting their non-discretionary statutory duty to remove one metric ton of defense plutonium from South Carolina for storage or disposal elsewhere within the time periods established by Congress.[10]

---

with the specific mandate of § 2566(c)(1) to remove one metric ton of plutonium from South Carolina for storage or disposal elsewhere by January 1, 2016.

[9] *See* Fed Defs' Stmt. Ex. 1 (ECF No. 100-1), Gunter Declaration at ¶5 ("In my previous declaration of June 9, 2016, I stated that the first metric ton of defense plutonium could be down blended in approximately seven years. There have been several changes and delays that have resulted in a two year change in the projected date for removal of the 1 MT as described further in this declaration."); Fed Defs' Stmt. at 18 ("It is important for this Court to recognize and understand that this timeline is reasonable because of several important operational limitations on the rate at which DOE is able to *process* defense plutonium using *down-blending*. . . . Mr. Gunter's estimate in his declaration, and estimated timetable for *processing* and removal . . . take all of these constraints into account.") (emphasis added).

[10] It also is illegal for the Federal Defendants to allocate appropriated funds to the discretionary downblending program rather than to complying with their mandatory § 2566

The Federal Defendants' Statement makes clear that downblending was not developed or initiated to comply with § 2566(c)(1) and that downblending likely cannot assist them in removing defense plutonium within two years, as required by Congress. Accordingly, the Federal Defendants must now align their agency goals with Congress' mandate, and this Court should require them to do so by enjoining them to remove one metric ton of defense plutonium from South Carolina for storage or disposal elsewhere within two years of this Court's forthcoming injunctive order. *See Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 193 (D.C. Cir. 2016) ("Federal agencies must obey the law, and congressionally imposed mandates and prohibitions trump discretionary decisions."); *Johnson*, 444 F. Supp. 2d at 56 ("[Agency] deference is inappropriate where Congress has unambiguously expressed its intent that [action be taken] by a date certain and the agency manifestly has failed to fulfill this statutory obligation.") (citing *Linemaster Switch Corp. v. EPA*, 938 F.2d 1299, 1303 (D.C. Cir. 1991) ("[G]iven the clarity of Congress' instruction that [the action be taken] no later than October 17, 1988, it would indeed be odd to conclude that Congress implicitly entrusted a laggard agency with the authority to devise a remedy for its own untimeliness.")); *Gorsuch*, 554 F. Supp. at 1064 ("If Congress wanted to leave the Administrator with the flexibility to implement regulation based upon her own judgment of the most desirable time schedule, it obviously knew how to do so. Clearly, however, it did not.").

Enjoining the Federal Defendants to remove the defense plutonium within two years would give them the opportunity to comply with the specific mandate of § 2566(c)(1) in the time that

---

obligations. *Principles of Federal Appropriations Law* 2-37 (4th ed. 2016) (*GAO Red Book*) (discussing allocation of appropriations and stating: "Mandatory programs take precedence over discretionary ones. . . . A mandatory program is simply one that Congress directs."). In fact, Federal Defendants' § 2566 obligations should receive funding priority over many of the Federal Defendants' other programs. *Id*. ("Within a group of mandatory programs, more specific requirements should be funded first, such as those with *specific time schedules*, with remaining funds then applied to the more general requirements.") (emphasis added).

Congress determined was sufficient for them to remove the defense plutonium consistently with NEPA and all other applicable laws. Frankly, the State believes that removal should be accomplished sooner and that there should be harsher consequences for the Federal Defendants' violation of law,[11] but the State has attempted to develop a reasonable proposal consistent with § 2566(c)(1). And the State believes that an injunction requiring the Federal Defendants to do exactly what Congress told them to do in the same amount of time Congress gave them to do it is the most reasonable and appropriate remedy.

**II.    To the extent it is relevant at all, the Gunter Declaration does not provide any additional information to what this Court already held was insufficient for this Court to craft an injunctive order and the information it does provide is unsupported.**

As discussed above, Congress determined that two years was a sufficient amount of time for the Federal Defendants to complete the work necessary to remove one metric ton of defense plutonium from South Carolina for storage or disposal elsewhere consistently with NEPA and other applicable laws. The Federal Defendants challenge this determination on the sole basis that it contradicts the unsupported opinions of DOE employee, Mr. Henry Allen Gunter. However, the information Mr. Gunter provides regarding the alleged difficulties associated with removing the defense plutonium by any method other than downblending, which the Federal Defendants use as their only support for their argument against compliance with the two-year deadline, is vague and unsupported. It also is the same information the Federal Defendants previously provided to this Court that this Court held was insufficient for it to craft an injunctive order. Order (ECF No. 86) at 33 ("Although Defendants have offered evidence regarding the difficulty of removal and have

---

[11] This is especially so because the Federal Defendants' proposal evidences an indifference towards and lack of recognition of the fact that they have violated, and are currently violating, the law to the detriment of the State of South Carolina. If this Court does not impose an injunction with consequences for failing to meet, it is evident that the Federal Defendants will continue to disregard § 2566 and their obligations to the State.

made vague assertions as to timeframes for accomplishing some of the prerequisites for removal to be completed, neither Defendants nor the State have provided sufficient evidence or argument upon which the court might properly craft an injunctive order.").

Tellingly, Mr. Gunter's declaration does not provide any specific or detailed information regarding why removal of one metric ton of the defense plutonium cannot be accomplished within the time period for removal established by Congress.[12] Instead, Mr. Gunter merely discusses what "likely" or "could" be required if they had to remove the defense plutonium by a process other than downblending, and he offers wide ranges of time for completing certain intermediate tasks (*e.g.*, "could take 2 to 3 years to complete," "would take 6-18 months"), and ultimately opines that the Federal Defendants should be left to do whatever they want, regardless of the law.[13]

In addition to being vague, the information Mr. Gunter provides is largely unsupported by facts or the law. For example, the Federal Defendants rely heavily on Mr. Gunter's opinion[14] that a NEPA analysis "*could* take 2 to 3 years to complete" to counter the State's request that this Court require compliance in the same period of time provided by Congress. Gunter Declaration (ECF No. 100-1) at ¶26 (emphasis added). As the only support for this estimated time period, Mr. Gunter nebulously states, "[t]he NEPA process would *likely* require scoping meetings at potential sites, developing the analysis and drafting the document, providing the draft document for public

---

[12] While Mr. Gunter provides detailed information about the downblending process and the significant difficulties and delays the Federal Defendants are experiencing and the obstacles they are facing with that process, that information is irrelevant to the question before this Court for the reasons discussed above.

[13] Of course, it is not surprising that Mr. Gunter cannot provide any specifics because, as he and the Federal Defendants admit, they have yet to attempt, or even formally analyze, any other method of removal to comply with § 2566(c)(1).

[14] It is unclear what, if any, experience Mr. Gunter has in conducting NEPA analyses, and his declaration does not indicate that he has any.

comment, addressing the comments, revising the document, and publishing the final document and issuing the decision." *Id.* (emphasis added). Certainly, there are steps that need to be taken to comply with NEPA, but the actions required by NEPA are procedural, not substantive, and the timeline for completing those steps in this context is exclusively within the control of the Federal Defendants. *See Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 558, (1978) ("[The NEPA] mandate to the agencies is essentially procedural."); *Hodges v. Abraham*, 300 F.3d 432, 438 (4th Cir. 2002) ("Once the proper NEPA procedures are completed, i.e., the adverse environmental effects of the proposed action are adequately identified and evaluated, a federal agency is entitled to decide that other values outweigh the environmental costs.") (internal citations and quotation marks omitted).

Additionally, Mr. Gunter appears to assume—without any support or explanation—that that the Federal Defendants' preliminary analysis of the proposed removal of one metric ton of South Carolina for storage or disposal elsewhere would result in them finding that the environmental effects would be "significant," thereby requiring the preparation of an Environmental Impact Statement (EIS) rather than the issuance of a Finding of No Significant Impact (FONSI).[15]   However, courts have evaluated similar circumstances in the past within the

---

[15] As this Court is aware, NEPA neither requires the preparation of an EIS nor dictates the length or scope of an agency's review. Instead, as described generally by the Supreme Court in *Department of Transportation v. Public Citizen*, 541 U.S. 752, 757–58 (2004), the Council of Environmental Quality (CEQ) established by NEPA with authority to issue regulations interpreting it, has promulgated regulations to guide federal agencies in the NEPA process. *See* 40 CFR § 1500.3. The CEQ regulations expressly allow an agency to prepare a more limited document, an Environmental Assessment (EA), if the agency's proposed action neither is categorically excluded from the requirement to produce an EIS nor would clearly require the production of an EIS. *Id.* (citing 40 C.F.R. §§ 1501.4(a)-(b)). In contrast to an EIS, an EA is a "concise public document" that "[b]riefly provide[s] sufficient evidence and analysis for determining whether to prepare an [EIS]." *Id.* (citing 40 C.F.R. § 1508.9(a)). If, pursuant to the EA, an agency determines that an EIS is not required under applicable CEQ regulations, it must

context of an agency's obligation to comply with a non-discretionary action and found that an agency's assertion of a requirement that it prepare an EIS runs counter to the rule of reason courts apply to NEPA. *See*, *e.g.*, *Pub. Citizen*, 541 U.S. at 769 ("It would not, therefore, satisfy NEPA's 'rule of reason' to require an agency to prepare a full EIS due to the environmental impact of an action it could not refuse to perform.").

Nevertheless, the Federal Defendants contend that the assumption that an EIS would be required is supported by the fact that "previous actions involving large quantities of plutonium" resulted in a "significant" environmental effects finding.[16] Fed. Defs. Stmt. at 16. However, contrary to the Federal Defendants' suggestion, the NEPA review conducted with respect the processing and permanent disposal of 13.1 metric tons of defense plutonium is not a proper standard to base an estimate for the time it would take to accomplish a NEPA review for the removal of one metric ton of defense plutonium from South Carolina "for storage or disposal elsewhere." *Cf. Grand Canyon Trust v. Fed. Aviation Admin.*, 290 F.3d 339, 342 (D.C. Cir. 2002) ("[T]he court owes no deference to the [agency's] interpretation of NEPA . . . because NEPA is addressed to all federal agencies and Congress did not entrust administration of NEPA to [the Department of Energy] alone."). And the Federal Defendants provide no explanation why it would be other than the fact that both involve plutonium or why their NEPA assessment in 2015 evaluating the proposed action to transport almost the exact amount of plutonium (900 kg vs. one metric ton (1000 kg)) "in a dozen shipments" from foreign countries to a United States port,

---

issue a FONSI, which briefly presents the reasons why the proposed agency action will not have a significant impact on the human environment. *Id.* (citing 40 C.F.R. §§ 1501.4(e), 1508.13).

[16] The Federal Defendants acknowledge that it is presently unclear whether any preliminary NEPA analysis would result in a finding of "significant" environmental effects. Fed. Defs. Stmt. at 16 ("*If* the agency determines that the environmental effects are likely to be significant…") (emphasis added).

transfer across the United States' public roadways, and place into a storage facility, which resulted

in a FONSI, would not be a better comparison. *See* Ex. A, *FONSI for the Environmental*

*Assessment for Gap Material Plutonium – Transport, Receipt, and Processing*, dated Dec. 28,

2015; State's Proposal at 6 n.5. Notably, in issuing that FONSI, the Federal Defendants concluded:

> The potential environmental impact associated with the *transport, storage and*
> *processing of the gap material plutonium entail minor impacts and low risk, and*
> *do not constitute a major federal action significantly affecting the quality of the*
> *human environment* within the context of the National Environmental Policy Act
> (NEPA; 42 U.S.C. 4321), the Council on Environmental Quality NEPA regulations
> (40 CFR 1500-1508), and the Department of Energy NEPA implementing
> regulations (10 CFC 1021).

Ex. A at 5 (emphasis added).

The Federal Defendants also disregard that defense plutonium has been transported across

the country on numerous occasions and that defense plutonium currently is stored in several

locations in the United States other than SRS. In other words, this would not be the first time the

transfer of defense plutonium or the storage of defense plutonium at a location other than SRS has

been examined or done. In fact, the NNSA report attached as Exhibit B details the multiple

locations where plutonium is stored in the United States and also discusses numerous transfers of

plutonium and nuclear waste between the sites. Ex. B, *The United States Plutonium Balance, 1944-*

*2009*, NNSA, dated June 2012; *see also* Gunter Declaration (ECF No. 100) at ¶16 ("Since 2002,

SRS has also shipped additional defense plutonium (approximately 10 kgs) to other sites outside

of South Carolina for use in DOE programs, thereby removing such plutonium from South

Carolina."); *About Pantex*, http://www.pantex.com/about/Pages/default.aspx (last visited August

21, 2017) (discussing DOE's Pantex facility in Texas and stating, "Pantex has safely dismantled

thousands of weapons retired from the stockpile by the military and placed the resulting plutonium

pits in interim storage.").

It remains to be seen if the Federal Defendants would diligently and in good faith conduct a NEPA review of the removal of one metric ton of defense plutonium even if ordered by this Court to do so.[17] Nevertheless, the Federal Defendants have presented no evidence that, if the Federal Defendants did act in good faith, such a review would not result in a FONSI (which would be consistent with NEPA law and prior DOE and NNSA actions). Even if preparation of an EIS would be required, this Court's imposition of an enforceable deadline would serve as much-needed motivation to the Federal Defendants to prepare the EIS and complete all other tasks in time to remove the defense plutonium by the deadline, which they certainly could do if they tried. At bottom, the Federal Defendants cannot now say, nor can this Court even find, that completing any NEPA review or anything else that is required to remove one metric ton of defense plutonium from South Carolina is impossible or infeasible because the Federal Defendants, as they admit, have not yet attempted to comply with the specific mandate of § 2566(c)(1). *Johnson*, 444 F.Supp.2d at 53 ("An agency thus bears a heavy burden to demonstrate the existence of an impossibility . . . [and] [w]hen an agency has failed to meet a mandatory statutory deadline, it is insufficient for the agency

---

[17] They have not diligently and in good faith attempted to timely construct the MOX facility, which is what triggered the removal requirement of § 2566(c)(1) that they are currently violating. This is the reason that it is entirely proper for this Court to order them to continue constructing the MOX facility until they are in compliance with § 2566(c)(1) or Congress directs them to discontinue construction. State's Proposal at 15-16. While advocating throughout their Statement that equity allows this Court to ignore the plain requirements of § 2566(c)(1) in fashioning the appropriate remedy, which it obviously does not, the Federal Defendants contend that this Court cannot consider equity in fashioning a remedy that addresses the fact that the State will continue to be harmed during the period it takes for the Federal Defendants to remove the one metric ton of defense plutonium that currently is in South Carolina illegally. However, this Court plainly can impose a remedy that provides complete relief to the State for the Federal Defendants' continuing violation of the law. *Id.*; *E. Tennessee Nat. Gas Co. v. Sage*, 361 F.3d 808, 823 (4th Cir. 2004) ("[W]hen a substantive right exists, an equitable remedy may be fashioned to give effect to that right if the prescribed legal remedies are inadequate."); *Am. Brake Shoe & Foundry Co. v. New York Rys. Co.*, 293 F. 633, 637–38 (2d Cir. 1923) ("[O]ne meaning of the phrase concerning equity following the law is that equity devises the means for enforcing a lawful result when legal procedure is inadequate.").

to demonstrate only that it has proceeded in good faith; it also must demonstrate that it has exercised 'utmost diligence' in its efforts to comply with the statute."); *Gorsuch,* 554 F.Supp. at 1065 n. 4 ("If the administrator could possibly have complied with the statutory mandate, but did not because of competing concerns or other decisions on his part, then he is not acting in 'good faith.').

### III.     The State is not seeking contempt sanctions at this time.

The Federal Defendants waste several pages of their Statement arguing against a position the State has not asserted. Although the Federal Defendants are currently violating the law, the State has not requested that this Court impose sanctions at this time. The State only indicated its intention to seek what it believes is the most obvious and appropriate remedy should the Federal Defendants violate this Court's forthcoming injunctive order without an adequate defense for their noncompliance.[18] State's Proposal at 3 ("…the State *may* seek, and this Court *may* grant…"), 12 n.11 ("…the State *will* seek") (emphasis added). And the State agrees any contempt sanctions should not be imposed until after the Federal Defendants' attempted compliance. Of course, this necessarily means that any defenses to contempt sanctions, like the "impossibility" defenses currently being raised by the Federal Defendants, also are premature at this stage of the litigation and should not be raised until after attempted compliance "when the Court will be in a better

---

[18] The State notes, however, that the Federal Defendants new argument that the $1 million dollar per day payments would not be "remedial and compensatory" or "coercive" is directly at odds with their prior position before this Court. *See* Fed. Defs. Reply in Supp. of Mot. to Dismiss (ECF No. 33) at 9 n.3 ("As intended by Congress, the assistance payment not only compensates South Carolina, it also provides a strong incentive for the Department to remove plutonium—an 'ace in the hole,' as South Carolina's congressman put it."). The Federal Defendants' confusion about § 2566(d) also is irrelevant and misplaced—the State has filed an action in the Court of Federal Claims seeking those payments for 2017.

position to consider all relevant facts in assessing the appropriate sanctions." Fed. Defs. Stmt. at 26.

But in light of the Federal Defendants' bad attitude and lackadaisical approach to statutory compliance, unless the Federal Defendants understand that there may be significant consequences, they will continue with arrogant nonchalance towards their obligations. And their Statement to the Court reflects that attitude, in that the Federal Defendants are already offering excuses on why they cannot (and will not) comply with any mandatory deadline this Court sets.

**IV.    This Court's retention of jurisdiction and progress reports are appropriate.**

As set forth in the State's Proposal, there is no compelling reason why this Court should not retain jurisdiction or require minimal progress reporting by the Federal Defendants. This Court's retention of jurisdiction would impose no burden on the Federal Defendants, but would provide the oversight necessary to ensure that the Federal Defendants make a good faith and diligent effort to comply with the injunctive order. Given their complete lack of effort to comply with § 2566(c)(1), this certainly is warranted and appropriate.

Likewise, requiring the quarterly progress reports the State has requested would require minimal effort on the Federal Defendants' part because the State has only requested that the Federal Defendants provide a limited amount of information in those reports. These progress reports also would provide this Court the information it needs should a contempt hearing ever be necessary. *See* Fed. Defs. Stmt. at 29 ("Contempt of court is an inherently fact-intensive determination. In order to make that determination fairly, this Court must consider the totality of the circumstances surrounding any failure to comply."). Unlike in the *Hamburg* case involving the FDA and the promulgation of regulations, the "utility" of the information provided by the Federal Defendants in the requested progress reports, especially the information regarding any

impediments to compliance and the steps they are taking to address those impediments, would be great in this case considering that the Federal Defendants have already primed their "impossibility" defense before even attempting compliance.

The fact that the Federal Defendants oppose providing the reports they have already submitted to Congress pursuant to § 2566 is possibly the most compelling reason why this Court must retain jurisdiction and require production of those reports and the regular progress reporting. There is absolutely no reason why the Federal Defendants should not produce those reports, or why they would not want to produce those reports. The Federal Defendants argue the reports would not be relevant to the issue, *see* Fed. Defs. Stmt. at 31 ("…the information required to be in those reports is primarily focused on updating Congress on the progress of the MOX project"), but that argument is disingenuous as § 2566(b)(6) specifically provides:

> (A) Upon making a determination under paragraph (4) [that there is a substantial and material risk that the MOX production objective will not be achieved by 2012] or (5) [that the MOX production objective has not been achieved after January 1, 2014], the Secretary shall submit to Congress *a report on the options for removing* from the State of South Carolina an amount of defense plutonium or defense plutonium materials equal to the amount of defense plutonium or defense plutonium materials transferred to the State of South Carolina after April 15, 2002.

> (B) Each report under subparagraph (A) shall include an analysis of each option set forth in the report, including the cost and schedule for implementation of such option, and *any requirements under the National Environmental Policy Act* of 1969 (42 U.S.C. 4321 et seq.) relating to consideration or selection of such option.

> (C) Upon submittal of a report under subparagraph (A), the Secretary *shall commence any analysis that may be required under the National Environmental Policy Act* of 1969 in order to select among the options set forth in the report.

50 U.S.C.A. § 2566(b)(6) (emphasis added). The Federal Defendants have previously asserted that they have made the "determinations" that would have triggered these reports. Assuming the Federal Defendants complied with this reporting requirement and provided these reports to

Congress, then there should be no reason for the Federal Defendants not to provide this obviously relevant information to the State and this Court. The fact that they do not want to is telling.[19]

## Conclusion

For the reasons stated above, and in the State's Proposal, this Court should reject the Federal Defendants' request to continue to disregard § 2566 and defy Congressional mandate, and should enter an injunctive order imposing an enforceable two-year deadline for the Federal Defendants to remove one metric ton of defense plutonium from South Carolina for storage or disposal elsewhere. This Court should also retain jurisdiction and require the submission of progress reports as well as require the Federal Defendants to follow Congress' direction with respect to the MOX facility.

[*Signature Page Follows*]

---

[19] One of the reasons for continued jurisdiction and submission of reports is to try and keep the Federal Defendants honest and, frankly, help them comply with an order of this Court. Otherwise, and in light of the Federal Defendants' approach to this matter generally (and especially during the four months of "negotiations" pursuant to this Court's order), in two years when the deadline for compliance approaches, the Federal Defendants will again expend all their energy and resources on why something cannot be done instead of actually doing it.

Respectfully submitted,

Alan Wilson, Fed. Bar No. 10457
Robert D. Cook, Fed. Bar No. 285
T. Parkin Hunter, Fed. Bar No. 2018
**ATTORNEY GENERAL FOR**
**THE STATE OF SOUTH CAROLINA**
Post Office Box 11549
Columbia, South Carolina 29211-1549
awilson@scag.gov
bcook@scag.gov
phunter@scag.gov
(803) 734-3970

s/John W. Roberts
Randolph R. Lowell, Fed. Bar No. 9203
Benjamin P. Mustian, Fed. Bar No. 9615
John W. Roberts, Fed. Bar No. 11640
**WILLOUGHBY & HOEFER, P.A.**
Post Office Box 8416
Columbia, South Carolina 29202-8416
rlowell@willoughbyhoefer.com
bmustian@willoughbyhoefer.com
jroberts@willoughbyhoefer.com
(803) 252-3300

William H. Davidson, II, Fed. Bar No. 425
Kenneth P. Woodington, Fed. Bar No. 4741
**DAVIDSON & LINDEMANN, P.A.**
1611 Devonshire Drive, 2nd Floor
Post Office Box 8568
Columbia, South Carolina 29202-8568
wdavidson@dml-law.com
kwoodington@dml-law.com
(803) 806-8222

*Attorneys for the State of South Carolina*

August 21, 2017
Columbia, South Carolina