**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION**

| | | |
|---|---|---|
| State of South Carolina, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 1:16-cv-00391-JMC |
| | ) | |
| United States; | ) | |
| | ) | |
| United States Department of Energy; | ) | |
| | ) | |
| Rick Perry, *in his official capacity as* | ) | |
| *Secretary of Energy*; | ) | |
| | ) | **ORDER OF INJUNCTIVE RELIEF** |
| National Nuclear Security Administration; | ) | |
| *and* | ) | |
| | ) | |
| Lt. General Frank G. Klotz, *in his official* | ) | |
| *capacity as Administrator of the National* | ) | |
| *Nuclear Security Administration and* | ) | |
| *Undersecretary for Nuclear Security*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

By a March 20, 2017 order, the court granted in part Plaintiff the State of South Carolina's

(the "State") Motion for Summary Judgment in this matter. (ECF No. 86.) Specifically, the court

granted the State's requested relief for an injunctive order compelling Defendant Secretary of

Energy (the "Secretary") to remove from South Carolina one metric ton of defense plutonium

pursuant to 50 U.S.C. § 2566(c)(1) and 5 U.S.C. § 706(1). (*Id.* at 37.) Section 2566(c)(1) states:

> If the MOX production objective[1] is not achieved as of January 1, 2014, the
> Secretary shall, consistent with the National Environmental Policy Act of 1969

---

[1] MOX stands for mixed oxide. (ECF No. 1 at 1.) Section 2566(h) defines the "MOX production objective" as meaning

1

[("NEPA")] and other applicable laws, remove from the State of South Carolina, for storage or disposal elsewhere not later than January 1, 2016, not less than 1 metric ton of defense plutonium or defense plutonium materials[.]

50 U.S.C. § 2566(c)(1). The court determined that (1) there was no dispute that the MOX production objective had not been achieved by January 1, 2014, or any time thereafter; (2) there was no dispute that the Secretary had not removed from South Carolina for storage or disposition elsewhere the one metric ton of defense plutonium;[2] and (3), under § 706(1), the State was entitled to a court order compelling the removal of the one metric ton of defense plutonium. (ECF No. 86.)

However, the court denied the State's Motion for Summary Judgment to the extent the State requested that the injunctive order compel the Secretary to remove the defense plutonium *immediately*. (*See id.*) Instead, the court ordered the parties "to meet and confer and prepare a joint written statement setting forth, if necessary, proposed deadlines, schedules, or other items in detail sufficient to form the basis of the injunctive order contemplated by [the March 20, 2017 order]." (*Id.*) The court later permitted the parties to file separate written statements regarding the injunctive order if they could not reach an agreement. (*See* ECF Nos. 89, 90, 98.) Because the parties could not reach an agreement, they filed their separate statements (*see* ECF Nos. 97, 100) and respective responses to the statements (*see* ECF Nos. 103, 104). After reviewing over one hundred pages of arguments and exhibits, the court notes that Defendant United States Department

---

production at the MOX facility of mixed-oxide fuel from defense plutonium and defense plutonium materials at an average rate equivalent to not less than one metric ton of mixed-oxide fuel per year. The average rate shall be determined by measuring production at the MOX facility from the date the facility is declared operational to the Nuclear Regulatory Commission through the date of assessment.

50 U.S.C. § 2566(h). The term 'MOX facility' means the mixed-oxide fuel fabrication facility at the SRS. (ECF No. 1 at 2.)

[2] Hereinafter, all references to defense plutonium include "defense plutonium materials," as stated in the statute. *See* 50 U.S.C. § 2566(c)(1).

of Energy ("DOE") has attempted to reargue, in the form of voluminous records, a position that rids them of responsibility for removal of the defense plutonium, despite the court's explicit findings to the contrary. Further, the court observes that the DOE's briefing is non-responsive to the court's order to present detail sufficient to form the basis of the injunctive order.

## II.    DISCUSSION

### A. Requiring Removal of One Metric Ton of Defense Plutonium From the State Within Two Years

The State argues that the court should impose a deadline for removal as opposed to an open-ended, estimated target date or range for removal, as Defendants entreat the court to enforce. (*See* ECF No. 97 at 9-12; ECF No. 100 at 34.) The court's previous orders rejected the notion that § 2566(c)(1)'s date for removal was a goal. (*See* ECF No. 84 at 34-41.) Lawmakers, after much deliberation and consistent with the NEPA and other applicable laws, concluded that two years was sufficient time for the Secretary to complete the removal of one metric ton of defense plutonium from South Carolina. *See* 50 U.S.C. § 2566(c). When Congress imposes a deadline for an agency to take action, a court reviewing the agency's action (or inaction) under the Administrative Procedure Act should craft an injunction that includes a deadline for taking the unlawfully withheld action. *See Ctr. for Food Safety v. Hamburg* (*Hamburg II*), No. C 12-4529 PJH, 2013 WL 12182144, at *1 (N.D. Cal. June 21, 2013); *Am. Lung Ass'n v. Browner*, 884 F. Supp. 345, 347-49 (D. Ariz. 1994); *Sierra Club v. Ruckelshaus*, 602 F. Supp. 892, 899 (N.D. Cal. 1984). In fact, the court has limited discretion to impose a more lenient timeframe than what was set by the statute. *Linemaster Switch Corp. v. U.S. Envtl. Prot. Agency*, 938 F.2d 1299, 1303 (D.C. Cir. 1991); *Sierra Club v. Johnson*, 444 F. Supp. 2d 46, 57 (D.D.C. 2006); *Sierra Club v. Thomas*, 658 F. Supp. 165, 174-75 (N.D. Cal. 1987); *New York v. Gorsuch*, 554 F. Supp. 1060, 1063 (S.D.N.Y. 1983).

If an agency is concerned that a deadline does not contemplate the legal and practical difficulties inherent in complying with the injunction, the solution is not to, *ex ante*, craft an injunction without a meaningful deadline. *See Robertson v. Jackson*, 972 F.2d 529, 535 (4th Cir. 1992); *Nat. Res. Def. Council, Inc. v. Train*, 510 F.2d 692, 713 (D.C. Cir. 1974); *Browner*, 884 F. Supp. at 347. Rather, an agency, *ex post*, should demonstrate that compliance with the deadline was impossible after attempting to comply with all due diligence, either in a proceeding to extend the deadline or in offering a defense of impossibility in civil contempt proceedings. *Id*. Thus, the court refutes Defendants' argument that the court should only impose a target or estimated date for removal.

Much of Defendants' arguments are premised on their view that removal should be accomplished by first "downblending"[3] the defense plutonium at Savannah River Site ("SRS") before transferring it elsewhere. (ECF No. 100 at 3.) Relying on the Gunter Declaration[4] attached to their statement, Defendants explain that navigating the legal and practical complexities of downblending as their preferred disposal policy for defense plutonium took nine years. (*Id*. at 8.) Further, Defendants assert numerous limitations on the rate at which downblending can occur (*e.g.*, currently having only one glovebox;[5] having an insufficient number of workers, who require intensive training and who can only do the work for limited segments of exposure times; having to obtain a large number of transportation equipment which must first be approved for use

---

[3] "Downblending" is a process in which defense ("weapons usable") plutonium is transformed into non-defense (not "weapons usable") plutonium. (ECF No. 100 at 6 n.6); *see* 50 U.S.C. § 2566(h)(3).

[4] Henry Allen Gunter is employed by the DOE at the SRS in Aiken, South Carolina, as Plutonium Program Manager and Senior Technical Advisor to the Assistant Manager for Nuclear Materials Stabilization. (ECF No. 100-1 at 2.)

[5] A glovebox is an "engineered enclosure with separate ventilation that provides containment of the plutonium and protects the worker, the environment, and the public from contamination." (ECF No. 100 at 2 n.1.)

following numerous inspections). As a result of these limitations, Defendants estimate that they will not be able to complete the removal of one metric ton of downblended material until 2025. (*Id*.) Moreover, Defendants maintain that there is no indication that other removal methods will be faster than the downblending method. (*Id*. at 22.) Because the fastest that downblending can result in the removal of one metric ton of material is 2025, Defendants assert a two-year deadline would be impossible to meet. (*Id*.)

Defendants request an injunction that does not require them to remove a single metric ton until 2025. (ECF No. 100 at 9.) The court will not endorse an injunction that approves a plan under which Defendants will inevitably violate subsection (c)(2). *See* 50 U.S.C. § 2566(c)(2) ("If the MOX production objective is not achieved as of January 1, 2014, the Secretary shall, consistent with NEPA and other applicable laws, remove defense plutonium from the State of South Carolina, for storage or disposal elsewhere no[] later than January 1, 2022."). Therefore, Defendants are permitted to pursue the downblending process to meet their statutory obligations *only if* it assists in removing the defense plutonium from South Carolina in the most expeditious way possible while in compliance with § 2566(c)(1).

Further, Defendants contend that the statute's two-year timeframe may be ignored for purposes of crafting the injunction. (ECF No. 100 at 25.) First, Defendants argue that the statutory two-year timeframe should not be used as a baseline because the statute was enacted under the presumption that "the MOX facility would be operational prior to January 1, 2014, and certainly prior to January 1, 2016, and would thus be available to process defense plutonium for removal." (*Id*.) The court rejects this argument. The statute makes no such presumption and, in fact, subsection (c)(1) was included in the statute to ensure removal would occur *specifically for circumstances under which the MOX facility would not be fully operational*. *See* 50 U.S.C. §

2566(b)(6) ("Upon making a determination . . . [that there is a substantial and material risk that the MOX production objective will not be achieved by 2012] or [that the MOX production objective has not been achieved after January 1, 2014], the Secretary shall submit to Congress a report on the options for removing from the State of South Carolina an amount of defense plutonium or defense plutonium materials equal to the amount of defense plutonium or defense plutonium materials transferred to the State of South Carolina after April 15, 2002.").

Second, Defendants argue that the language in the statute requiring that the removal be consistent with the NEPA and other applicable laws would render the two-year deadline "irrelevant" if so complying necessarily took longer than 2 years. (ECF No. 100 at 25.) The court is not convinced by this argument. Defendants reading of the statute would render the two-year deadline a nullity. The text is more naturally read to require both removal within two years *and* adherence to the NEPA and applicable laws. If Defendants found these requirements mutually exclusive, the solution is not to ignore the one that is incompatible with their policy preferences; the solution was to seek a legislative fix. Therefore, the court refuses to adopt such a reading of the statute. The court finds that Defendants have two years from the date of this injunctive order to remove the one metric ton of defense plutonium.

### B. Requiring Defendants to Reappropriate or Request Funding

The State requests that the court require Defendants, if necessary, to "reprogram, transfer, or request additional appropriated funds" in order to accomplish removal within two years. (ECF No. 97 at 2.) The State does not explain this request in its briefing. The court has stated that it "recognizes that the order must be fashioned so as to not decree *how* the Secretary should accomplish the task of removing the one metric ton of defense plutonium." (ECF No. 86 at 33 (citing *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 65 (2004); *Hyatt v. U.S. Patent &*

*Trademark Office*, 110 F. Supp. 3d 644, 652-53 (E.D. Va. 2015)).) The court will not direct Defendants on how they must obtain funding for the removal. Defendants espouse that the court attempts to guide its action in carrying out removal by dictating the method and manner in which to do so. (ECF No. 100 at 10.) To the contrary, the court only mandates Defendants to adhere to the statutory requirements firmly laid out in 50 U.S.C. § 2566(c)(1).

### C. Setting Forth Potential Civil Contempt Sanctions

The State requests that the court require that "[i]f the Federal Defendants violate any part of the injunction, the State may seek, and this Court may grant, civil contempt sanctions against the Federal Defendants, including, but not limited to, the payment of at least One Million and No/100 Dollars ($1,000,000.00) for each day of noncompliance." (ECF No. 97 at 3.) Defendants espouse that ordering a pre-determined amount of sanctions is premature when the facts underlying any potential civil contempt have not yet occurred. (ECF No. 100 at 26.) The court agrees.

There is no need to memorialize in an injunction that a party may seek and the court may award sanctions for civil contempt; the law already provides for such remedies. *See In re Gen. Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995) (asserting that sanctions ahead of time are premature because the appropriateness of sanctions will be fact-intensive and depend on the underlying contempt). It would be incongruous to define the type and amount of sanction at the outset by sanctioning a party before the party has a chance to be heard on the issue and an opportunity to comply. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994); *Walters v. People's Republic of China*, 72 F. Supp. 3d 8, 12 (D.D.C. 2014). Therefore, the court will not grant the State's request to set forth potential civil contempt sanctions.

**D. Requiring Defendants to Take Steps to Comply with the NEPA and Other Applicable Laws**

The State requests that the court require Defendants, if necessary for removal, to initiate a NEPA review within 60 days after the injunction is ordered and to take all steps necessary to complete the NEPA review and comply with any other applicable laws. (ECF No. 97 at 3.) The State does not explain this request in its briefing. Once again, the court understands this request as directing the Secretary on *how* to accomplish the removal task, which the court must avoid. Instead, the court elects to abide by the language of the statute in this regard and order that the Secretary shall, consistent with the NEPA and other applicable laws, remove from South Carolina for storage or disposition elsewhere one metric ton of defense plutonium.

**E. Retaining Jurisdiction and Requiring Defendants to Submit Quarterly Progress Reports and Prior Congressional Reports**

The State requests that the court (1) retain jurisdiction in order to enforce the terms of the injunction; (2) require Defendants to submit to the court and the State all previous reports submitted to Congress regarding § 2566; and (3) require Defendants to submit to the court and the State quarterly progress reports detailing the projected date of removal, the status of any NEPA review, and any impediments to complying with the injunction. (ECF No. 97 at 3-4.) In similar cases, courts routinely retain jurisdiction and require progress reports to determine whether the agency is in compliance. (ECF No. 97 at 12); *see Cobell v. Norton*, 240 F.3d 1081, 1109 (D.C. Cir. 2001); *N. States Power Co. v. U.S. Dep't of Energy*, 128 F.3d 754, 760 (D.C. Cir. 1997); *Pub. Citizen Health Research Grp. v. Brock*, 823 F.2d 626, 629 (D.C. Cir. 1987); *Thomas*, 658 F. Supp. at 174-175; *Doe v. Heckler*, 580 F. Supp. 1224 (D. Md. 1984).

Submitting information such as prior congressional reports and future progress reports is more appropriate where, as here, (1) the agency disavowed its obligation to take the agency action at issue; (2) the court finds the agency action was required by a specified deadline; and (3) the

8

agency resists imposition of a deadline in the injunction.  The burden placed on Defendants to submit prior congressional reports is almost non-existent because those reports are readily available.  Further, the burden to submit future progress reports is low because the information requested is minimal.  Lastly, submitting the information would be useful to the parties and the court if, as anticipated here, there is a dispute as to whether compliance within the two year timeline is impossible.

Defendants concede that the court has the authority to retain jurisdiction and require submission of the reports.  (ECF No. 100 at 29.)  Defendants argue, however, that the court should decline to exercise that authority here.  (*Id*.)  Defendants emphasize that they have engaged in downblending as a good faith attempt to meet the twin purposes of the statute (*i.e.*, achieve MOX production objectives and ensure removal of all defense plutonium from South Carolina), and that there is no history of Defendants defying the court's orders.  (ECF No. 100 at 30.)

Defendants miss the point.  Requiring submission of the reports is necessary to determine Defendants' progress and to lay a foundation for determining whether compliance is impossible.  Defendants also argue that quarterly reports are excessive and divert resources it could otherwise use to actually attempt to comply with the injunction.  Taking this point into consideration, the court still finds it worthy to require Defendants to produce progress reports on a semi-annual basis.

### F.  Requiring a Sworn Attestation that Removal Has Been Completed

The State requests that the court require the Secretary, once one metric ton of defense plutonium has been removed, to provide the State and the court with a sworn affidavit that removal in compliance with the injunction has been achieved.  (ECF No. 97 at 4.)  The State does not explain this request in its briefing, and Defendants do not challenge it.  The court requires the

Secretary to submit an affidavit that removal has been achieved, as it will provide an appropriate method for the court to end its retention of jurisdiction in this case.

**G. Requiring Defendants to Make Good Faith Efforts to Pursue Completion of the MOX Facility**

The State requests that the court require Defendants to diligently and in good faith pursue construction of the MOX facility or any other congressionally mandated disposition method. (ECF No. 97 at 4.) This request is beyond the scope of the court's authority in this litigation. The State brought an action to compel an unlawfully withheld agency action under § 706(1), namely the Secretary's duty to remove one metric ton of defense plutonium under § 2566(c)(1). (ECF No. 1.) The court has the authority to compel that action, but it lacks the authority to compel an action such as pursuing the construction of the MOX facility, a putative agency action that was not litigated in this case. Therefore, the court refrains from granting this request.

### III.    CONCLUSION

Based on the foregoing, the court imposes the following injunction:

1.    Within two years from the date of the entry of this injunctive order (or at the latest by 1/1/2020), the Secretary of Energy shall, consistent with the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq*., and other applicable laws, remove from the State of South Carolina, for storage or disposal elsewhere, not less than one metric ton of defense plutonium or defense plutonium materials, as defined by 50 U.S.C. § 2566.

2.    Retention of Jurisdiction and Progress Reports

   a.    This court shall retain jurisdiction to enforce the terms of this injunctive order and to make such further orders as may be necessary or appropriate.

   b.    Within 30 days from the date of the entry of this injunctive order (or at the latest by 1/31/2018), the named Defendants shall submit to the State of South Carolina (the "State") and to this court all reports submitted by Defendants to Congress pursuant to the requirements of 50 U.S.C. § 2566 regarding the removal of defense plutonium or defense plutonium materials from South Carolina for storage or disposal elsewhere.

     c.     Within 180 days from the date of the entry of this injunctive order (or at the latest by 6/15/2018), Defendants shall submit a progress report to the State and to this court, and Defendants shall submit further progress reports to the State and to this court every 180 days thereafter (or at the latest by 12/15/2018, and subsequently the 15th day of June and December) until the sworn attestation described in ¶ 3 below has been provided to the State and to this court.  Each progress report shall set forth in detail:

          i.     the projected date for removal of not less than one metric ton of defense plutonium or defense plutonium materials from the State;

          ii.     the status and substance of any NEPA review, including the projected timeline for completion of the NEPA process; and

          iii.     any impediment(s) to Defendants' compliance with this injunctive order and any steps Defendants are taking to address such impediment(s).

3.     Upon removal of not less than one metric ton of defense plutonium or defense plutonium materials from the State, the Secretary of Energy shall provide the State and this court with a sworn attestation that removal has been achieved.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

December 20, 2017
Columbia, South Carolina

11